**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 09-36291** |
| | § | |
| **BASELINE OIL & GAS CORP.,** | § | |
| | § | |
| **Debtor.** | § | **(Chapter 11)** |
| | § | |
| | § | |

---

**EMERGENCY MOTION FOR APPROVAL OF INTERIM AND FINAL USE OF**
**CASH COLLATERAL AND GRANT OF ADEQUATE PROTECTION**

**THE DEBTOR HAS REQUESTED EMERGENCY CONSIDERATION OF THIS MOTION AND HAS REQUESTED THAT A "FIRST DAY" HEARING BE HELD ON THIS MOTION AT THE COURT'S EARLIEST CONVENIENCE. IF THE COURT, IN FACT, SETS THIS MOTION FOR AN EMERGENCY OR AN EXPEDITED "FIRST DAY" HEARING, THEN ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Baseline Oil & Gas Corp., debtor and debtor-in-possession ("Baseline" or the "Debtor"), files this Emergency Motion for Approval of Interim and Final Use of Cash Collateral and Grant of Adequate Protection (the "Motion"). In support of this Motion, the Debtor incorporates the Declaration of Thomas R. Kaetzer in Support of Voluntary Petition, First Day Motions and Designation as Complex Bankruptcy Case (the "Kaetzer Declaration") filed contemporaneously herewith.

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested in this Motion are 11 U.S.C. §§ 105 and 364, as complemented by Rules 4001 and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of this Court.

## PROCEDURAL AND FACTUAL BACKGROUND

4.      On August 28, 2009 (the "Petition Date") the Debtor commenced this case (the "Case") by filing a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtor, in a separate motion contemporaneously filed with this Court, is requesting expedited confirmation of a prepackaged plan of reorganization (the "Plan").

5.      The Debtor has continued to operate and manage its businesses and affairs as debtor-in-possession, pursuant to §§ 1107 and 1108(a) of the Bankruptcy Code.

6.      Baseline is a Houston, Texas-based independent oil and natural gas company engaged in the exploration, production, development, acquisition and exploitation of crude oil and natural gas properties, with interests in: (a) the Eliasville Field in Stephens County, Texas; (b) the Blessing Field in Matagorda County, Texas, onshore along the Texas Gulf Coast; and (c) the New Albany Shale resource play in southern Indiana.  Baseline's properties cover 39,945 net acres in these three core areas.

7.      Baseline is a publicly-traded company, incorporated in Nevada, and its common stock is listed and quoted on the OTC Bulletin Board under the symbol "BOGA."  Baseline has been in business for approximately five years.

8.      Baseline's business heavily depends on the availability of capital and liquidity. The downturn in the economy, the credit crisis, the Debtor's development drilling results, and the recent drop in oil and gas prices all have negatively impacted the Debtor's business and its ability to meet its obligations to senior secured noteholders.  The Debtor has obtained the consent

of the majority of its senior secured noteholders to a recapitalization through a prepackaged plan of reorganization, including the providing of an exit facility, all of which are designed to allow Baseline to quickly and successfully exit chapter 11 and continue the exploration, development and exploitation of its assets.

9.    The filing of this Case and the expedited confirmation of the Plan are the Debtor's best option to preserve and maximize its assets including the going concern value of its exploration and production business.

## NOTEHOLDERS' LIENS

10.    As of the Petition Date, the Debtor was justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, under the Indenture, dated as of October 1, 2007, as amended and restated on October 30, 2008 (as amended, supplemented or otherwise modified from time to time, the "Indenture," together with any and all documents executed in connection therewith, the "Financing Documents"), by and between the Debtor and The Bank of New York Mellon Trust Company, N.A., as indenture trustee (the "Indenture Trustee"), for and on behalf of the parties holding the 12½% Senior Secured Notes due 2012 and the 15% Senior Secured PIK Notes due 2009 (including all 15% Senior Secured PIK Notes issued in lieu of the payment of interest in cash thereon) (such notes collectively, the "Notes", and the parties holding the Notes, collectively, the "Noteholders") in the aggregate principal amount of approximately $122,000,000, plus accrued and unpaid interest and costs and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations owing under the Financing Documents (collectively, the "Prepetition Obligations"). The Debtor acknowledges that, as of the Petition Date, the Prepetition Obligations constitute the

legal, valid and binding secured obligations of the Debtor, enforceable in accordance with their

terms.

11.     The Debtor further acknowledges that the Prepetition Obligations are secured by

liens and security interests (the "Prepetition Liens") granted by the Debtor to the Indenture

Trustee, for the benefit of the Noteholders, under the Indenture and the other Financing

Documents, upon and in substantially all of the assets and property of the Debtor, whether then

owned or thereafter acquired or arising, and all proceeds and products thereof (collectively, the

"Prepetition Collateral").

## RELIEF REQUESTED

12.     Pursuant to Bankruptcy Code §§ 361 and 363, the Debtor requests (a) authority to

use cash collateral on an interim basis (the "Cash Collateral") in accordance with the terms and

conditions set forth herein, the proposed budget (the "Interim Budget") [1] and the proposed order

(the "Interim Order") [2]; (b) authority to use cash collateral on a final basis; and (c) the authority

to provide Adequate Protection as more particularly set forth herein.

## IMMEDIATE NEED FOR USE OF CASH COLLATERAL

13.     Bankruptcy Code § 363(c) provides in relevant part

(c) (1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sale, or lease cash collateral under paragraph (1) of this subsection unless—

        (A) each entity has an interest in such cash collateral consents; or

---

[1] A copy of the Interim Budget is attached hereto as **Exhibit A**.
[2] A copy of the Interim Order is attached as **Exhibit B.**

(B) the court, after notice and hearing, authorizes use, sale or lease in accordance with the provisions of this section.[3]

14.     The Debtor has an immediate need to use Cash Collateral to continue the operation of its business.  Without such funds, the Debtor will not be able to pay costs and expenses, including but not limited to wages, salaries, rent, professional fees, general and administrative operating expenses, lease operating expenses, drilling costs, oil lease operations, and maintenance costs that arise in administration of this Case and in the ordinary course of the Debtor's business.

15.     Absent the ability to use the Cash Collateral, the Debtor will be forced to shut down its operations abruptly, which will negatively impact the value of its assets and reduce or eliminate any prospect for a successful reorganization and confirmation of the Debtor's prepackaged Plan.  The Debtor further believes that an abrupt shut down will result in a severe and dramatic loss of collateral value. The Debtor requests interim authority to use the Cash Collateral as set forth in the Interim Budget until a final order (the "Final Order") granting the use of the Cash Collateral can be entered.

16.     The Debtor is without sufficient funds, other than the Cash Collateral, to operate for 15 or more days until a final hearing (the "Final Hearing") on this Motion can be held.  The Debtor's inability to timely pay the ongoing cost and expenses set forth in the attached Interim Budget will result in immediate and irreparable harm to the estate.  Because the Debtor's request for interim authorization seeks only that amount of cash collateral necessary to avoid immediate and irreparable harm to the value of its assets pending a final hearing, its request complies with Bankruptcy Rules 4001(b)(2) and 6003.

---

[3] 11 U.S.C. §363(c)(1) and (2).

17.     The Interim Budget itemizes the sources and uses of cash and provides a weekly

projection of cash receipts and expenditures.  The Interim Budget includes a list of business

expenses that are reasonable and necessary and that must be paid to continue the Debtor's

business until such time as a final hearing on the Motion can be held.  The Debtor proposes that

any amount listed in the Interim Budget that are unused in any week may be carried over and

used by the Debtor in any subsequent week, on a line item basis.  The Debtor also requests that

any amounts listed in the Interim Budget that are unused in any week for a particular line item

may be used by the Debtor for another line item in that given week so long as the aggregate total

of all line items do not exceed the budgeted amount for that week.

18.     The Debtor also requests that this Court authorize the Debtor to continue to use

the Cash Collateral, as set forth in the Interim Budget or any substitute budget, after the Final

Hearing on the Motion.

## GRANT OF ADEQUATE PROTECTION

### *Adequate protection pursuant to Bankruptcy Code §363(e)*

19.     Bankruptcy Code §363(e) provides that "on request of an entity that has an

interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee

the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is

necessary to provide adequate protection of such interest."[4]  Providing adequate protection to the

lender with an interest in cash collateral is mandatory.[5]  Bankruptcy Code § 361 sets forth a non-

exclusive list of forms of adequate protection which include periodic cash payments, additional

---

[4] 11 U.S.C. §363(e).

[5] *See e.g., In re Metromedia Fiber Network, Inc.,* 290 B.R. 487, 491 (Bankr. S.D. Tex. 2003) ("Section 363(e) is not permissive or discretionary – it states that the court 'shall' grant the release specified, at any time, on request of the secured entity."); *In re Heatron, Inc.* 6 B.R. 493, 494 (Bankr. W.D. Mo. 1980) ("Providing adequate protection is mandatory").

liens, replacement liens, and other forms of relief.[6]  A secured party's interest in cash collateral is determined on a case by case basis.  Courts consider, in each case, "[t]he nature of the creditor's interest in the property, the potential harm to the creditor as a result of the property's decline in value and the method of protection are all to be considered."[7]  The purpose of adequate protection is to insure that secured party's economic position is not worsened because of the use of its property by a debtor or trustee.[8]

## ADEQUATE PROTECTION TO NOTEHOLDERS

20.     The Debtor proposes to adequately protect the Noteholders' interest in the Prepetition Collateral in numerous ways.  First, the Debtor proposes to grant continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected first priority security interests in and liens (collectively, the "Adequate Protection Liens") on all Prepetition Collateral.  Except for causes of action under chapter 5 of the Bankruptcy Code (all such actions, the "Avoidance Actions"), the Debtor further proposes that the Adequate Protection Liens, subject to entry of a Final Order, will have recourse to the proceeds or property recovered in respect of any Avoidance Actions, any and all hereafter acquired assets and real and personal property of the Debtor, together with any proceeds thereof (the "Collateral").  The Noteholders' Adequate Protection Liens will be senior and before all other interests or liens whatsoever in or on the Collateral, and will be subject and subordinate only to a carve-out for case professionals and valid, perfected and unavoidable liens or security interests on the Petition Date or liens perfected after the Petition Date the priority and perfection of which relates back to a date before the Petition Date as permitted by Bankruptcy Code § 546(b).

---

[6] 11 U.S.C. §361.
[7] *In re Braniff Airways, Inc.,* 783 F.2d 1283, 1286 (5th Cir. 1986).
[8] *In re DeSardi 340 B.R.*, 790, 804 (Bankr. S.D. Tex. 2006).

21.     Second, the Debtor proposes a superpriority administrative expense claim (the "Superpriority Claim") for the Indenture Trustee, for the ratable benefit of the Noteholders.  The Superpriority Claim will have priority in this Case under Bankruptcy Code §§ 503(b) and 507(b) and otherwise over all administrative expense claims and unsecured claims whether in existence on or arising after the Petition Date against the Debtor and its estate of any kind or nature whatsoever and will be subordinate only to the Carve-Out.

22.     Finally, as additional adequate protection, the Debtor proposes to reimburse the Indenture Trustee, Jefferies & Company, Inc., Jefferies High Yield Trading, LLC and Third Point, LLC for their reasonable out-of-pocket expenses incurred both before the Petition Date and during this Case.

## ADEQUATE PROTECTION TO TRADE LIEN HOLDERS

23.     Although the Debtor believes that the holders of statutory liens, including but not limited to mechanics and materialmen lien holders (the "Trade Lien Holders") (a) may be defective; (b) may be avoidable; and/or (c) do not attach to the Cash Collateral, and subject to prior perfected and unavoidable liens and security interests and to the extent of any decrease in the value of the Trade Lien Holders' respective interests as a result of the Debtor's use of Cash Collateral, the Debtor proposes to grant the Trade Lien Holders replacement liens[9] upon all assets in which the Trade Lien Holders held a validly perfected lien as the Petition Date.  The Debtor anticipates that those replacement liens will adequately protect the Trade Lien Holders for the use of Cash Collateral.

---

[9] The liens requested herein would be effective upon the Petition Date without the necessity of the execution by the Debtor of additional mortgages, security agreements, pledge agreements, financing statements or other documents.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order (a) authorizing on an interim and final basis that the Debtor's use of cash collateral; (b) granting adequate protection to the trade lienholders as more particularly set forth herein; and (c) granting such other and further relief as this Court may deem proper, both at law and in equity.

**DATED:** August 28, 2009

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

_/s/ Rhett G.  Campbell_____
**RHETT G. CAMPBELL**
Texas State Bar No. 03714500
Rhett.Campbell@tklaw.com
**MILLIE A. SALL**
Texas State Bar No. 012788050
Millie.Sall@tklaw.com

Three Allen Center
333 Clay Street, Suite 3300
Houston, Texas 77002
Phone: 713-654-8111
Fax: 713-654-1871

-and-

**IRA L. HERMAN**
Texas State Bar No. 24063314
Ira.Herman@tklaw.com
**DEMETRA L. LIGGINS**
Texas State Bar No. 24026844
Demetra.Liggins@tklaw.com

919 Third Avenue, 39th Floor
New York, New York 10022-3915
Phone: 212-751-3001
Fax: 212-751-3113

**PROPOSESD COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

# CERTIFICATE OF SERVICE

I certify that on August 28, 2009, a true and correct copy of the foregoing document was served upon the parties on the attached Proposed Master Service List by first class U.S. mail, postage prepaid, or by facsimile transmittal as indicated and on all parties entitled to service via this Court's Electronic Filing System ("ECF").


_/s/ Rhett G. Campbell_
One of Counsel