(5)      such Legal Defeasance or Covenant Defeasance shall not result in a breach of, or constitute a default under any other material agreement or instrument to which the Company or any of its Subsidiaries is a party or by which the Company or any of its Subsidiaries is bound;

      (6)      the Company shall have delivered to the Trustee an Officers' Certificate stating that the deposit was not made by the Company with the intent of preferring the Holders over any other creditors of the Company or with the intent of defeating, hindering, delaying or defrauding any other creditors of the Company or others;

      (7)      the Company shall have delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent provided for or relating to the Legal Defeasance or the Covenant Defeasance have been complied with; and

      (8)      The Company shall have delivered to the Trustee an Opinion of Counsel (subject to customary qualifications and exclusions) to the effect that the trust resulting from the deposit does not constitute, or is qualified as, a regulated investment company under the Investment Company Act of 1940.

Notwithstanding the foregoing, the Opinion of Counsel required by Section 8.01(d)(2) above with respect to a Legal Defeasance need not be delivered if all Notes not theretofor delivered to the Trustee for cancellation (1) have become due and payable or (2) shall become due and payable on the maturity date within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Company.

      In the event all or any portion of the Notes are to be redeemed through such irrevocable trust, the Company must make arrangements reasonably satisfactory to the Trustee, at the time of such deposit, for the giving of the notice of such redemption or redemptions by the Trustee in the name and at the expense of the Company.

      Section 8.02.    Satisfaction and Discharge.  In addition to the Company's rights under Section 8.01, this Indenture (subject to Section 8.03) and all Liens on Collateral will be discharged and will cease to be of further effect as to all outstanding Notes, when:

      (1)      either:

      First:  all the Notes theretofore authenticated and delivered (except lost, stolen or destroyed Notes which have been replaced or paid as provided in Section 2.07 and Notes for whose payment money has theretofor been deposited in trust or segregated and held in trust by the Company and thereafter repaid to the Company or discharged from such trust) have been delivered to the Trustee for cancellation; or

      Second: all Notes not theretofore delivered to the Trustee for cancellation (i) have become due and payable, (ii) will become due and payable at their stated maturity within one year or (iii) are to be called for redemption within one year under arrangements reasonably satisfactory to the Trustee, and the Company has irrevocably deposited or caused to be deposited with the Trustee funds in an amount sufficient to pay and discharge the entire Indebtedness on the Notes not theretofore delivered to the Trustee for cancellation, for principal of, and premium, if any, interest on, such Notes to the date of such stated maturity or redemption, as the case may be, together with irrevocable instructions from the Company directing the Trustee to apply such funds to the payment thereof at maturity or redemption, as the case may be;

(2)     the Company has paid all other sums payable by the Company under this Indenture and the Collateral Agreements ; and

(3)     the Company has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel stating that all conditions precedent under this Indenture relating to the satisfaction and discharge of this Indenture have been complied with;

provided, however, that the Series B Senior Notes and Subordinated Notes may be satisfied and discharged only if the Notes are no longer outstanding or have previously or simultaneously been satisfied and discharged in the same manner and to the same extent.

Section 8.03.    Survival of Certain Obligations.  Notwithstanding the satisfaction and discharge of this Indenture and of the Notes referred to in Section 8.01 or 8.02, the respective obligations of the Company and the Trustee with respect to a series of Notes under Sections 2.02, 2.03, 2.04, 2.05, 2.06, 2.07, 2.10, 2.13, 4.01, 4.02 and 6.07, Article Seven and Sections 8.05, 8.06 and 8.07 shall survive until such Notes are no longer outstanding, and thereafter the obligations of the Company and the Trustee under Sections 7.07, 8.05, 8.06 and 8.07 shall survive.

Section 8.04.    Acknowledgment of Discharge by Trustee.  Subject to Section 8.07, after (i) the conditions of Section 8.01 or 8.02 have been satisfied, (ii) the Company has paid or caused to be paid all other sums payable hereunder by the Company and (iii) the Company has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent referred to in clause (i) above relating to the satisfaction and discharge of this Indenture have been complied with, the Trustee upon written request shall acknowledge in writing the discharge of the Company's obligations under this Indenture except for those surviving obligations specified in Section 8.03.

Section 8.05.    Application of Trust Moneys.  The Trustee shall hold any U.S. Legal Tender or U.S. Government Obligations deposited with it in the irrevocable trust established pursuant to Section 8.01.  The Trustee shall apply the deposited U.S. Legal Tender or the U.S. Government Obligations, together with earnings thereon, through the Paying Agent, in accordance with this Indenture and the terms of the irrevocable trust agreement established pursuant to Section 8.01, to the payment of principal of, premium, if any, and interest on the Notes.  Anything in this Article Eight to the contrary notwithstanding, the Trustee shall deliver or pay to the Company from time to time upon the Company's request any U.S. Legal Tender or U.S. Government Obligations held by it as provided in Section 8.01(d) which, in the opinion of a nationally-recognized firm of independent public accountants expressed in a written certification thereof delivered to the Trustee, are in excess of the amount thereof that would then be required to be deposited to effect an equivalent Legal Defeasance or Covenant Defeasance.

Section 8.06.    Repayment to the Company; Unclaimed Money.  Subject to Sections 7.07, 8.01 and 8.02, the Trustee and the Paying Agent shall promptly pay to the Company upon written request from the Company any excess U.S. Legal Tender or U.S. Government Obligations held by them at any time.  The Trustee and the Paying Agent shall pay to the Company, upon receipt by the Trustee or the Paying Agent, as the case may be, of a written request from the Company any money held by it for the payment of principal, premium, if any, or interest that remains unclaimed for two years after payment to the Holders is required, without interest thereon; provided, however, that the Trustee and the Paying Agent before being required to make any payment may, but need not, at the expense of the Company cause to be published once in a newspaper of general circulation in The City of New York or mail to each Holder entitled to such money notice that such money remains unclaimed and that after a date specified therein, which shall be at least thirty (30) days from the date of such publication or mailing, any unclaimed balance of such money then remaining shall be repaid to the Company, without interest thereon. After payment to the Company, Holders entitled to money must look solely to the Company for

payment as general creditors unless an applicable abandoned property law designated another Person, and all liability of the Trustee or Paying Agent with respect to such money shall thereupon cease.

Section 8.07.   Reinstatement.   If the Trustee or Paying Agent is unable to apply any U.S. Legal Tender or U.S. Government Obligations in accordance with Section 8.01 or 8.02 by reason of any legal proceeding or by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, the Company's and each Guarantor's obligations under this Indenture, the Collateral Agreements, the Guarantees and the Notes shall be revived and reinstated as though no deposit had occurred pursuant to Section 8.01 or 8.02 until such time as the Trustee or Paying Agent is permitted to apply all such U.S. Legal Tender or U.S. Government Obligations in accordance with Section 8.01 or 8.02; provided, however, that if the Company has made any payment of premium, if any, or interest on or principal of any applicable Notes because of the reinstatement of its obligations, the Company shall be subrogated to the rights of the Holders of such Notes to receive such payment from the money or U.S. Government Obligations held by the Trustee or Paying Agent.

Section 8.08.   Indemnity for Government Obligations.   The Company shall pay and indemnify the Trustee against any tax, fee or other charge imposed on or assessed against the U.S. Government Obligations deposited pursuant to Section 8.01 or Section 8.02 or the principal and interest received in respect thereof other than any such tax, fee or other charge which by law is for the account of the Holders.

## ARTICLE NINE

### Amendments, Supplements and Waivers

Section 9.01.   Without Consent of Holders.   From time to time, the Company, the Guarantors, the Trustee and, if such amendment, modification, waiver or supplement relates to any Collateral Agreement, the Collateral Agent, without the consent of any Holders, may amend, modify or supplement this Indenture, the Notes, the Guarantees and the Collateral Agreements:

   (1)   to cure any ambiguity, defect or inconsistency contained therein;

   (2)   to provide for uncertificated Notes in addition to or in place of certificated Notes;

   (3)   to provide for the assumption of the Company's or a Guarantor's obligations to Holders in accordance with Section 5.01 or Section 10.04, as the case may be;

   (4)   to make any change that would provide any additional rights or benefits to the Holders or that does not adversely affect the legal rights of any such Holder under this Indenture, Notes, the Guarantees or the Collateral Agreements;

   (5)   to comply with requirements of the Commission in order to effect, if applicable, or, once effected, maintain the qualification of this Indenture under the TIA;

   (6)   if necessary, in connection with any addition or release of Collateral permitted under the terms of this Indenture or the Collateral Agreements;

   (7)   to allow any Subsidiary or any other Person to guarantee the Notes;

(8)     to release a Guarantor as permitted by this Indenture and the relevant Guarantee; or

(9)     to release Collateral solely as permitted under the terms of this Indenture or the Collateral Agreements.

Notwithstanding the foregoing, in formulating its opinion in regards to this Section 9.01 the Trustee or the Collateral Agent, as applicable, is entitled to rely on such evidence as it deems appropriate, including, without limitation, solely on an Opinion of Counsel.

Section 9.02.    With Consent of Holders.  Subject to Section 6.07, the Company, the Guarantors and the Trustee or the Collateral Agent, as applicable, together, with the written consent of the Holder or Holders of at least 85% in aggregate principal amount of the then outstanding Notes (subject to Section 2.09), may amend, modify or supplement this Indenture, the Notes, the Guarantees, and the Collateral Agreements.  Subject to Section 6.07 and Section 2.09, the Holder or Holders of at least 85% in aggregate principal amount of the then outstanding Notes may waive compliance by the Company with any provision of this Indenture, the Collateral Agreements or the Notes.

However, no such amendment, modification, supplement or waiver, including a waiver pursuant to Section 6.04, may, without the consent of each Holder affected thereby:

(1)     reduce the principal amount of Notes whose Holders must consent to an amendment, supplement, modification or waiver of any provision of this Indenture, the Notes, the Guarantees or the Collateral Agreements;

(2)     reduce the rate of, or change or have the effect of changing the time for payment of interest, including defaulted interest, on, any Notes;

(3)     reduce the principal of, or change or have the effect of changing the fixed maturity of, any Notes, or change the date on which any Notes may be subject to redemption or reduce the redemption price therefor;

(4)     make any Notes payable in money other than that stated in the Notes;

(5)     make any change in provisions of this Indenture protecting the right of each Holder to receive payment of principal of, or premium, if any, or interest on, such Note on or after the due date thereof or to bring suit to enforce such payment, or permitting Holders of at least 85% in principal amount of Notes to waive Defaults or Events of Default;

(6)     amend, change or modify in any material respect the obligation of the Company to make and consummate a Change of Control Offer after the occurrence of a Change of Control or make and consummate a Net Proceeds Offer with respect to any Asset Sale that has been consummated or modify any of the provisions or definitions with respect thereto;

(7)     with respect to the ranking of any Notes or any related Guarantee, subordinate such Notes or any such Guarantee in right of payment to secure any other Indebtedness of the Company or any Guarantor;

(8)     release any Guarantor from any of its obligations under such Guarantee or this Indenture otherwise than in accordance with the terms of this Indenture; or

(9)     make any change to Section 9.01 or this Section 9.02.

(b)     At any time, the Holders holding at least 85% in aggregate principal amount of the Notes outstanding at such time, may release all or substantially all of the Collateral from the Liens securing the Company's and any Guarantor's obligations under the Notes created by the Collateral Agreements otherwise than in accordance with the terms of this Indenture, the Intercreditor Agreement and the Collateral Agreements.

It shall not be necessary for the consent of the Holders of the Notes under this Section 9.02 to approve the particular form of any proposed amendment, supplement or waiver, but it shall be sufficient if such consent approves the substance thereof.

After an amendment, supplement or waiver under this Section 9.02 becomes effective, the Company shall mail to the Holders affected thereby a notice briefly describing the amendment, supplement or waiver. Any failure of the Company to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

Section 9.03.   Compliance with TIA. Every amendment, waiver or supplement of this Indenture, the Notes, the Collateral Agreements or the Guarantees shall comply with the TIA as then in effect.

Section 9.04.   Revocation and Effect of Consents. Until an amendment, waiver or supplement becomes effective, a consent to it by a Holder is a continuing consent by the Holder and every subsequent Holder of a Note or portion of a Note that evidences the same debt as the consenting Holder's Note, even if notation of the consent is not made on any Note. Subject to the following paragraph, any such Holder or subsequent Holder may revoke the consent as to such Holder's Note or portion of such Note by written notice to the Trustee and the Company received before the date on which the Trustee, and if such amendment, waiver or supplement relates to any Collateral Agreement, the Collateral Agent, receives an Officers' Certificate certifying that the Holders of the requisite principal amount of Notes have consented (and not theretofore revoked such consent) to the amendment, supplement or waiver.

The Company may, but shall not be obligated to, fix a record date for the purpose of determining the Holders entitled to consent to any amendment, supplement or waiver, which record date shall be either (i) at least thirty (30) days prior to the first solicitation of such consent or (ii) the date of the most recent list furnished to the Trustee under Section 2.05. If a record date is fixed, then notwithstanding the last sentence of the immediately preceding paragraph, those Persons who were Holders at such record date (or their duly designated proxies), and only those Persons, shall be entitled to revoke any consent previously given, whether or not such Persons continue to be Holders after such record date. No such consent shall be valid or effective for more than ninety (90) days after such record date.

After an amendment, supplement or waiver becomes effective, it shall bind every Holder of the Notes unless it makes a change described in any clauses of Section 9.02, in which case, the amendment, supplement or waiver shall bind only each Holder of a Note who has consented to it and every subsequent Holder of a Note or portion of a Note that evidences the same debt as the consenting Holder's Note; provided that any such waiver shall not impair or affect the right of any Holder to receive payment of principal of, premium, if any, and interest on a Note, on or after the respective due dates

expressed in such Note, or to bring suit for the enforcement of any such payment on or after such respective dates without the consent of such Holder.

Section 9.05.   Notation on or Exchange of Notes.   If an amendment, supplement or waiver changes the terms of a Note, the Trustee may require the Holder of the Note to deliver the Note to the Trustee. The Trustee at the written direction of the Company may place an appropriate notation on the Note about the changed terms and return it to the Holder and the Trustee may place an appropriate notation on any Note thereafter authenticated.   Alternatively, if the Company or the Trustee so determines, the Company in exchange for the Note shall issue and the Trustee shall authenticate a new Note that reflects the changed terms. Failure to make an appropriate notation, or issue a new Note, shall not affect the validity and effect of such amendment, supplement or waiver.   Any such notation or exchange shall be made at the sole cost and expense of the Company. Failure to make the appropriate notation or issue a new Note shall not effect the validity and effect of such amendment, supplement or waiver.

Section 9.06.   Trustee to Sign Amendments, Etc.   The Trustee and/or the Collateral Agent, as applicable, shall execute any amendment, supplement or waiver authorized pursuant to this Article Nine; provided that the Trustee or the Collateral Agent, as the case may be, may, but shall not be obligated to, execute any such amendment, supplement or waiver which adversely affects the rights, duties or immunities of the Trustee or the Collateral Agent, as the case may be, under this Indenture or any Collateral Agreement. The Trustee or the Collateral Agent, as the case may be, shall be provided with, and shall be fully protected in relying upon, an Opinion of Counsel and an Officers' Certificate each stating that the execution of any amendment, supplement or waiver authorized pursuant to this Article Nine is authorized or permitted by this Indenture.   Such Opinion of Counsel shall also state that the amendment or supplement is a valid and enforceable obligation of the Company.   Such Opinion of Counsel shall not be an expense of the Trustee or the Collateral Agent, as the case may be, and shall be paid for by the Company.

Section 9.07.   Conformity with Trust Indenture Act.   Every supplemental indenture executed pursuant to this Article Nine shall conform to the requirements of the TIA as then in effect.

## ARTICLE TEN

### Guarantee

Section 10.01. Guarantee.   Each Guarantor hereby fully, irrevocably and unconditionally, jointly and severally, unconditionally and irrevocably guarantees on a senior secured basis in the form of Exhibit A (such guarantee to be referred to herein as the "Guarantee") to each of the Holders and to the Trustee and the Collateral Agent and their respective successors and assigns that (i) the principal of, premium, if any and interest on the Notes shall be promptly paid in full when due, subject to any applicable grace period, whether upon redemption pursuant to the terms of the Notes, by acceleration or otherwise, and interest on the overdue principal (including interest accruing at the then applicable rate provided in this Indenture, the Notes, the Guarantees and the Collateral Agreements after the occurrence of any Event of Default set forth in Sections 6.01(6) or (7), whether or not a claim for post-filing or post-petition interest is allowed under applicable law following the institution of a proceeding under bankruptcy, insolvency or similar laws), if any, and interest on any interest, if any, to the extent lawful, of the Notes and all other obligations of the Company to the Holders, the Trustee and the Collateral Agent hereunder, thereunder or under any Collateral Agreement shall be promptly paid in full or performed, all in accordance with the terms hereof, thereof and of the Collateral Agreements; and (ii) in case of any extension of time of payment or renewal of any of the Notes or of any such other obligations, the same shall be promptly paid in full when due or performed in accordance with the terms of the extension or

renewal, subject to any applicable grace period, whether at stated maturity, by acceleration or otherwise, subject, however, in the case of clauses (i) and (ii) above, to the limitations set forth in Section 10.03. Each Guarantor hereby agrees that its obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Notes, this Indenture or any Collateral Agreement, the absence of any action to enforce the same, any waiver or consent by any of the Holders of Notes with respect to any provisions hereof or thereof, any release of any other Guarantor, the recovery of any judgment against the Company, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a Guarantor. Each Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Company, any right to require a proceeding first against the Company, protest, notice of intent to accelerate, notice of acceleration, other notice and all demands whatsoever and covenants that this Guarantee shall not be discharged except by complete performance of the obligations contained in the Notes, this Indenture and in this Guarantee. Each Guarantor may consolidate with or merge into or sell its assets to the Company or another Guarantor without limitation in accordance with Sections 5.01 and 4.16. If any Holder or the Trustee is required by any court or otherwise to return to the Company, any Guarantor, or any custodian, trustee, liquidator or other similar official acting in relation to the Company or any Guarantor, any amount paid by the Company or any Guarantor to the Trustee, the Collateral Agent or such Holder, this Guarantee, to the extent theretofore discharged, shall be reinstated in full force and effect. Each Guarantor further agrees that, as between each Guarantor, on the one hand, and the Holders of the Notes, the Collateral Agent and the Trustee, on the other hand, (x) the maturity of the obligations guaranteed hereby may be accelerated as provided in Article Six for the purposes of this Guarantee notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the obligations guaranteed hereby, and (y) in the event of any acceleration of such obligations as provided in Article Six, such obligations (whether or not due and payable) shall forthwith become due and payable by each Guarantor for the purpose of this Guarantee.

The Guarantee of each Guarantor shall rank senior in right of payment to all existing and future senior subordinated Indebtedness of such Guarantor and equal in right of payment with all other existing and future senior Indebtedness of such Guarantor.

Section 10.02. Release of a Guarantor. A Guarantor will be released from its Guarantee and the Collateral Agreements, as applicable, (and may subsequently dissolve) without any action required on the part of the Trustee or any Holder of the Notes:

(1) if (a) all of the Capital Stock issued by such Guarantor or all or substantially all of the assets of such Guarantor are sold or otherwise disposed of (including by way of merger or consolidation) to a Person other than the Company or any of its Domestic Restricted Subsidiaries or (b) such Guarantor ceases to be a Restricted Subsidiary, and the Company otherwise complies, to the extent applicable, with Section 4.16, or

(2) if the Company designates such Guarantor as an Unrestricted Subsidiary in accordance with the definition thereof, or

(3) if the Company exercises its Legal Defeasance option or its Covenant Defeasance option as described in Section 8.01, or

(4) upon satisfaction and discharge of this Indenture or payment in full of the principal of, and premium, if any, and accrued and unpaid interest on, the Notes and all other Obligations that are then due and payable.

The Trustee shall promptly deliver an appropriate instrument evidencing such release upon receipt of a request by the Company accompanied by an Officers' Certificate certifying as to the compliance with this Section 10.02. At the Company's request and expense, the Trustee will execute and deliver an instrument evidencing such release. Any Guarantor not so released remains liable for the full amount of its Guarantee as provided in this Article Ten.

Section 10.03. <u>Limitation of Guarantor's Liability</u>. Each Guarantor and, by its acceptance hereof, each of the Holders hereby confirms that it is the intention of all such parties that the guarantee by such Guarantor pursuant to its Guarantee not constitute a fraudulent transfer or conveyance for purposes of any Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act or any similar Federal or state law. To effectuate the foregoing intention, the Holders and such Guarantor hereby irrevocably agree that the obligations of such Guarantor under the Guarantee shall be limited to the maximum amount as shall, after giving effect to all other contingent and fixed liabilities of such Guarantor and after giving effect to any collections from or payments made by or on behalf of any other Guarantor in respect of the obligations of such other Guarantor under its Guarantee or pursuant to Section 10.05, result in the obligations of such Guarantor under the Guarantee not constituting such fraudulent transfer or conveyance. The net worth of any Guarantor for such purpose shall include any claim of such Guarantor against the Company for reimbursement and any claim against any other Guarantor for contribution.

Section 10.04. <u>Guarantors May Consolidate, etc., on Certain Terms</u>. Each Guarantor (other than any Guarantor whose Guarantee is to be released in accordance with the terms of the Guarantee and this Indenture in connection with any transaction complying with Section 4.16) will not, and the Company will not cause or permit any Guarantor to, consolidate with or merge with or into any Person other than the Company or any other Guarantor unless:

(1)    the entity formed by or surviving any such consolidation or merger (if other than the Guarantor) or to which such sale, lease, conveyance or other disposition shall have been made is a corporation organized and existing under the laws of the United States or any State thereof or the District of Columbia;

(2)    such entity assumes by (i) supplemental indenture (in form and substance reasonably satisfactory to the Trustee), executed and delivered to the Trustee, all of the obligations of the Guarantor under the Guarantee and the performance of every covenant of the Guarantee and this Indenture and (ii) amendment, supplement or other instrument (in form and substance satisfactory to the Trustee and the Collateral Agent) executed and delivered to the Trustee and the Collateral Agent, all obligations of the Guarantor under the Collateral Agreements and in connection therewith shall cause such instruments to be filed and recorded in such jurisdictions and take such other actions as may be required by applicable law to perfect or continue the perfection of the Lien created under the Collateral Agreements on the Collateral owned by or transferred to the surviving entity; and

(3)    immediately after giving effect to such transaction, no Default or Event of Default shall have occurred and be continuing.

Notwithstanding the foregoing, any merger or consolidation of (i) a Guarantor with and into the Company (with the Company being the surviving entity) or another Guarantor or (ii) a Guarantor or the Company with an Affiliate organized solely for the purpose of reincorporating such Guarantor or the Company in another jurisdiction in the United States or any state thereof or the District of Columbia need only comply with (A) clause (4) the penultimate paragraph of Section 5.01 and (B)(x) in the case of a merger or consolidation involving the Company as described in clause (ii) above, clause (2) of the

penultimate paragraph of <u>Section 5.01</u> and (y) in the case of a merger or consolidation involving the Guarantor as described in clause (ii), clause (2) of the first paragraph of this <u>Section 10.04</u>.

Section 10.05.  <u>Contribution</u>.  In order to provide for just and equitable contribution among the Guarantors, the Guarantors agree, inter se, that each Guarantor that makes a payment or distribution under a Guarantee shall be entitled to a <u>pro rata</u> contribution from each other Guarantor hereunder based on the net assets of each other Guarantor.  The preceding sentence shall in no way affect the rights of the Holders of Notes to the benefits of this Indenture, the Notes or the Guarantees.

Section 10.06.  <u>Waiver of Subrogation</u>.  Each Guarantor agrees that it shall not be entitled to any right of subrogation in relation to the Holders in respect of any obligations guaranteed hereby until payment in full of all obligations guaranteed hereby.

Section 10.07.  <u>Evidence of Guarantee</u>.  To evidence their guarantees to the Holders set forth in this <u>Article Ten</u>, each of the Guarantors hereby agrees to execute the notation of Guarantee in substantially the form included in the Note attached as <u>Exhibit A</u>.  Each such notation of Guarantee shall be signed on behalf of each Guarantor by an Officer or an assistant Secretary.  An Officer (who shall, in each case, have been duly authorized by all requisite corporate actions) of the Guarantors shall execute the Guarantees by manual or facsimile signature.

If an Officer whose signature is on a Note was an Officer at the time of such execution but no longer holds that office or position at the time the Trustee authenticates such Note, such Note shall nevertheless be valid.

Each Guarantor hereby agrees that its applicable Guarantee set forth in <u>Section 10.01</u> shall remain in full force and effect notwithstanding any failure to endorse on each Note a notation of such Guarantee.

If an Officer or assistant Secretary whose signature is on this Indenture or on the Guarantee no longer holds that office at the time the Trustee authenticates the Note on which a Guarantee is endorsed, the Guarantee shall be valid nevertheless.

The delivery of any Note by the Trustee, after the authentication thereof hereunder, shall constitute due delivery of the Guarantee set forth in this Indenture on behalf of the Guarantors.

Section 10.08.  <u>Waiver of Stay, Extension or Usury Laws</u>.  Each Guarantor covenants to the extent permitted by law that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law or any usury law or other law that would prohibit or forgive such Guarantor from performing its Guarantee as contemplated herein, wherever enacted, now or at any time hereafter in force, or which may affect the covenants or the performance of this Guarantee; and each Guarantor hereby expressly waives to the extent permitted by law all benefit or advantage of any such law, and covenants that it shall not hinder, delay or impede the execution of any power herein granted to the Trustee, but shall suffer and permit the execution of every such power as though no such law had been enacted.

### ARTICLE ELEVEN

#### Miscellaneous

Section 11.01.  <u>Trust Indenture Act Controls</u>.  If any provision of this Indenture limits, qualifies, or conflicts with another provision which is required to be included in this Indenture by the

TIA, the required provision shall control. Any provision of the TIA which is required to be included in a qualified Indenture, but not expressly included herein, shall be deemed to be included by this reference.

Section 11.02. <u>Notices</u>. Any notices or other communications required or permitted hereunder shall be in writing, and shall be sufficiently given if made by hand delivery, by telex, by telecopier, by overnight courier or registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

if to the Company:

Baseline Oil & Gas Corp.
411 N. Sam Houston Parkway East
Suite 300
Houston, Texas  77060
Attention: Chief Executive Officer
Facsimile Number: (281) 591-6101

if to the Trustee:

The Bank of New York Mellon Trust Company, N.A.
601 Travis Street, 16th Floor
Houston, Texas 77002
Attn: Corporate Trust Administration
Facsimile Number: (713) 483-6954
if to the Collateral Agent:

The Bank of New York Mellon Trust Company, N.A.
601 Travis Street, 16th Floor
Houston, Texas 77002
Attn: Corporate Trust Administration
Facsimile Number: (713) 483-6954

Each of the Company and the Trustee by written notice to each other may designate additional or different addresses for notices to such Person. Any notice or communication to the Company or the Trustee shall be deemed to have been given or made as of the date so delivered if personally delivered; when answered back, if telexed; when receipt is acknowledged, if faxed; one (1) Business Day after mailing if sent by overnight courier; and five (5) calendar days after mailing if sent by registered or certified mail, postage prepaid (except that a notice of change of address or a notice sent by mail to the Trustee shall not be deemed to have been given until actually received by the addressee).

Any notice or communication mailed to a Holder shall be mailed to such Holder by first class mail or other equivalent means at such Holder's address as it appears on the registration books of the Registrar and shall be sufficiently given to such Holder if so mailed within the time prescribed.

Failure to mail a notice or communication to a Holder or any defect in it shall not affect its sufficiency with respect to other Holders. If a notice or communication is mailed in the manner provided above, it is duly given, whether or not the addressee receives it.

Section 11.03. <u>Communications by Holders with Other Holders</u>.   Holders may communicate pursuant to TIA Section 312(b) with other Holders with respect to their rights under this

Indenture, any Collateral Agreement, any Guarantee or the Notes.  The Company, the Trustee, the Collateral Agent, the Registrar and any other Person shall have the protection of TIA Section 312(c).

Section 11.04.  Certificate and Opinion as to Conditions Precedent.  Upon any request or application by the Company or any Guarantor to the Trustee or the Collateral Agent, as the case may be, to take any action under this Indenture or any Collateral Agreement, the Company shall furnish to the Trustee or the Collateral Agent, as the case may be, upon request:

(a)     an Officers' Certificate, in form and substance reasonably satisfactory to the Trustee or the Collateral Agent, as the case may be, stating that, in the opinion of the signers, all conditions precedent to be performed by the Company or the applicable Guarantor (as the case may be), if any, provided for in this Indenture, any Collateral Agreement, the Notes or the Guarantees relating to the proposed action have been complied with; and

(b)     an Opinion of Counsel stating that, in the opinion of such counsel, all such conditions precedent to be performed by the Company or the applicable Guarantor (as the case may be), if any, provided for in this Indenture relating to the proposed action have been complied with.

Section 11.05.  Statements Required in Certificate or Opinion.  Each certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture or any Collateral Agreement, other than the Officers' Certificate required by Section 4.06, must comply with TIA Section 314(e) and must include:

(1)     a statement that the Person making such certificate or opinion has read such covenant or condition;

(2)     a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(3)     a statement that, in the opinion of such Person, he has made such examination or investigation as is reasonably necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(4)     a statement as to whether or not, in the opinion of each such Person, such condition or covenant has been complied with.

Section 11.06.  Rules by Trustee, Paying Agent, Registrar.  The Trustee may make reasonable rules in accordance with the Trustee's customary practices for action by or at a meeting of Holders.  The Paying Agent or Registrar may make reasonable rules for its functions.

Section 11.07.  Legal Holidays.  A "Legal Holiday" used with respect to a particular place of payment is a Saturday, a Sunday or a day on which banking institutions in New York, New York at such place of payment are not required to be open.  If a payment date is a Legal Holiday at such place, payment may be made at such place on the next succeeding day that is not a Legal Holiday, and no interest shall accrue for the intervening period.

Section 11.08.  Governing Law.  THIS INDENTURE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. EACH OF THE PARTIES HERETO SUBMITS TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS INDENTURE OR THE TRANSACTIONS CONTEMPLATED BY THIS INDENTURE.

Section 11.09.  <u>No Adverse Interpretation of Other Agreements</u>.  This Indenture may not be used to interpret another indenture, loan or debt agreement of the Company or any of its Subsidiaries. Any such indenture, loan or debt agreement may not be used to interpret this Indenture.

Section 11.10.  <u>No Recourse Against Others</u>.  No affiliate, director, officer, employee, incorporator or holder of any equity interests in the Company or any direct or indirect parent corporation of the Company, as such, will have any liability for any obligations of the Company under the Notes or this Indenture, or for any claim based on, in respect of, or by reason of, such obligations or their creation. Each Holder of a Note by accepting a Note waives and releases all such liability.  The waiver and release are part of the consideration for issuance of the Notes.  The parties hereto acknowledge that such waiver may not be effective to waive liabilities under the federal securities laws.

Section 11.11.  <u>Successors</u>.  All agreements of the Company and the Guarantors in this Indenture, the Notes, and the Guarantees shall bind their successors.  All agreements of the Trustee and the Collateral Agent in this Indenture shall bind their respective successors.

Section 11.12.  <u>Duplicate Originals</u>.  All parties may sign any number of copies of this Indenture.  Each signed copy shall be an original, but all of them together shall represent the same agreement.

Section 11.13.  <u>Severability</u>.  In case any one or more of the provisions in this Indenture, the Notes or in the Guarantees shall be held invalid, illegal or unenforceable, in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect and of the remaining provisions shall not in any way be affected or impaired thereby, it being intended that all of the provisions hereof shall be enforceable to the full extent permitted by law.

Section 11.14.  <u>Waiver of Jury Trial</u>.    EACH OF THE COMPANY, THE GUARANTORS, THE TRUSTEE, THE COLLATERAL AGENT, AND BY ITS ACCEPTANCE THEREOF, EACH HOLDER OF A NOTE, HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THIS INDENTURE, THE COLLATERAL AGREEMENTS, THE NOTES, THE GUARANTEES OR THE TRANSACTIONS CONTEMPLATED BY THIS INDENTURE.

Section 11.15.  <u>Force Majeure</u>.  In no event shall the Trustee be responsible or liable for any failure or delay in the performance of its obligations hereunder arising out of or caused by, directly or indirectly, forces beyond its control, including, without limitation, strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services; it being understood that the Trustee shall use reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as practicable under the circumstances.

**ARTICLE TWELVE**

Security

Section 12.01.  <u>Grant of Security Interest</u>.  (a) To secure the due and punctual payment of the principal of, premium, if any, and interest on the Notes and amounts due hereunder and under the Guarantees when and as the same shall be due and payable, whether on an Interest Payment Date, at maturity, by acceleration, purchase, repurchase, redemption or otherwise, and interest on the overdue

principal of, premium, if any, and interest (to the extent permitted by law), if any, on the Notes and the performance of all other Obligations of the Company and the Guarantors to the Holders of Notes, the Collateral Agent or the Trustee under this Indenture, the Collateral Agreements, the Guarantees and the Notes, the Company and the Guarantors hereby covenant to cause the Collateral Agreements to be executed and delivered concurrently with this Indenture. The Collateral Agreements shall provide for the grant by the Company and Guarantors party thereto to the Collateral Agent of security interests in the Collateral, and such grants shall be subject to the Intercreditor Agreement. To the extent that any provision of this Indenture is not consistent with or contradicts the Security Agreement, the Security Agreement shall govern.

(b)     Each Holder of Notes, by its acceptance of a Note, consents and agrees to the terms of each Collateral Agreement (including, without limitation, the provisions providing for foreclosure and release of Collateral), as the same may be in effect or may be amended from time to time in accordance with their respective terms and the terms of this Indenture, and authorizes and directs the Collateral Agent to enter into this Indenture, the Intercreditor Agreement and the other Collateral Agreements, to bind such Holder to the terms set forth in the Intercreditor Agreement and the other Collateral Agreements, and to perform its obligations and exercise its rights thereunder in accordance therewith. The Company shall, and shall cause its Domestic Restricted Subsidiaries to, do or cause to be done, at its sole cost and expense, all such actions and things as may be required or contemplated by the provisions of the Intercreditor Agreement and the other Collateral Agreements, to assure and confirm to the Collateral Agent the security interests in the Collateral contemplated by the Collateral Agreements, as from time to time constituted, so as to render the same available for the security and benefit of this Indenture and of the Notes, the Guarantees and all other Obligations of the Company and the Guarantors secured thereby, according to the intent and purpose herein and therein expressed and subject to the Intercreditor Agreement, including taking all commercially reasonable actions required or as may be reasonably requested by the Collateral Agent to cause the Collateral Agreements to create and maintain valid, enforceable and perfected security interests in and on all the Collateral, in favor of the Collateral Agent for the benefit of itself, the Trustee and Holders of the Notes, superior to and prior to the rights of all third Persons other than as set forth in the Intercreditor Agreement, and subject to no other Liens, in each case, except as expressly provided herein or therein. If required for the purpose of meeting the legal requirements of any jurisdiction in which any of the Collateral may at the time be located, the Company, the Trustee and the Collateral Agent shall have the power to appoint, and shall take all reasonable action to appoint, one or more Persons approved by the Trustee and reasonably acceptable to the Company to act as co-Collateral Agent with respect to any such Collateral, with such rights and powers limited to those deemed necessary for the Company, the Trustee or the Collateral Agent to comply with any such legal requirements with respect to such Collateral, and which rights and powers shall not be inconsistent with the provisions of this Indenture, the Notes, the Guarantees and the Collateral Agreements. The Company shall from time to time promptly pay all financing and continuation statement recording and/or filing fees, charges and taxes relating to this Indenture, the Collateral Agreements and any amendments hereto or thereto and any other instruments of further assurance required pursuant hereto or thereto.

Section 12.02. _Intercreditor Agreement_. This Indenture and the Collateral Agreements (other than the Intercreditor Agreement) are subject to the terms, limitations and conditions set forth in the Intercreditor Agreement. The Trustee, the Company and each Holder of a Note, by its acceptance of a Note, is deemed to have authorized and instructed the Collateral Agent to enter into the Intercreditor Agreement on its behalf and to bind such Holder to the terms set forth in the Intercreditor Agreement as the same may be in effect or may be amended from time to time in accordance with its terms, and to perform its obligations and exercise its rights thereunder in accordance therewith.

Each Holder of Notes (including, for the avoidance of doubt, any PIK Notes) issued pursuant hereto (a) acknowledges that it has received a copy of the Intercreditor Agreement, (b) agrees

L-87

that it will be bound by and will take no actions contrary to the provisions of the Intercreditory Agreement and (c) authorizes and instructs The Bank of New York Mellon Trust Company, N.A. as Collateral Agent for the Holders of the Notes to enter into the Intercreditor Agreement as Collateral Agent for and on behalf of such Holder. The foregoing provisions are intended as an inducement to the holders of Notes and to permit the incurrence of Indebtedness under the Indenture and to extend credit to the Company. In the event of any conflict or inconsistency between the provisions of the Intercreditor Agreement and the provisions of this Indenture or the other Collateral Agreements, the provisions of the Intercreditor Agreement shall control.

Section 12.03.  Recording and Opinions.  (a) Each of the Company and the Guarantors shall file financing statements in its jurisdiction of organization and in any other relevant jurisdictions describing itself as debtor, the Collateral Agent as secured party, and the collateral covered by such financing statements as "All assets of Debtor, all proceeds thereof, and all rights and privileges with respect thereto" (or substantially similar words) and, if the Collateral Agent so requests, containing more specific descriptions of some or all of the Collateral. The Company and the Guarantors, and each of them, hereby authorize the Collateral Agent to file the foregoing financing statements from time to time on their behalf in all relevant jurisdictions and to file amendments and continuation statements from time to time with respect thereto.

(b)     Contemporaneously with the execution and delivery of this Indenture and promptly after the execution and delivery of any other instrument of further assurance or amendment, the Company shall furnish to the Trustee and the Collateral Agent an Opinion of Counsel either (i) stating that, in the opinion of such counsel, the Collateral Agreements and such other instruments of further assurance or amendment are effective to create a security interest in the Collateral and that all recordings, registrations and filings necessary to perfect and maintain the perfection of the security interests created thereby have been taken and reciting the details of such actions, and stating that such recordings, registrations and filings are the only actions necessary to perfect and maintain the perfection of such security interests, or (ii) stating that, in the Opinion of such Counsel, no other actions are necessary to perfect or maintain the perfection of any security interest created by the Collateral Agreements and such other instrument of assurance or amendment.

(c)     No later than thirty days prior to [_____] 1 in each year, commencing [_____] 1, 2010, the Company shall furnish to the Trustee and the Collateral Agent an Opinion of Counsel either (i) stating that, in the opinion of such counsel, all action necessary to perfect or continue the perfection of the security interests created by the Collateral Agreements and any other instrument of further assurance or amendment and reciting the details of such action or referring to prior Opinions of Counsel in which such details are given have been taken or (ii) stating that, in the Opinion of such Counsel, no such action is necessary to perfect or continue the perfection of the security interests created under the Collateral Agreements and any other instrument of further assurance or amendment.

(d)     The Company shall otherwise comply with the provisions of TIA Section 314(b).

Section 12.04.  Release of Collateral.  (a) Subject to the Intercreditor Agreement, the Collateral Agent shall not at any time release Collateral from the security interests created by the Collateral Agreements unless such release is in accordance with the provisions of this Indenture and the applicable Collateral Agreements.

(b)     Subject to the Intercreditor Agreement, at any time when a Default or an Event of Default shall have occurred and be continuing (regardless of whether any declaration of acceleration with respect to the Notes has occurred), no release of Collateral pursuant to the provisions of this Indenture or the Collateral Agreements shall be effective as against the Holders.

(c)     The release of any Collateral from the Liens created by the Collateral Agreements shall not be deemed to impair such Liens in contravention of the provisions hereof if and to the extent such Collateral is released in accordance with the Intercreditor Agreement, this Indenture and the Collateral Agreements.  To the extent applicable, the Company shall cause TIA Section 313(b) relating to reports, and TIA Section 314(d) relating to the release of property from the security interests created by the Collateral Agreements, to be complied with.  Any certificate or opinion required by TIA Section 314(d) may be given by an Officer of the Company, except in cases where TIA Section 314(d) requires that such certificate or opinion be given by an independent Person, which Person shall be an independent engineer, appraiser or other expert selected or approved by the Trustee in the exercise of reasonable care.  A Person is "independent" if such Person (a) is in fact independent, (b) does not have any direct financial interest or any material indirect financial interest in the Company or in any Affiliate of the Company and (c) is not an officer, employee, promoter, underwriter, trustee, partner or director or person performing similar functions to any of the foregoing for the Company.  The Trustee and the Collateral Agent shall be entitled to receive and rely upon a certificate provided by any such Person confirming that such Person is independent within the foregoing definition.

        Section 12.05.  Specified Releases of Collateral.  Subject to Section 12.04, upon the request of the Company pursuant to an Officers' Certificate certifying that all conditions precedent hereunder and under the Collateral Agreements have been met and without the consent of any Holder, the Company will be entitled to releases of assets included in the Collateral from the Liens created by the Collateral Documents under any one or more of the following circumstances:

        (1)     to enable the Company to consummate asset dispositions permitted or not prohibited under Section 4.16, subject to compliance by the Company with the provisions relating to the application of any Net Cash Proceeds under Section 4.16;

        (2)     if any Subsidiary that is a Guarantor is released from its Guarantee that Subsidiary's assets will also be released from the Liens created by the Collateral Agreements;

        (3)     if required in accordance with the terms of the Intercreditor Agreement; or

        (4)     as described in Article Nine.

        Upon receipt of such Officers' Certificate and any necessary or proper instruments of termination, satisfaction or release prepared by the Company, the Collateral Agent shall execute, deliver or acknowledge such instruments or releases to evidence the release of any Collateral permitted to be released pursuant to this Indenture and the Collateral Agreements (each such release to be made at the sole cost and expense of the Company and without any recourse, representation or warranty by the Collateral Agent).

        Section 12.06.  Release upon Satisfaction or Defeasance of all Outstanding Obligations. Subject to Section 12.04, the Liens on all Collateral will be terminated and released upon any of (i) payment in full of (x) the principal of, and premium, if any, and accrued and unpaid interest on, the Notes and amounts due hereunder and under the Guarantees, (y) interest on the overdue principal of, premium, if any, and interest (to the extent permitted by law), if any on the Notes and (z) all other Obligations of the Company and the Guarantors to the Holders, the Collateral Agent or the Trustee under this Indenture, the Collateral Agreements, the Guarantees and the Notes that are then due and payable.

        Section 12.07.  Form and Sufficiency of Release.  In the event that the Company or any Guarantor has sold, exchanged, or otherwise disposed of or proposes to sell, exchange or otherwise dispose of any portion of the Collateral that may be sold, exchanged or otherwise disposed of by the

Company or such Guarantor in accordance with this Indenture, the Intercreditor Agreement and the other Collateral Documents, and the Company or such Guarantor requests the Trustee or the Collateral Agent to furnish a written disclaimer, release or quit-claim of any interest in such property, the Collateral Agent and the Trustee, as applicable, shall execute, acknowledge and deliver to the Company or such Guarantor (in proper form) such an instrument promptly after satisfaction of the conditions set forth herein for delivery of any such release. Notwithstanding the preceding sentence, all purchasers and grantees of any property or rights purporting to be released herefrom shall be entitled to rely upon any release executed by the Collateral Agent hereunder as sufficient for the purpose of this Indenture and as constituting a good and valid release of the property therein described from the Lien created by the Collateral Agreements.

Section 12.08. <u>Purchaser Protected</u>. No purchaser or grantee of any property or rights purporting to be released herefrom shall be bound to ascertain the authority of the Trustee or the Collateral Agent to execute the release or to inquire as to the existence of any conditions herein prescribed for the exercise of such authority; nor shall any purchaser or grantee of any property or rights permitted by this Indenture to be sold or otherwise disposed of by the Company be under any obligation to ascertain or inquire into the authority of the Company to make such sale or other disposition.

Section 12.09. <u>Authorization of Actions to Be Taken by the Collateral Agent Under the Collateral Agreements</u>. (a) The Bank of New York Mellon Trust Company, N.A. is hereby appointed to act in its capacity as the Collateral Agent. Subject to the provisions of the Intercreditor Agreement and the applicable Collateral Agreements:

(b) the Collateral Agent shall execute and deliver the Collateral Agreements and act in accordance with the terms thereof;

(c) the Collateral Agent may, in its sole discretion and without the consent of the Trustee or the Holders, take all actions it deems necessary or appropriate in order to:

(i) enforce any of the terms of the Collateral Agreements; and

(ii) collect and receive any and all amounts payable in respect of the Obligations of the Company and the Guarantors to the Holders, the Collateral Agent or the Trustee hereunder and under the Notes, the Guarantees and the Collateral Agreements; and

(d) the Collateral Agent shall have power to institute and to maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Collateral by any act that may be unlawful or in violation of the Collateral Agreements or this Indenture, and suits and proceedings as the Collateral Agent may deem expedient to preserve or protect its interests and the interests of the Trustee and the Holders in the Collateral (including the power to institute and maintain suits or proceedings to restrain the enforcement of or compliance with any legislative or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid if the enforcement of, or compliance with, such enactment, rule or order would impair the security interest thereunder or be prejudicial to the interests of the Holders, the Trustee or the Collateral Agent).

Notwithstanding the foregoing, the Collateral Agent may, at the expense of the Company, request the direction of the Holders of the Notes with respect to any such actions and upon receipt of the written consent of the Holders of at least 85% in aggregate principal amount of the outstanding Notes, shall take such actions; <u>provided</u> that all actions so taken shall, at all times, be in conformity with the requirements of the Intercreditor Agreement.

Section 12.10.  <u>Authorization of Receipt of Funds by the Collateral Agent Under the Collateral Agreements</u>.  The Collateral Agent is authorized to receive any funds for the benefit of itself, the Trustee and the Holders distributed under the Collateral Agreements to the extent permitted under the Intercreditor Agreement, for turnover to the Trustee to make further distributions of such funds to itself, the Collateral Agent and the Holders in accordance with the provisions of <u>Section 6.11</u> and the other provisions of this Indenture.

SIGNATURES

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed, all as of the date first written above.

BASELINE OIL & GAS CORP.

By:_____
      Name:
      Title:

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as Trustee and Collateral Agent

By:_____
      Name:
      Title:

*Indenture*

*Exhibit A*

FORM OF SERIES A 20% SENIOR SECURED NOTE

[FOR THIRD POINT NOTES] NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF (COLLECTIVELY, A "TRANSFER") IN THE ABSENCE OF THE REGISTRATION OF SUCH TRANSFER UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, REGISTRATION. THE TRANSFER OF THIS SECURITY AND THE REQUEST TO REMOVE THIS LEGEND SHALL BE SUBJECT TO THE COMPANY'S AND THE TRUSTEE'S RIGHT TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION REASONABLY SATISFACTORY TO EACH OF THEM, AND A CERTIFICATE OF TRANSFER IN THE FORM APPEARING ON THE OTHER SIDE OF THIS SECURITY IS COMPLETED AND DELIVERED BY THE TRANSFEROR TO THE TRUSTEE OR TRANSFER AGENT.

THIS NOTE IS A GLOBAL NOTE WITHIN THE MEANING OF THE INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITARY OR A NOMINEE OF A DEPOSITARY OR A SUCCESSOR DEPOSITARY.  THIS NOTE IS NOT EXCHANGEABLE FOR NOTES REGISTERED IN THE NAME OF A PERSON OTHER THAN THE DEPOSITARY OR ITS NOMINEE EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE, AND NO TRANSFER OF THIS NOTE (OTHER THAN A TRANSFER OF THIS NOTE AS A WHOLE BY THE DEPOSITARY TO A NOMINEE OF THE DEPOSITARY OR BY A NOMINEE OF THE DEPOSITARY TO THE DEPOSITARY OR ANOTHER NOMINEE OF THE DEPOSITARY) MAY BE REGISTERED EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE.

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

THIS NOTE HAS BEEN ISSUED WITH ORIGINAL ISSUE DISCOUNT ("OID") FOR PURPOSES OF SECTIONS 1271 ET SEQ. OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED. FOR INFORMATION REGARDING THE ISSUE PRICE, AMOUNT OF OID PER $1,000 OF PRINCIPAL AMOUNT AND THE YIELD TO MATURITY FOR PURPOSES OF THE OID RULES, PLEASE CONTACT THE CHIEF FINANCIAL OFFICER OF THE ISSUER AT 11811 NORTH FREEWAY I-45, SUITE 200, HOUSTON, TEXAS 77060, (281) 591-6100.

EXHIBIT L                                    A-1

*Exhibit A*

## BASELINE OIL & GAS CORP.

### SERIES A 20% SENIOR SECURED PIK NOTES DUE 2014

CUSIP No. [          ]

No. [    ]                                                                                              $_____

Baseline Oil & Gas Corp., a Delaware corporation (the "Company," which term includes any successor entity), for value received promises to pay to [Cede & Co.] or registered assigns the principal sum of Five Million Dollars (or such principal amount as may be set forth in the records of the Trustee hereinafter referred to in accordance with the Indenture) on _____, 2014, and to pay interest thereon as hereinafter set forth. *[Depositary arrangement to be clarified.]*

Interest Rate: 20% per annum.

Interest Payment Dates: Interest will be payable quarterly in cash in arrears on January 1, April 1, July 1 and October 1 of each year, beginning on _____ 1, 2009.

Record Dates: December 15, March 15, June 15 and September 15.

Reference is made to the further provisions of this Note contained on the reverse side of this Note, which will for all purposes have the same effect as if set forth at this place.

IN WITNESS WHEREOF, the Company has caused this Note to be signed manually or by facsimile by its duly authorized officer.

BASELINE OIL & GAS CORP.

By: _____
       Name:
       Title:

Dated: _____, 2009

EXHIBIT L                                                    A-2

*Exhibit A*

TRUSTEE CERTIFICATE OF AUTHENTICATION

This is one of the Series A 20% Senior Secured PIK Notes due 2014 referred to in the within-mentioned Indenture.

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., as Trustee

Dated: _____, 2009      By: _____
                                Authorized Signatory

EXHIBIT L                          A-3

(REVERSE OF SECURITY)

**Series A 20% Senior Secured PIK Note due 2014**

       1.     Interest. The Company promises to pay interest on the principal amount of this Note at the rate per annum shown above; provided, however, that a portion of such interest in an amount equal to the applicable PIK Interest Amount may be paid by the Company on the applicable Interest Payment Date by issuing to the registered Holder hereof on the applicable Record Date one or more PIK Notes in an aggregate principal amount equal to such PIK Interest Amount in lieu of paying such portion of such interest in cash, subject to the Company complying with Section 2.16 of the Indenture. Interest on the Note will accrue from the most recent date on which interest has been paid or, if no interest has been paid, from and including [_____ 1, 2009]. The Company will pay interest quarterly in arrears on each Interest Payment Date, commencing [_____ 1, 2009]. Interest will be computed on the basis of a 360-day year comprised of twelve 30-day months. The Company will pay interest on overdue principal at 1% per annum in excess of the above rate and will pay interest on overdue installments of interest at such higher rate to the extent lawful.

       2.     Method of Payment. The Company shall pay interest on the Notes (except defaulted interest) to the Persons who are the registered Holders at the close of business on the Record Date immediately preceding the Interest Payment Date even if the Notes are cancelled on registration of transfer or registration of exchange after such Record Date, and on or before such Interest Payment Date. Holders must surrender Notes to a Paying Agent to collect principal payments. The Company shall pay principal and interest in money of the United States that at the time of payment is legal tender for payment of public and private debts ("U.S. Legal Tender"); provided, however, the Company may pay principal and interest in cash by check payable in such U.S. Legal Tender. The Company may deliver any such interest payment to the Paying Agent or to a Holder at the Holder's registered address.

       3.     Paying Agent and Registrar. Initially, The Bank of New York Mellon Trust Company, N.A. (the "Trustee") will act as Paying Agent and Registrar. The Company may change any Paying Agent, Registrar or co-Registrar without notice to the Holders.

       4.     Indenture; Ranking. The Notes and the Guarantees were issued under an Indenture, dated _____, 2009 (the "Indenture"), among the Company, the Trustee and the Collateral Agent. Capitalized terms herein are used as defined in the Indenture unless otherwise defined herein. The terms of the Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939 (15 U.S. Code §§ 77aaa-77bbbb) (the "TIA"), as in effect on the date of the Indenture until, if applicable, such time as the Indenture is qualified under the TIA, and thereafter as in effect on the date on which the Indenture is qualified under the TIA. Notwithstanding anything to the contrary herein, the Notes are subject to all such terms, and Holders of Notes are referred to the Indenture and the TIA for a statement of such terms. Each Holder, by accepting a Note, agrees to be bound by all of the terms and provisions of the Indenture, as the same may be amended from time to time. To the extent this Note and the Indenture are inconsistent, the Indenture shall control. The Notes are senior secured obligations of the Company.

       5.     Redemption.

       (a)     Optional Redemption Prior to [_____], 2012. At any time prior to _____], 2012, the Company may redeem all or a part of the Notes, upon not less than 30 nor more than 60 days' prior notice mailed by first-class mail to the registered address of each Holder of the Notes to be redeemed, at a Redemption Price equal to 100% of the principal amount of Notes to be redeemed

*Exhibit A*

plus the Applicable Premium as of, and accrued and unpaid interest to the third anniversary of the Issue Date, subject to the rights of Holders of the Notes on the relevant Record Date to receive interest due on the relevant Interest Payment Date on the redemption date (the "Redemption Date"); provided, however, that the Company may not redeem any Series B Senior Notes or Subordinated Notes if any Notes will remain outstanding after the Redemption Date..

      (b)    Optional Redemption on or After [_____], 2012. On or after [_____, 2012], the Company may redeem all or a part of the Notes upon not less than 30 nor more than 60 days' notice mailed by first-class mail to the registered address of each Holder of the Notes to be redeemed, at a Redemption Price equal to 100% of the principal amount of the Notes to be redeemed plus accrued and unpaid interest to the date of redemption, subject to the rights of Holders of the Notes on the relevant Record Date to receive interest due on the relevant Interest Payment Date on the Redemption Date; provided, however, that the Company may not redeem any Series B Senior Notes or Subordinated Notes if any Notes will remain outstanding after the Redemption Date.

      (c)    Mandatory Redemption. The Company is not required to make any mandatory redemption or sinking fund payments with respect to the Notes.

      (d)    Notice of Redemption. Notice of redemption will be mailed by first-class mail at least 30 days but not more than 60 days before the Redemption Date to each Holder of the Notes to be redeemed at such Holder's registered address with a copy to the Trustee and Paying Agent. If fewer than all of the Notes are to be redeemed, at any time, selection of the Notes for redemption will be made by the Trustee in compliance with the requirements of the principal national securities exchange, if any, on which the Notes are listed, or, if the Notes are not so listed, on a pro rata basis, by lot or by such method as the Trustee deems to be fair and appropriate. Notes in denominations of $1,000 may be redeemed only in whole. The Trustee may select for redemption portions (equal to $1,000 or any integral multiple thereof) of the principal amount of Notes that have denominations larger than $1,000.

      Except as set forth in the Indenture, if monies for the redemption of the Notes called for redemption shall have been deposited with the Paying Agent for redemption on such Redemption Date sufficient to pay such Redemption Price plus accrued and unpaid interest, the Notes called for redemption will cease to bear interest from and after such Redemption Date, and the only remaining right of the Holders of such Notes will be to receive payment of the Redemption Price plus accrued and unpaid interest as of the Redemption Date upon surrender to the Paying Agent of the Notes redeemed.

      6.    Restrictive Covenants. The Indenture imposes certain limitations on the ability of the Company and its Restricted Subsidiaries to, among other things, incur additional Indebtedness or grant Liens, make payments in respect of their Capital Stock or certain Indebtedness, enter into transactions with Affiliates, create dividend or other payment restrictions affecting Restricted Subsidiaries, merge or consolidate with any other Person, sell, assign, transfer, lease, convey or otherwise dispose of all or substantially all of its assets or adopt a plan of liquidation, in each case, as set forth in the Indenture.

      7.    Offers to Purchase. Sections 4.15 and 4.16 of the Indenture provide that in the event of a Change of Control and after certain Asset Sales, respectively, and subject to further limitations contained therein, the Company will be required to make an offer to purchase Notes in accordance with the terms and procedures set forth in the Indenture; provided, however, that any payments made in connection with either a Change of Control or Net Proceeds Offer must be made first and in full to the Holders of the Notes before any such payments are made to holders of Series B Senior Notes or Subordinated Notes.

EXHIBIT L                A-5

*Exhibit A*

8.     Denominations; Transfer; Exchange.  The Notes are in registered form, without coupons, and except in the case of PIK Notes, in denominations of $1,000 and integral multiples thereof. A Holder shall register the transfer of or exchange of Notes in accordance with the Indenture.  The Registrar may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and to pay any taxes, fees or similar governmental charges payable in connection therewith as permitted by the Indenture.  The Registrar need not register the transfer of or exchange of any Notes or portions thereof selected for redemption.

9.     Persons Deemed Owners.  The registered Holder of a Note shall be treated as the owner of it for all purposes.

10.     Unclaimed Money.  If money for the payment of principal or interest remains unclaimed for two years, the Trustee and the Paying Agent may pay the money without interest thereon back to the Company.  After that, all liability of the Trustee and such Paying Agent with respect to such money shall cease.

11.     Defeasance; Satisfaction and Discharge Prior to Redemption or Maturity.  If the Company defeases Notes at any time or deposits with the Trustee U.S. Legal Tender or U.S. Government Obligations sufficient to pay the principal of and interest on the Notes to redemption or stated maturity and complies with the other provisions of the Indenture relating thereto, the Company will be discharged from certain provisions of the Indenture and the Notes (including certain covenants, but excluding its obligation to pay the principal of and interest on the Notes), as set forth in the Indenture; provided, however, that the Series B Senior Notes and the Subordinated Notes may be defeased or satisfied and discharged only if the Notes are no longer outstanding or have previously or simultaneously been defeased or satisfied and discharged, as applicable, in the same manner and to the same extent.

12.     Amendment; Supplement; Waiver.  The Indenture, the Notes, the Guarantees and the Collateral Agreements may be amended or supplemented with the written consent of the Holders of at least 85% in aggregate principal amount of the Notes then outstanding, and any existing Default or Event of Default or noncompliance with any provision may be waived with the written consent of the Holders of at least 85% in aggregate principal amount of the Notes then outstanding, subject to and as set forth in the Indenture and the Collateral Agreements.  Without consent of any Holder, the parties thereto may amend or supplement the Indenture, the Notes, the Guarantees, or the Collateral Agreements to, among other things, cure any ambiguity, defect or inconsistency, provide for uncertificated Notes in addition to or in place of certificated Notes, provide for the assumption of the Company's or any Guarantor's obligations in accordance with Section 5.01 and Section 10.04 of the Indenture, make any other change that would provide any additional rights or benefits to the Holders that does not adversely affect the legal rights of any Holder of a Note, to comply with the TIA, to allow for additional guarantees, if necessary, in connection with any addition or release of Collateral permitted under the Indenture or the Collateral Agreements and to release a Guarantor from its Guarantee as permitted by the Indenture.  However no such amendment, modification, supplement or waiver, including a waiver pursuant to Section 6.04 of the Indenture, may without the consent of each Holder affected thereby, make the modifications specified in the second paragraph of Section 9.02 of the Indenture.  No amendment, modification, supplement or waiver may, without the consent of the Holders holding at least 85% in aggregate principal amount of the Notes outstanding at such time, may release all or substantially all of the Collateral from the Liens created by the Collateral Agreements otherwise than in accordance with the terms of this Indenture, the Intercreditor Agreement and the Collateral Agreements.

13.     Successors.  When a successor assumes, in accordance with the Indenture, all the obligations of its predecessor under the Notes, the Guarantees and the Indenture, the predecessor will be released from those obligations.

EXHIBIT L                                    A-6

14.     Defaults and Remedies. If an Event of Default occurs and is continuing (other than certain events of bankruptcy involving the Company), the Trustee or the Holders of at least 25% in aggregate principal amount of the Notes may declare all the Notes to be due and payable in the manner, at the time and with the effect provided in the Indenture. Holders of Notes may not enforce the Indenture except as provided in the Indenture. The Trustee is not obligated to enforce the Indenture or the Notes unless it has received indemnity satisfactory to it. The Indenture permits, subject to certain limitations therein provided, Holders of at least 85% in aggregate principal amount of the Notes then outstanding to direct the Trustee in its exercise of any trust or power.

15.     Trustee Dealings with Company. Subject to the terms of the TIA and the Indenture, the Trustee under the Indenture, in its individual or any other capacity, may become the owner or pledgee of Notes and may otherwise deal with the Company, its Subsidiaries or their respective Affiliates as if it were not the Trustee.

16.     No Recourse Against Others. No past, present or future affiliate, director, officer, employee, incorporator or holder of any equity interests in the Company or a Guarantor or any direct or indirect parent corporation of the Company or a Guarantor, as such, will have any liability for any obligations of the Company or a Guarantor under the Notes, the Guarantees or the Indenture, or for any claim based on, in respect of, or by reason of, such obligations or their creation. Each Holder of Notes by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for issuance of the Notes. Each of the parties hereto acknowledge that such waiver may not be effective to waive liabilities under the federal securities laws.

17.     Authentication. This Note shall not be valid until the Trustee or Authenticating Agent manually signs the certificate of authentication on this Note.

18.     Governing Law. THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. EACH OF THE PARTIES HERETO SUBMITS TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED BY THIS NOTE.

19.     Abbreviations and Defined Terms. Customary abbreviations may be used in the name of a Holder of a Note or an assignee, such as: TEN COM (= tenants in common), TEN ENT (= tenants by the entireties), JT TEN (= joint tenants with right of survivorship and not as tenants in common), CUST (= Custodian), and U/G/M/A (= Uniform Gifts to Minors Act).

20.     Security. The Company's and Guarantors' obligations under the Notes are secured by first priority liens on the Collateral pursuant to the terms of the Collateral Agreements. The actions of the Trustee and the Holders of the Notes secured by such liens and the application of proceeds from the enforcement of any remedies with respect to such Collateral are limited pursuant to the terms of the Collateral Agreements.

21.     CUSIP Numbers. Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Company has caused CUSIP numbers to be printed on the Notes as a convenience to the Holders of the Notes. No representation is made as to the accuracy of such numbers as printed on the Notes and reliance may be placed only on the other identification numbers printed thereon.

The Company will furnish to any Holder of a Note upon written request and without charge a copy of the Indenture. Requests may be made to: Baseline Oil & Gas Corp., 11811 North Freeway I-45, Suite 200, Houston, Texas 77060.

EXHIBIT L                                           A-7

*Exhibit A*

## FORM OF GUARANTEE

The undersigned and its successors under the Indenture has irrevocably and unconditionally guaranteed, on a senior secured basis to the extent set forth in the Indenture, dated as of _____, 2009 (the "Indenture"), by and between Baseline Oil & Gas Corp. (the "Company") and The Bank of New York Mellon Trust Company, N.A., as Trustee and Collateral Agent, (i) the due and punctual payment of the principal of, premium, if any, and interest on the Notes, whether at maturity, by acceleration or otherwise, the due and punctual payment of interest on the overdue principal of (including interest accruing at the then applicable rate provided in the Indenture, the Notes, the Guarantees or any Collateral Agreement after the occurrence of any Event of Default set forth in Section 6.01(6) or (7) of the Indenture, whether or not a claim for post-filing or post-petition interest is allowed under applicable law following the institution of a proceeding under bankruptcy, insolvency or similar law) and interest on the Notes, to the extent lawful, and the due and punctual performance of all other obligations of the Company to the Holders or the Trustee all in accordance with the terms set forth in Article Ten of the Indenture and (ii) in case of any extension of time of payment or renewal of any Notes or any of such other obligations, that the same will be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, whether at stated maturity, by acceleration or otherwise. Capitalized terms used herein have the meanings assigned to them in the Indenture unless otherwise indicated.

THE OBLIGATIONS OF THE UNDERSIGNED TO HOLDERS OF THE NOTES AND TO THE TRUSTEE PURSUANT TO THIS NOTATION OF GUARANTEE (THE "GUARANTEE") AND THE INDENTURE ARE EXPRESSLY SET FORTH IN ARTICLE TEN OF THE INDENTURE AND REFERENCE IS HEREBY MADE TO THE INDENTURE FOR THE PRECISE TERMS OF THE GUARANTEE AND ALL OTHER PROVISIONS OF THE INDENTURE TO WHICH THE GUARANTEE RELATES. EACH HOLDER OF A NOTE, BY ACCEPTING THE SAME, (A) AGREES TO AND SHALL BE BOUND BY SUCH PROVISIONS AND (B) APPOINTS THE TRUSTEE ATTORNEY-IN-FACT FOR SUCH HOLDER FOR SUCH PURPOSES.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York.

[NAME OF GUARANTOR]

By: _____
Name:
Title:

EXHIBIT L                                    A-8

*Exhibit A*

ASSIGNMENT FORM

If you the Holder want to assign this Note, fill in the form below and have your signature guaranteed:

I or we assign and transfer this Note to:

_____

_____

(Print or type name, address and zip code and
social security or tax ID number of assignee)

and irrevocably appoint _____
agent to transfer this Note on the books of the Company.  The agent may substitute another to act for him.

Dated: _____        Signed: _____
                                                (Sign exactly as your name appears on the
                                                other side of this Note)

Signature Guarantee: _____

In connection with any transfer of this Note occurring prior to the date which is the earlier of (i) the date of the declaration by the SEC of the effectiveness of a registration statement under the Securities Act of 1933, as amended (the "Securities Act"), covering resales of this Note (which effectiveness shall not have been suspended or terminated at the date of the transfer) and (ii) _____, 2010, the undersigned confirms that it has not utilized any general solicitation or general advertising in connection with the transfer and that this Note is being transferred:

[Check One]

.        to the Company or a subsidiary thereof; or

.        pursuant to and in compliance with Rule 144A under the Securities Act; or

.        to an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3) or (7) under the
         Securities Act) that has furnished to the Trustee a signed letter containing certain
         representations and agreements (the form of which letter can be obtained from the
         Trustee); or

.        outside the United States to a person other than a "U.S. person" in compliance with Rule 904 of
         Regulation S under the Securities Act; or

.        pursuant to the exemption from registration provided by Rule 144 under the Securities Act; or

.        pursuant to an effective registration statement under the Securities Act.

Unless one of the boxes is checked, the Trustee will refuse to register any of the Notes evidenced by this certificate in the name of any person other than the registered Holder thereof; provided that if box (3), (4) or (5) is checked, the Company or the Trustee may require, prior to registering any such transfer of the Notes, in its sole discretion, such legal opinions, certifications (including an investment letter in the case of box (3) or (4)) and other information as the Trustee or the Company has reasonably requested to confirm that such transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act.

EXHIBIT L                                A-9

*Exhibit A*

If none of the foregoing boxes is checked, the Trustee or Registrar shall not be obligated to register this Note in the name of any person other than the Holder hereof unless and until the conditions to any such transfer of registration set forth herein and in <u>Section 2.15</u> of the Indenture shall have been satisfied.

Dated: _____     Signed: _____

(Sign exactly as your name appears on the other side of this Note)

Signature Guarantee: _____

### TO BE COMPLETED BY PURCHASER IF (2) ABOVE IS CHECKED

The undersigned represents and warrants that it is purchasing this Note for its own account or an account with respect to which it exercises sole investment discretion and that it and any such account is a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act and is aware that the sale to it is being made in reliance on Rule 144A and acknowledges that it has received such information regarding the Company as the undersigned has requested pursuant to Rule 144A or has determined not to request such information and that it is aware that the transferor is relying upon the undersigned's foregoing representations in order to claim the exemption from registration provided by Rule 144A.

Dated: _____     _____

NOTICE: To be executed by an executive officer

EXHIBIT L                                          A-10

*Exhibit A*

## OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this Note purchased by the Company pursuant to Section 4.15 or Section 4.16 of the Indenture, check the appropriate box:

Section 4.15  [          ]

Section 4.16  [          ]

If you want to elect to have only part of this Note purchased by the Company pursuant to Section 4.15 or Section 4.16 of the Indenture, state the amount you elect to have purchased:

$ _____

Dated: _____       _____

NOTICE:  The signature on this assignment must correspond with the name as it appears upon the face of the within Note in every particular without alteration or enlargement or any change whatsoever and be guaranteed by the endorser's bank or broker.

Signature Guarantee: _____

EXHIBIT L                                                    A-11

*Exhibit B*

### Form of Private Placement Legend

[FOR THIRD POINT NOTES] NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF (COLLECTIVELY, A "TRANSFER") IN THE ABSENCE OF THE REGISTRATION OF SUCH TRANSFER UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, REGISTRATION. THE TRANSFER OF THIS SECURITY AND THE REQUEST TO REMOVE THIS LEGEND SHALL BE SUBJECT TO THE COMPANY'S AND THE TRUSTEE'S RIGHT TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION REASONABLY SATISFACTORY TO EACH OF THEM, AND A CERTIFICATE OF TRANSFER IN THE FORM APPEARING ON THE OTHER SIDE OF THIS SECURITY IS COMPLETED AND DELIVERED BY THE TRANSFEROR TO THE TRUSTEE OR TRANSFER AGENT.

### Form of Global Note Legend

THIS NOTE IS A GLOBAL NOTE WITHIN THE MEANING OF THE INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITARY OR A NOMINEE OF A DEPOSITARY OR A SUCCESSOR DEPOSITARY. THIS NOTE IS NOT EXCHANGEABLE FOR NOTES REGISTERED IN THE NAME OF A PERSON OTHER THAN THE DEPOSITARY OR ITS NOMINEE EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE, AND NO TRANSFER OF THIS NOTE (OTHER THAN A TRANSFER OF THIS NOTE AS A WHOLE BY THE DEPOSITARY TO A NOMINEE OF THE DEPOSITARY OR BY A NOMINEE OF THE DEPOSITARY TO THE DEPOSITARY OR ANOTHER NOMINEE OF THE DEPOSITARY) MAY BE REGISTERED EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE.

### Other Legends

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

THIS NOTE HAS BEEN ISSUED WITH ORIGINAL ISSUE DISCOUNT ("OID") FOR PURPOSES OF SECTIONS 1271 ET SEQ. OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED. FOR INFORMATION REGARDING THE ISSUE PRICE, AMOUNT OF OID PER $1,000 OF PRINCIPAL AMOUNT AND THE YIELD TO MATURITY FOR PURPOSES OF THE OID RULES, PLEASE CONTACT THE CHIEF FINANCIAL OFFICER OF THE ISSUER AT 11811 NORTH FREEWAY I-45, SUITE 200, HOUSTON, TEXAS 77060, (281) 591-6100.

EXHIBIT L                    B-1

*Exhibit C*

FORM OF CERTIFICATE FROM
ACQUIRING INSTITUTIONAL ACCREDITED INVESTOR

Baseline Oil & Gas Corp.
411 N. Sam Houston Parkway East
Suite 300
Houston, Texas 77060
Attention: Chief Executive Officer
Facsimile Number: (281) 591-6101

The Bank of New York Mellon Trust Company, N.A.
601 Travis Street, 16th Floor
Houston, Texas 77002
Attn: Corporate Trust Administration
Facsimile Number: (713) 483-6954

Re:   Series A 20% Senior Secured PIK Notes Due 2014

Reference is hereby made to the Indenture, dated as of _____, 2009 (the "Indenture"), among Baseline
Oil & Gas Corp. (the "Company"), as Issuer, the Guarantors (as defined in the Indenture) and The Bank
of New York Mellon Trust Company, N.A., as Trustee and Collateral Agent. Capitalized terms used but
not defined herein shall have the meanings given to them in the Indenture.

In connection with our proposed purchase of $_____ aggregate principal amount of:

> (a)   ☐   a beneficial interest in a Global Note, or

> (b)   ☐   a Definitive Note,

we confirm that:

1.   We understand that any subsequent transfer of the Notes or any interest therein is subject to
certain restrictions and conditions set forth in the Indenture and the undersigned agrees to be
bound by, and not to resell, pledge or otherwise transfer the Notes or any interest therein except
in compliance with, such restrictions and conditions and the United States Securities Act of 1933,
as amended (the "Securities Act").

2.   We understand that the offer and sale of the Notes have not been registered under the Securities
Act, and that the Notes and any interest therein may not be offered or sold except as permitted in
the following sentence. We agree, on our own behalf and on behalf of any accounts for which we
are acting as hereinafter stated, that if we should sell the Notes or any interest therein, we will do
so only (A) to the Company or any subsidiary thereof, (B) in accordance with Rule 144A under
the Securities Act to a "qualified institutional buyer" (as defined therein), (C) to an institutional
"accredited investor" (as defined below) that, prior to such transfer, furnishes (or has furnished on
its behalf by a U.S. broker-dealer) to you and to the Company a signed letter substantially in the
form of this letter, and if such transfer is in respect of a principal amount of Notes, at the time of
transfer of less than $[250,000], an Opinion of Counsel in form reasonably acceptable to the
Company to the effect that such transfer is in compliance with the Securities Act, (D) outside the
United States in accordance with Rule 904 of Regulation S under the Securities Act, (E) pursuant
to the provisions of Rule 144(k) under the Securities Act or (F) pursuant to an effective
registration statement under the Securities Act, and we further agree to provide to any person

EXHIBIT L                              C-1

*Exhibit C*

purchasing the Definitive Note or beneficial interest in a Global Note from us in a transaction meeting the requirements of clauses (A) through (E) of this paragraph a notice advising such purchaser that resales thereof are restricted as stated herein.

3.      We understand that, on any proposed resale of the Notes or beneficial interest therein, we will be required to furnish to you and the Company such certifications, legal opinions and other information as you and the Company may reasonably require to confirm that the proposed sale complies with the foregoing restrictions. We further understand that the Notes purchased by us will bear a legend to the foregoing effect. We further understand that any subsequent transfer by us of the Notes or beneficial interest therein acquired by us must be effected through one of the Placement Agents.

4.      We are an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3), or (7) of Regulation D under the Securities Act) and have such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of our investment in the Notes, and we and any accounts for which we are acting are each able to bear the economic risk of our or its investment.

5.      We are acquiring the Notes or beneficial interest therein purchased by us for our own account or for one or more accounts (each of which is an institutional "accredited investor") as to each of which we are exercise sole investment discretion.

You and the Company are entitled to rely upon this letter and are irrevocably authorized to produce this letter or a copy hereof to any interested party in any administrative or legal proceedings or official inquiry with respect to the matters covered hereby.

[Insert Name of Accredited Investor]

By:_____

Name:

Title:

Dated:_____

EXHIBIT L                                     C-2

*Exhibit D*

FORM OF CERTIFICATE FROM
TRANSFEREE ACQUIRING PURSUANT TO REGULATION S

Baseline Oil & Gas Corp.
411 N. Sam Houston Parkway East
Suite 300
Houston, Texas 77060
Attention: Chief Executive Officer
Facsimile Number: (281) 591-6101

The Bank of New York Mellon Trust Company, N.A.
601 Travis Street, 16th Floor
Houston, Texas 77002
Attn: Corporate Trust Administration
Facsimile Number: (713) 483-6954

Re:     Series A 20% Senior Secured PIK Notes Due 2014

Reference is hereby made to the Indenture, dated as of _____, 2009 (the "Indenture"), among Baseline Oil & Gas Corp. (the "Company"), as Issuer, the Guarantors (as defined in the Indenture) and The Bank of New York Mellon Trust Company, N.A., as Trustee and Collateral Agent. Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

In connection with our proposed purchase of $_____ aggregate principal amount of:

       (a)    ☐     a beneficial interest in a Global Note, or

       (b)    ☐     a Definitive Note,

we confirm that:

6.     We understand that any subsequent transfer of the Notes or any interest therein is subject to certain restrictions and conditions set forth in the Indenture and the undersigned agrees to be bound by, and not to resell, pledge or otherwise transfer the Notes or any interest therein except in compliance with, such restrictions and conditions and the United States Securities Act of 1933, as amended (the "Securities Act").

7.     We understand that the offer and sale of the Notes have not been registered under the Securities Act, and that the Notes and any interest therein may not be offered or sold except as permitted in the following sentence. We agree, on our own behalf and on behalf of any accounts for which we are acting as hereinafter stated, that if we should sell the Notes or any interest therein, we will do so only (A) to the Company or any subsidiary thereof, (B) in accordance with Rule 144A under the Securities Act to a "qualified institutional buyer" (as defined therein), (C) to an institutional "accredited investor" (as defined below) that, prior to such transfer, furnishes (or has furnished on its behalf by a U.S. broker-dealer) to you and to the Company a signed letter substantially in the form of this letter, and if such transfer is in respect of a principal amount of Notes, at the time of transfer of less than $[250,000], an Opinion of Counsel in form reasonably acceptable to the Company to the effect that such transfer is in compliance with the Securities Act, (D) outside the United States in accordance with Rule 904 of Regulation S under the Securities Act, (E) pursuant to the provisions of Rule 144(k) under the Securities Act or (F) pursuant to an effective

*Exhibit D*

registration statement under the Securities Act, and we further agree to provide to any person purchasing the Definitive Note or beneficial interest in a Global Note from us in a transaction meeting the requirements of clauses (A) through (E) of this paragraph a notice advising such purchaser that resales thereof are restricted as stated herein.

8.    We understand that, on any proposed resale of the Notes or beneficial interest therein, we will be required to furnish to you and the Company such certifications, legal opinions and other information as you and the Company may reasonably require to confirm that the proposed sale complies with the foregoing restrictions. We further understand that the Notes purchased by us will bear a legend to the foregoing effect. We further understand that any subsequent transfer by us of the Notes or beneficial interest therein acquired by us must be effected through one of the Placement Agents.

9.    We are acquiring the Notes or beneficial interest therein pursuant to and in accordance with Rule 903 or Rule 904 under the Securities Act and, accordingly, we certify that (i) we are not a Person in the United States and (x) at the time the buy order was originated, we were outside the United States or the transferor and any Person acting on its behalf reasonably believed and believes that we were outside the United States or (y) the transaction was executed in, on or through the facilities of a designated offshore securities market and neither such transferor nor any Person acting on its behalf knows that the transaction was prearranged with a buyer in the United States, (ii) no directed selling efforts have been made in contravention of the requirements of Rule 903(b) or Rule 904(b) of Regulation S under the Securities Act, (iii) the transaction is not part of a plan or scheme to evade the registration requirements of the Securities Act and (iv) if the proposed transfer is being made prior to the expiration of the 40-day distribution compliance period as defined in Regulation S under the Securities Act, the transfer is not being made to a U.S. Person or for the account or benefit of a U.S. Person.

10.    Upon consummation of the proposed purchase in accordance with the terms of the Indenture, the purchased Notes or beneficial interest therein will be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Note and in the Indenture and the Securities Act.

You and the Company are entitled to rely upon this letter and are irrevocably authorized to produce this letter or a copy hereof to any interested party in any administrative or legal proceedings or official inquiry with respect to the matters covered hereby.

_____

[Insert Name of Transferee]


By:_____
Name:
Title:

Dated:_____._____

EXHIBIT L                                      D-2

*EXHIBIT M*

---

INDENTURE,

Dated as of _____, 2009

BETWEEN

BASELINE OIL & GAS CORP.

as Issuer

AND

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,

as Trustee and Collateral Agent

---

Series B 20% Senior Secured PIK Notes due 2014

---

## CROSS-REFERENCE TABLE

| TIA Section | Indenture Section |
|---|---|
| 310(a)(1) | 7.10 |
| (a)(2) | 7.10 |
| (a)(3) | 7.10 |
| (a)(4) | N.A. |
| (a)(5) | 7.10 |
| (b) | 7.03; 7.08; 7.10 |
| (c) | N.A. |
| 311(a) | 7.03; 7.11 |
| (b) | 7.03; 7.11 |
| (c) | N.A. |
| 312(a) | 2.05 |
| (b) | 7.07; 11.03 |
| (c) | 11.03 |
| 313(a) | 7.06 |
| (b)(1) | 7.06 |
| (b)(2) | 7.06 |
| (c) | 7.06 |
| (d) | 7.06 |
| 314(a) | 4.06; 4.08 |
| (b) | 12.03 |
| (c)(1) | 4.06; 11.04 |
| (c)(2) | 11.04 |
| (c)(3) | 4.06 |
| (d) | 12.04 |
| (e) | 11.05 |
| (f) | N.A. |
| 315(a) | 7.01(b) |
| (b) | 7.05 |
| (c) | 7.01(a) |
| (d) | 7.01(c) |
| (e) | 6.11 |
| 316(a)(last sentence) | 2.09 |
| (a)(2) | N.A. |
| (b) | 6.07 |
| (c) | 9.04 |
| 317(a)(1) | 6.08 |
| (a)(2) | 6.09 |
| (b) | 2.04 |
| 318(a) | 11.01 |
| (b) | N.A. |
| (c) | 11.01 |

N.A. means Not Applicable

NOTE:  This Cross-Reference Table shall not, for any purpose, be deemed to be a part of this Indenture.

Table of Contents

| | | Page |
|---|---|---|
| ARTICLE One | Definitions and Incorporation by Reference | 1 |
| Section 1.01. | Definitions | 1 |
| Section 1.02. | Incorporation by Reference of Trust Indenture Act | 26 |
| Section 1.03. | Rules of Construction | 26 |
| ARTICLE Two | The Notes | 27 |
| Section 2.01. | Form and Dating | 27 |
| Section 2.02. | Execution and Authentication; Aggregate Principal Amount | 27 |
| Section 2.03. | Registrar and Paying Agent | 28 |
| Section 2.04. | Obligations of Paying Agent | 29 |
| Section 2.05. | Holder Lists | 29 |
| Section 2.06. | Transfer and Exchange | 29 |
| Section 2.07. | Replacement Notes | 29 |
| Section 2.08. | Outstanding Notes | 30 |
| Section 2.09. | Treasury Notes; When Notes Are Disregarded | 30 |
| Section 2.10. | Temporary Notes | 30 |
| Section 2.11. | Cancellation | 30 |
| Section 2.12. | CUSIP Numbers | 31 |
| Section 2.13. | Deposit of Moneys | 31 |
| Section 2.14. | Book-Entry Provisions for Global Notes | 31 |
| Section 2.15. | Special Transfer Provisions | 32 |
| Section 2.16. | Issuance of PIK Notes | 34 |
| ARTICLE Three | Redemption | 34 |
| Section 3.01. | Optional Redemption | 34 |
| Section 3.02. | Mandatory Redemption | 35 |
| Section 3.03. | Selection of Notes to Be Redeemed | 35 |
| Section 3.04. | Notice of Redemption | 35 |
| Section 3.05. | Effect of Notice of Redemption | 36 |
| Section 3.06. | Deposit of Redemption Price | 36 |
| Section 3.07. | Notes Redeemed in Part | 36 |
| ARTICLE Four | Covenants | 37 |

| Section 4.01. | Payment of Notes | 37 |
|---|---|---|
| Section 4.02. | Maintenance of Office or Agency | 37 |
| Section 4.03. | Corporate Existence | 37 |
| Section 4.04. | Payment of Taxes and Other Claims | 37 |
| Section 4.05. | Maintenance of Properties and Insurance | 38 |
| Section 4.06. | Compliance Certificate; Notice of Default | 38 |
| Section 4.07. | Compliance with Laws | 39 |
| Section 4.08. | Reports to Holders | 39 |
| Section 4.09. | Waiver of Stay, Extension or Usury Laws | 40 |
| Section 4.10. | Limitation on Restricted Payments | 40 |
| Section 4.11. | Limitations on Transactions with Affiliates | 41 |
| Section 4.12. | Limitation on Incurrence of Additional Indebtedness | 42 |
| Section 4.13. | Limitation on Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries | 42 |
| Section 4.14. | Additional Guarantees | 44 |
| Section 4.15. | Repurchase upon Change of Control | 44 |
| Section 4.16. | Limitation on Asset Sales | 46 |
| Section 4.17. | Limitation on Liens | 48 |
| Section 4.18. | Conduct of Business | 48 |
| Section 4.19. | Limitation on Issuances and Sales of Capital Stock of Subsidiaries | 48 |
| Section 4.20. | Payments for Consent | 48 |
| Section 4.21. | Impairment of Security Interest | 48 |
| Section 4.22. | Real Estate Mortgages and Filings | 49 |
| Section 4.23. | Oil and Gas Mortgages and Filings | 49 |
| Section 4.24. | Leasehold Mortgages and Filings; Landlord Waivers | 50 |
| Section 4.25. | Other Collateral | 50 |
| Section 4.26. | Purchases | 51 |
| Section 4.27. | No Amendment to Subordination Provisions | 51 |
| ARTICLE Five | Successor Corporation | 51 |
| Section 5.01. | Merger, Consolidation and Sale of Assets | 51 |
| Section 5.02. | Successor Corporation Substituted | 53 |
| ARTICLE Six | Default and Remedies | 53 |

| | | |
|---|---|---|
| Section 6.01. | Events of Default | 53 |
| Section 6.02. | Acceleration | 55 |
| Section 6.03. | Other Remedies | 55 |
| Section 6.04. | Waiver of Past Defaults | 55 |
| Section 6.05. | Control by Holders Owning at Least 85% | 55 |
| Section 6.06. | Limitation on Suits | 56 |
| Section 6.07. | Rights of Holders to Receive Payment | 56 |
| Section 6.08. | Collection Suit by Trustee or Collateral Agent | 57 |
| Section 6.09. | Trustee May File Proofs of Claim | 57 |
| Section 6.10. | Priorities | 57 |
| Section 6.11. | Undertaking for Costs | 57 |
| Section 6.12. | Restoration of Rights and Remedies | 58 |
| Section 6.13. | Rights and Remedies Cumulative | 58 |
| Section 6.14. | Delay or Omission not Waiver | 58 |
| ARTICLE Seven | Trustee | 58 |
| Section 7.01. | Duties of Trustee | 58 |
| Section 7.02. | Rights of Trustee | 59 |
| Section 7.03. | Individual Rights of Trustee | 61 |
| Section 7.04. | Trustee's Disclaimer | 61 |
| Section 7.05. | Notice of Default | 62 |
| Section 7.06. | Reports by Trustee to Holders | 62 |
| Section 7.07. | Compensation and Indemnity | 62 |
| Section 7.08. | Replacement of Trustee | 63 |
| Section 7.09. | Successor Trustee by Merger, Etc | 64 |
| Section 7.10. | Eligibility; Disqualification | 64 |
| Section 7.11. | Preferential Collection of Claims Against Company | 65 |
| Section 7.12. | Trustee as Collateral Agent and Paying Agent | 65 |
| Section 7.13. | Co-Trustees, Co-Collateral Agent and Separate Trustees, Collateral Agent | 65 |
| ARTICLE Eight | Defeasance; Satisfaction and Discharge of Indenture | 66 |
| Section 8.01. | Legal Defeasance and Covenant Defeasance | 66 |
| Section 8.02. | Satisfaction and Discharge | 68 |
| Section 8.03. | Survival of Certain Obligations | 69 |

Section 8.04.    Acknowledgment of Discharge by Trustee.........................................69
Section 8.05.    Application of Trust Moneys...................................................69
Section 8.06.    Repayment to the Company; Unclaimed Money..............................69
Section 8.07.    Reinstatement....................................................................70
Section 8.08.    Indemnity for Government Obligations.......................................70
ARTICLE Nine    Amendments, Supplements and Waivers ...............................70
Section 9.01.    Without Consent of Holders .................................................70
Section 9.02.    With Consent of Holders ....................................................71
Section 9.03.    Compliance with TIA .........................................................72
Section 9.04.    Revocation and Effect of Consents........................................72
Section 9.05.    Notation on or Exchange of Notes.........................................73
Section 9.06.    Trustee to Sign Amendments, Etc ........................................73
Section 9.07.    Conformity with Trust Indenture Act .....................................73
ARTICLE Ten    Guarantee .........................................................................73
Section 10.01.    Guarantee.........................................................................73
Section 10.02.    Release of a Guarantor.......................................................74
Section 10.03.    Limitation of Guarantor's Liability .....................................75
Section 10.04.    Guarantors May Consolidate, etc., on Certain Terms.....................75
Section 10.05.    Contribution .....................................................................76
Section 10.06.    Waiver of Subrogation........................................................76
Section 10.07.    Evidence of Guarantee........................................................76
Section 10.08.    Waiver of Stay, Extension or Usury Laws.............................76
ARTICLE Eleven    Miscellaneous ...............................................................77
Section 11.01.    Trust Indenture Act Controls .............................................77
Section 11.02.    Notices ............................................................................77
Section 11.03.    Communications by Holders with Other Holders............................78
Section 11.04.    Certificate and Opinion as to Conditions Precedent.........................78
Section 11.05.    Statements Required in Certificate or Opinion.................................78
Section 11.06.    Rules by Trustee, Paying Agent, Registrar.........................................78
Section 11.07.    Legal Holidays...................................................................78
Section 11.08.    Governing Law .................................................................79
Section 11.09.    No Adverse Interpretation of Other Agreements.............................79
Section 11.10.    No Recourse Against Others.................................................79