to such Grantor a notice that such vote or the exercise of such corporate or other organizational right or the taking of such other action could impair the Collateral or result in any violation of any provision of the Indenture, this Agreement or any other Financing Document.

(b)     If an Event of Default shall occur and be continuing, the Collateral Agent shall give written notice of its intent to exercise any of the following rights to the relevant Grantor or Grantors (provided, that, in the case of any of the events described in clauses (6) and (7) of Section [6.01] of the Indenture occurring with respect to such Grantor, no such notice shall be required): (i) the Collateral Agent shall have the right to receive any and all cash dividends, distributions, payments or other Proceeds paid in respect of the Investment Property and make application thereof to the Secured Obligations in such order as the Collateral Agent may determine; and (ii) the Collateral Agent shall have the right to have any or all of the Investment Property registered in the name of the Collateral Agent or its nominee, and the Collateral Agent or its nominee may thereafter exercise (x) all voting, corporate and other rights pertaining to such Investment Property at any meeting of shareholders (or other equivalent body) of the relevant Issuer or Issuers or otherwise and (y) any and all rights of conversion, exchange and subscription and any other rights, privileges or options pertaining to such Investment Property as if it were the absolute owner thereof (including the right to exchange at its discretion any and all of the Investment Property upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the corporate or other organizational structure of any Issuer, or upon the exercise by any Grantor or the Collateral Agent of any right, privilege or option pertaining to such Investment Property, and in connection therewith, the right to deposit and deliver any and all of the Investment Property with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as the Collateral Agent may determine), all without liability except to account for property actually received by it, but the Collateral Agent shall have no duty to any Grantor to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

(c)     Each Grantor hereby authorizes and instructs each Issuer of any Investment Property pledged by such Grantor hereunder to (i) comply with any instruction received by it from the Collateral Agent in writing that (x) states that an Event of Default has occurred and is continuing and (y) is otherwise in accordance with the terms of this Agreement without any other or further instructions from such Grantor, and each Grantor agrees that each Issuer shall be fully protected in so complying, and (ii) unless otherwise expressly permitted hereby, pay any dividends or other payments with respect to the Investment Property directly to the Collateral Agent.

(d)     After the occurrence and during the continuation of an Event of Default, if the Issuer of any Pledged Stock or Pledged Notes is the subject of bankruptcy, insolvency, receivership, custodianship or other proceedings under the supervision of any governmental authority, then all rights of the Grantors in respect thereof to exercise the voting and other consensual rights which such Grantor would otherwise be entitled to exercise with respect to the Pledged Stock or Pledged Notes issued by such Issuer shall cease, and all such rights shall

thereupon become vested in the Collateral Agent who shall thereupon have the sole right to exercise such voting and other consensual rights, but the Collateral Agent shall have no duty to exercise any such voting or other consensual rights and shall not be responsible for any failure to do so or delay in so doing.

5.4     Proceeds To Be Turned Over to Collateral Agent.  In addition to the rights of the Secured Parties specified in Section 5.1 with respect to payments of Receivables and Section 5.3 with respect to payments in respect of Investment Property, if an Event of Default shall occur and be continuing and if so directed by the Collateral Agent, all Proceeds received by any Grantor consisting of cash, checks and cash equivalents shall be held by such Grantor in trust for the Collateral Agent, segregated from other funds of such Grantor, and shall, forthwith upon receipt by such Grantor, be turned over to the Collateral Agent in the exact form received by such Grantor (duly indorsed by such Grantor to the Collateral Agent).  All Proceeds received by the Collateral Agent hereunder shall be held by the Collateral Agent in a Collateral Account maintained under its sole dominion and control.  All Proceeds while held by the Collateral Agent in a Collateral Account (or by such Grantor in trust for the Collateral Agent for the ratable benefit of the Secured Parties) shall continue to be held as collateral security for all the obligations and shall not constitute payment thereof until applied as provided in Section 5.5.

5.5     Application of Proceeds.  At any time that an Event of Default shall have occurred and be continuing, the Collateral Agent may apply all or any part of the Proceeds of any collection or sale of the Collateral, and any Collateral consisting of cash, whether or not held in any Collateral Account and including any proceeds of any Guaranty, in payment of the Secured Obligations in accordance with Section [6.10] of the Indenture and the relevant provisions of the Intercreditor Agreement.

5.6     Code and Other Remedies.

(a)     If an Event of Default shall occur and be continuing, the Collateral Agent, on behalf of the Trustee and the Holders, may exercise, in addition to all other rights and remedies granted to them in this Agreement, the Indenture and the other Financing Documents and in any other instrument or agreement securing, evidencing or relating to the Secured Obligations, all rights and remedies of a secured party under the UCC or any other applicable law or otherwise available at law or in equity.  Without limiting the generality of the foregoing, the Collateral Agent, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below) to or upon any Grantor or any other Person (all and each of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, lease, assign, give option or options to purchase, or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, at any exchange, broker's board or office of the Collateral Agent, the Trustee or any Holder or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk.  The Collateral Agent, the Trustee or any Holder shall have the right upon any such public sale or

sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption in any Grantor, which right or equity is hereby waived and released. Each Grantor further agrees, at the Collateral Agent's request, to assemble the Collateral and make it available to the Collateral Agent at places that the Collateral Agent shall reasonably select, whether at such Grantor's premises or elsewhere. Upon any such sale or transfer, the Collateral Agent shall have the right to deliver, assign and transfer to the purchaser or transferee thereof the Collateral so sold or transferred. The Collateral Agent shall apply the net proceeds of any action taken by it pursuant in accordance with Section 5.5 above. To the extent permitted by applicable law, each Grantor waives all claims, damages and demands it may acquire against the Collateral Agent, the Trustee or any Holder arising out of the exercise by them of any rights hereunder. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten days before such sale or other disposition.

(b)     In the event that the Collateral Agent does not sell the Collateral, the Collateral Agent retains its rights to dispose of or utilize the Collateral or any part or parts thereof in any manner authorized or permitted by law or in equity, and to apply the proceeds of the same towards payment of the Secured Obligations. Each and every method of disposition of the Collateral described in this Agreement shall constitute disposition in a commercially reasonable manner.

(c)     The Collateral Agent will not submit a "Notice of Exclusive Control" under a Deposit Account Control Agreement or a Securities Account Control Agreement, as applicable, unless it reasonably believes that an Event of Default has occurred and is continuing at the time of such submission.

(d)     The Collateral Agent may appoint any Person as agent to perform any act or acts necessary or incident to any sale or transfer of the Collateral.

5.7     Registration Rights.

(a)     If the Collateral Agent shall determine to exercise its right to sell any or all of the Pledged Stock pursuant to Section 5.6, and if in the opinion of the Collateral Agent it is necessary or advisable to have the Pledged Stock, or that portion thereof to be sold, registered under the provisions of the Securities Act, the relevant Grantor will cause the Issuer thereof to (i) execute and deliver, and use its best efforts to cause the directors and officers of such Issuer to execute and deliver, all such instruments and documents, and do or cause to be done all such other acts as may be, in the opinion of the Collateral Agent, necessary or advisable to register the Pledged Stock, or that portion thereof to be sold, under the provisions of the Securities Act, (ii) use its best efforts to cause the registration statement relating thereto to become effective and to remain effective for a period of one year from the date of the first public offering of the Pledged Stock, or that portion thereof to be sold, and (iii) make all amendments thereto and/or to the related prospectus requested by the Collateral Agent as being necessary or advisable, all in conformity

with the requirements of the Securities Act and the rules and regulations of the Securities and Exchange Commission applicable thereto. Each Grantor agrees to use its best efforts to cause such Issuer to comply with the provisions of the securities or "Blue Sky" laws of any and all jurisdictions that the Collateral Agent shall designate and to make available to its security holders, as soon as practicable, an earnings statement (which need not be audited) that will satisfy the provisions of Section 11(a) of the Securities Act.

(b)     Each Grantor recognizes that the Collateral Agent may be unable to effect a public sale of any or all the Pledged Stock, by reason of certain prohibitions contained in the Securities Act and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers that will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof. Each Grantor acknowledges and agrees that any such private sale may result in prices and other terms less favorable than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner. The Collateral Agent shall be under no obligation to delay a sale of any of the Pledged Stock for the period of time necessary to permit the Issuer thereof to register such securities for public sale under the Securities Act, or under applicable state securities laws, even if such Issuer would agree to do so.

(c)     Each Grantor agrees to use its best efforts to do or cause to be done all such other acts as may be necessary to make such sale or sales of all or any portion of the Pledged Stock pursuant to this Section 5.7 valid and binding and in compliance with any and all other applicable laws. Each Grantor further agrees that a breach of any of the covenants contained in this Section 5.7 will cause irreparable injury to the Secured Parties, that the Secured Parties have no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this Section 5.7 shall be specifically enforceable against such Grantor, and such Grantor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that no Event of Default has occurred under the Indenture.

5.8     Deficiency. Each Grantor shall remain liable for any deficiency if the proceeds of any sale or other disposition of the Collateral are insufficient to pay its Secured Obligations and the fees and disbursements of any attorneys employed by the Collateral Agent, the Trustee or any Holder to collect such deficiency.

5.9     Non-Judicial Enforcement. The Collateral Agent may enforce its rights hereunder without prior judicial process or judicial hearing, and to the extent permitted by law, each Grantor expressly waives any and all legal rights that might otherwise require the Collateral Agent to enforce its rights by judicial process.

## SECTION 6.   THE COLLATERAL AGENT

6.1     Collateral Agent's Appointment as Attorney-in-Fact, etc.

(a)      Each Grantor hereby irrevocably constitutes and appoints the Collateral Agent and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Grantor and in the name of such Grantor or in its own name, for the purpose of carrying out the terms of this Agreement to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or desirable to accomplish the purposes of this Agreement, and, without limiting the generality of the foregoing, but subject to Section 6.1(b) below, each Grantor hereby gives the Collateral Agent the power and right, on behalf of such Grantor, without notice to or assent by such Grantor to do any or all of the following:

(i)      in the name of such Grantor or its own name, or otherwise, take possession of and indorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of moneys due under any Receivable or with respect to any other Collateral and file any claim or take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by the Collateral Agent for the purpose of collecting any and all such moneys due under any Receivable or with respect to any other Collateral whenever payable;

(ii)      in the case of any Intellectual Property, execute and deliver, and have recorded, any and all agreements, instruments, documents and papers as the Collateral Agent may request to evidence the Collateral Agent's, the Trustee's and the Holders' security interest in such Intellectual Property and the goodwill and general intangibles of such Grantor relating thereto or represented thereby;

(iii)      pay or discharge taxes and Liens levied or placed on or threatened against the Collateral, effect any repairs or any insurance called for by the terms of this Agreement and pay all or any part of the premiums therefor and the costs thereof;

(iv)      execute, in connection with any sale provided for in Section 5.6 or 5.7, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral; and

(v)      direct any party liable for any payment under any of the Collateral to make payment of any and all moneys due or to become due thereunder directly to the Collateral Agent or as the Collateral Agent shall direct; ask or demand for, collect, and receive payment of and receipt for, any and all moneys, claims and other amounts due or to become due at any time in respect of or arising out of any Collateral; sign and indorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications, notices and other documents in connection with any of the Collateral; commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect the Collateral or any portion thereof and to enforce any other right in respect of any Collateral; defend any suit, action or proceeding brought against such Grantor with respect to any Collateral;

settle, compromise or adjust any such suit, action or proceeding and, in connection therewith, give such discharges or releases as the Collateral Agent may deem appropriate; assign any Copyright, Patent, Domain Name, Trade Secret or Trademark (along with the goodwill of the business to which any such Copyright, Patent, Domain Name, Trade Secret or Trademark pertains), throughout the world for such term or terms, on such conditions, and in such manner, as the Collateral Agent shall determine; and generally, sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of the Collateral as fully and completely as though the Collateral Agent were the absolute owner thereof for all purposes, and do, at the Collateral Agent's option and such Grantor's expense, at any time, or from time to time, all acts and things that the Collateral Agent deems necessary to protect, preserve or realize upon the Collateral and the Collateral Agent's, the Trustee's and the Holders' security interests therein and to effect the intent of this Agreement, all as fully and effectively as such Grantor might do.

(b)     Anything in this <u>Section 6.1</u> to the contrary notwithstanding, the Collateral Agent agrees that it will not exercise any rights under the power of attorney provided for in this <u>Section 6.1</u> unless an Event of Default shall have occurred.

(c)     If any Grantor fails to perform or comply with any of its agreements contained herein, the Collateral Agent, without any obligation so to do, may perform or comply, or otherwise cause performance or compliance, with such agreement.

(d)     The expenses of the Collateral Agent incurred in connection with actions undertaken as provided in this <u>Section 6.1</u>, together with interest thereon at a rate per annum equal to the highest rate per annum at which interest would then be payable on past due Notes under the Indenture, from the date of payment by the Collateral Agent to the date reimbursed by the relevant Grantor, shall be payable by such Grantor to the Collateral Agent on demand.

(e)     Each Grantor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.  All powers, authorizations and agencies contained in this Agreement are coupled with an interest and are irrevocable until this Agreement is terminated and the security interests created hereby are released.

6.2     <u>Collateral Agent's Appointment as Agent</u>.

(a)     The Collateral Agent has been appointed to act in its capacity as such pursuant to the provisions of the Indenture.  The Collateral Agent shall be obligated, and shall have the right hereunder, to make demands, to give notices, to exercise or refrain from exercising any rights, and to take or refrain from taking any action (including the release or substitution of Collateral), solely in accordance with this Agreement and the other Financing Documents; <u>provided</u> that the Collateral Agent shall exercise, or refrain from exercising, any rights and remedies provided for hereunder in accordance with the terms of the Indenture (including the provisions relating to acting on the direction of the Majority Holders or Holders owning the requisite percentage in aggregate principal amount of the Notes as provided under the Indenture or any other Financing

Document (as the case may be).  Notwithstanding any provision to the contrary elsewhere in this Agreement or in any other Financing Document, the Collateral Agent will not have any duties or responsibilities except those expressly set forth herein, or any fiduciary relationship with any Holder or any other Secured Party, and no implied covenants, functions, responsibilities, duties, obligations or liabilities on the part of the Collateral Agent shall be read into this Agreement or otherwise exist against the Collateral Agent.  The provisions in <u>Section 6</u> are solely for the benefit of the Collateral Agent and, unless otherwise provided, the Holders and the Grantors will not have any rights as a third party beneficiary or otherwise under any of the provisions hereof.  In performing its respective functions and duties hereunder and under the other Financing Documents to which the Collateral Agent is a party, the Collateral Agent shall act solely as an agent of the Trustee and the Holders and does not assume, nor shall be deemed to have assumed any obligation or relationship of trust or agency with or for, the Grantors or any of their successors and assigns.

(b)     Unless the Trustee has appointed a co-Collateral Agent pursuant to Section [7.13] of the Indenture, the Collateral Agent shall at all times be the same Person that is the Trustee under the Indenture.  Written notice of resignation by the Trustee pursuant to Section [7.08] of the Indenture shall also constitute notice of resignation as the Collateral Agent under this Agreement.  Upon the acceptance of any appointment as the Trustee under Section [7.08] of the Indenture by a successor Trustee, that successor Trustee shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring or removed Collateral Agent under this Agreement, and the retiring or removed Collateral Agent under this Agreement shall promptly (i) transfer to such successor Collateral Agent all sums, securities and other items of Collateral held hereunder, together with all records and other documents necessary or appropriate in connection with the performance of the duties of the successor Collateral Agent under this Agreement, and (ii) execute and deliver to such successor Collateral Agent such amendments to financing statements, and take such other actions, as may be necessary or appropriate in connection with the assignment to such successor Collateral Agent of the security interests created hereunder, whereupon such retiring or removed Collateral Agent shall be discharged from its duties and obligations under this Agreement.  After any retiring or removed Trustee's resignation or removal hereunder as the Collateral Agent, the provisions of this Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it under this Agreement while it was Collateral Agent hereunder.

6.3     <u>Duty in respect of Collateral</u>.  The Collateral Agent's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9-207 of the UCC or otherwise, shall be to deal with it in the same manner as the Collateral Agent deals with similar property for its own account.  None of the Collateral Agent or any of its respective officers, directors, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of any Grantor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.  The powers conferred on the Collateral Agent hereunder are solely to protect the Collateral Agent's interests in the Collateral and shall not impose any duty upon the

Collateral Agent to exercise any such powers. The Collateral Agent shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or agents shall be responsible to any Grantor for any act or failure to act hereunder, except for their own gross negligence or willful misconduct. To the fullest extent permitted by applicable law, the Collateral Agent shall be under no duty whatsoever to make or give any presentment, notice of dishonor, protest, demand for performance, notice of non-performance, notice of intent to accelerate, notice of acceleration, or other notice or demand in connection with any Collateral or the Secured Obligations, or to take any steps necessary to preserve any rights against any Grantor or any other Person, or to ascertain or take any action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Collateral, whether or not it has or is deemed to have knowledge of such matters. Each Grantor, to the extent permitted by applicable law, waives any right of marshaling in respect of any and all Collateral, and waives any right to require the Collateral Agent or the Secured Parties to proceed against any Grantor or other Person, exhaust any Collateral or enforce any other remedy that the Collateral Agent or the Secured Parties now has or may hereafter have against each Grantor or any other Person.

      6.4    Execution of Financing Statements.

      (a)    Pursuant to any applicable law, each Grantor authorizes the Collateral Agent to file or record financing statements and other filing or recording documents or instruments, including Copyright Security Agreements, Patent Security Agreements and Trademark Security Agreements, with respect to the Collateral with or without the signature of such Grantor, in such form and in such offices as the Collateral Agent reasonably determines appropriate to perfect the security interests of the Collateral Agent under this Agreement. Each Grantor authorizes the Collateral Agent to use the collateral description "all assets" or "all personal property" or words of similar import in any such financing statements. Each Grantor hereby ratifies and authorizes the filing by the Collateral Agent of any financing statement, Copyright Security Agreement, Patent Security Agreement and Trademark Security Agreement, as well as any other Filing, with respect to the Collateral made prior to the date hereof. Nothing in this Section 6.4 shall relieve any Grantor from its obligation to make Filings or file any continuation statements.

      (b)    Notwithstanding anything to the contrary in this Agreement or any other Financing Document, the Collateral Agent will not be responsible for, or have any duty or obligation with respect to, the recording, filing, registering, perfection, protection or maintenance of the security interests or Liens intended to be created by this Agreement or the other Collateral Agreements (including without limitation any UCC financing or continuation statements or similar documents or instruments). The Collateral Agent will not be responsible for, and the Collateral Agent makes no representation regarding, the validity, effectiveness or priority of any of this Agreement or the Collateral Agreements or the security interests or Liens intended to be created hereby or thereby. Notwithstanding anything to the contrary herein or in any other Financing Document, the Collateral Agent will have no liability whatsoever to any Person party to any Financing Document or to any other Person (including, without limitation, the Holders) for

failing to perfect or failing to maintain perfection on any of the security interests granted hereby (including without limitation, filing any financing statements or continuation statements).

6.5    Authority of the Collateral Agent.  Each Grantor acknowledges that the rights and responsibilities of the Collateral Agent under this Agreement with respect to any action taken by the Collateral Agent or the exercise or non-exercise by the Collateral Agent of any option, voting right, request, judgment or other right or remedy provided for herein or resulting or arising out of this Agreement shall, as between the Secured Parties, be governed by the Indenture and by such other agreements with respect thereto as may exist from time to time among them, but, as between the Collateral Agent and the Grantors, the Collateral Agent shall be conclusively presumed to be acting as agent for the Secured Parties with full and valid authority so to act or refrain from acting, and no Grantor shall be under any obligation, or entitlement, to make any inquiry respecting such authority.

6.6    Actions by the Collateral Agent.  In each case that the Collateral Agent may or is required hereunder or any other Financing Document to take any action (a "Collateral Agent Action"), including without limitation to make any determination or judgment, to give consents, to exercise rights, powers or remedies, to release or sell all or any part of the Collateral or otherwise to act hereunder or under any other Financing Document, the Collateral Agent may seek direction from the Majority Holders or Holders owning the requisite percentage in aggregate principal amount of the Notes as provided under the Indenture or any other Financing Document (as the case may be) and, to the extent the Collateral Agent does not already benefit from an indemnity to such effect, require that the Holders agree to indemnify the Collateral Agent to its reasonable satisfaction against any and all liability and expense which may be incurred by it by reason of taking or continuing to take any such Collateral Agent Action. If the Collateral Agent requests direction from the Majority Holders with respect to any Collateral Agent Action, the Collateral Agent will be entitled to refrain from such Collateral Agent Action unless and until such Collateral Agent receives direction from the Majority Holders or Holders owning the requisite percentage in aggregate principal amount of the Notes as provided under the Indenture or any other Financing Document (as the case may be), and the Collateral Agent will not incur liability to any Person by reason of so refraining.  Any direction, request, notice, consent or other action provided or permitted by this Agreement or the other Financing Documents to be given, made or taken by the Holders may be embodied in or evidenced by one or more instruments of substantially similar tenor signed by the Holders in person or by an agent thereof duly appointed in writing; and such action, except as otherwise expressly provided herein, shall become effective when such instrument or instruments are delivered to the Collateral Agent. The fact and date of the execution of any such instrument or writing may be proved in any manner that the Collateral Agent deems sufficient. Each Holder, by accepting a Note, agrees to all the terms and provisions set forth herein and in the other Financing Documents. The Collateral Agent will not be liable with respect to any Collateral Agent Action taken or omitted to be taken by it in good faith in accordance with a direction from the Majority Holders or Holders owning the requisite percentage in aggregate principal amount of the Notes as provided under the Indenture or any other Financing Document (as the case may be), and such Collateral Agent Action taken or omitted to be taken shall be binding upon all present and future Holders. This Section 6.6 does not govern the relationship between the Grantors and the Holders.

## SECTION 7.   MISCELLANEOUS

7.1     <u>Amendments in Writing</u>.  None of the terms or provisions of this Agreement may be waived, amended, restated, supplemented or otherwise modified except in accordance with Article [9] of the Indenture.

7.2     <u>Notices</u>.  All notices, requests and demands to or upon the Collateral Agent or any Grantor hereunder shall be effected in the manner provided for in Section [11.02] of the Indenture; <u>provided that</u> any such notice, request or demand to or upon any Grantor shall be addressed to such Grantor at its notice address set forth on <u>Schedule I</u> hereto.

7.3     <u>No Waiver by Course of Conduct; Cumulative Remedies</u>.  Neither the Collateral Agent nor the Trustee or any Holder shall by any act (except by a written instrument pursuant to <u>Section 7.1</u>), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default.  No failure to exercise, nor any delay in exercising, on the part of the Collateral Agent, the Trustee or any Holder, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  A waiver by the Collateral Agent, the Trustee or any Holder of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy that the Collateral Agent, the Trustee or such Holder would otherwise have on any future occasion.  The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law.

7.4     <u>Enforcement Expenses; Indemnification</u>.

(a)     Each Grantor agrees to pay or reimburse each of the Collateral Agent, the Trustee and each Holder for all its reasonable documented out-of-pocket costs and expenses incurred in enforcing or preserving any rights under this Agreement and the other Financing Documents to which such person is a party, including the reasonable fees and disbursements of counsel, in each case subject to and in accordance with the terms of the Indenture.

(b)     Each Grantor agrees to pay, and to save the Secured Parties harmless from, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes that may be payable or determined to be payable with respect to any of the Collateral or in connection with any of the transactions contemplated by this Agreement.

(c)     Each Grantor agrees to pay, and to save the Secured Parties harmless from, any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement, performance and administration of this Agreement to the extent the Company would be required to do so pursuant to Section [7.07] of the Indenture.

(d)     The agreements in this <u>Section 7.4</u> shall survive repayment of the Secured Obligations and all other amounts payable under the Indenture and the other Financing Documents.

7.5     <u>Successors and Assigns</u>. This Agreement shall be binding upon the successors and assigns of each Grantor and shall inure to the ratable benefit of the Secured Parties and their successors and permitted assigns; <u>provided</u> that no Grantor may assign, transfer or delegate any of its rights or obligations under this Agreement without the prior written consent of the Collateral Agent.

7.6     <u>Set-Off</u>. Each Grantor hereby irrevocably authorizes the Collateral Agent and each Holder at any time and from time to time while an Event of Default shall have occurred and be continuing, without notice to such Grantor or any other Grantor, any such notice being expressly waived by each Grantor, to set-off and appropriate and apply any and all deposits (general or special, time or demand, provisional or final), in any currency, and any other credits, indebtedness or claims, in any currency, in each case whether direct or indirect, absolute or contingent, matured or unmatured, at any time held or owing by the Collateral Agent or such Holder to or for the credit or the account of such Grantor, or any part thereof in such amounts as the Collateral Agent or such Holder may elect, against and on account of the obligations and liabilities of such Grantor to the Collateral Agent or such Holder hereunder and claims of every nature and description of the Collateral Agent or such Holder against such Grantor, in any currency, whether arising hereunder, under the Indenture, any other Financing Document or otherwise, as the Collateral Agent or such Holder may elect, whether or not the Collateral Agent or any Holder has made any demand for payment and although such obligations, liabilities and claims may be contingent or unmatured. The Collateral Agent and each Holder shall notify such Grantor promptly of any such set-off and the application made by the Collateral Agent or such Holder of the proceeds thereof, provided that the failure to give such notice shall not affect the validity of such set-off and application. The rights of the Collateral Agent and each Holder under this <u>Section 7.6</u> are in addition to other rights and remedies (including other rights of set-off) that the Collateral Agent or any Holder may have.

7.7     <u>Counterparts</u>. This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts (including by facsimile), and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

7.8     <u>Severability</u>. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

7.9     <u>Section Headings</u>. The Section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

7.10    <u>Integration</u>. This Agreement, the Indenture and the other Financing Documents represent the agreement of the Grantors, the Secured Parties with respect to the subject matter hereof and thereof,

and there are no promises, undertakings, representations or warranties by the Collateral Agent, the Trustee or any Holder relative to subject matter hereof and thereof not expressly set forth or referred to herein or in the Indenture or the other Financing Documents.

   7.11   GOVERNING LAW.  THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

   7.12   Submission To Jurisdiction; Waivers.  Each party hereto hereby irrevocably and unconditionally:

       (a)    submits, for itself and its property, to the nonexclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to any Financing Document, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State court or, to the extent permitted by law, in such Federal court;

       (b)    consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

       (c)    agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such Person at its address referred to in Section 7.2 or at such other address of which such Person shall have been notified pursuant thereto;

       (d)    agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

       (e)    waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding any special, exemplary, punitive or consequential damages.

   7.13   Acknowledgements.  Each Grantor hereby acknowledges that:

       (a)    it has been advised by counsel in the negotiation, execution and delivery of this Agreement and the other Financing Documents to which it is a party;

       (b)    neither the Collateral Agent, the Trustee nor any Holder has any fiduciary relationship with or duty to any Grantor arising out of or in connection with this Agreement or

any of the other Financing Documents, and the relationship between the Grantors, on the one hand, and the Secured Parties, on the other hand, in connection herewith or therewith is solely that of debtor and creditor; and

(c)     no joint venture is created hereby or by the other Financing Documents or otherwise exists by virtue of the transactions contemplated hereby among the Secured Parties or among the Grantors, on the one hand, and the Secured Parties.

7.14     WAIVER OF JURY TRIAL. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY OTHER FINANCING DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

7.15     Additional Grantors. Each Domestic Restricted Subsidiary of the Company that is required to become a party to this Agreement pursuant to Section [4.14] of the Indenture shall become a Grantor for all purposes of this Agreement upon execution and delivery by such Subsidiary of an Assumption Agreement in the form of Annex I hereto.

7.16     Releases.

(a)     Upon any sale, transfer or other disposition of assets forming part of the Collateral in accordance with the provisions of [Section 12.05] of the Indenture, such assets shall be released from the Liens created hereby, and all rights to such assets shall revert to the Grantors; provided that such release shall not extend to or otherwise affect the rights of the Collateral Agent and the Secured Parties with respect to the Proceeds of, or payments with respect to, any such sale, transfer or other disposition. At the request and sole expense of any Grantor following any such release of assets from the Liens created hereby, the Collateral Agent shall deliver to such Grantor such Collateral held by the Collateral Agent hereunder, and execute and deliver to such Grantor such documents as such Grantor shall reasonably request to evidence such release. Any execution and delivery of documents or Collateral shall be without recourse to or warranty by the Collateral Agent.

(b)     After the discharge and payment of the Secured Obligations in full, all assets then forming part of the Collateral shall be released from the Liens created hereby, and this Agreement and all obligations (other than those expressly stated to survive such termination) of the Collateral Agent and each Grantor hereunder shall terminate, all without delivery of any instrument or

performance of any act by any party, and all rights to the Collateral shall revert to the Grantors. At the request and sole expense of any Grantor following any such termination or release of the security interests in any Collateral of such Grantor, as the case may be, the Collateral Agent shall deliver to such Grantor such Collateral held by the Collateral Agent hereunder, and execute and deliver to such Grantor such documents as such Grantor shall reasonably request to evidence such termination or release.  Any execution and delivery of documents or Collateral shall be without recourse to or warranty by the Collateral Agent.

IN WITNESS WHEREOF, each of the undersigned has caused this Agreement to be duly executed and delivered as of the date first above written.

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as Collateral Agent

By: _____

Name:

Title:

BASELINE OIL & GAS CORP., as Grantor

By: _____

Name:

Title:

Schedule I

## NOTICE ADDRESSES OF GRANTORS

To all Grantors at:


With a copy to:



And with a copy to:

FORM OF
ASSUMPTION AGREEMENT

ASSUMPTION AGREEMENT, dated as of ___, 20[  ], made by _____, a _____ (the "<u>Additional Grantor</u>"), in favor of The Bank of New York Mellon Trust Company, N.A., as the Collateral Agent under the Security Agreement referred to below (together with its successors and assigns, the "<u>Collateral Agent</u>").

All capitalized terms not defined herein shall have the meaning ascribed to them in, or incorporated by reference in, such Security Agreement.

<u>W I T N E S S E T H</u>:

WHEREAS, Baseline Oil & Gas Corp., a Delaware corporation (the "<u>Company</u>"), and the Collateral Agent (among others) have entered into the Indenture, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "<u>Indenture</u>");

WHEREAS, in connection with the Indenture, the Company has entered into the First Priority Security Agreement, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "<u>Security Agreement</u>") in favor of The Bank of New York Mellon Trust Company, N.A., as Collateral Agent for the ratable benefit of the Secured Parties (as defined therein);

WHEREAS, the Indenture requires the Additional Grantor to become a party to the Security Agreement; and

WHEREAS, the Additional Grantor has agreed to execute and deliver this Assumption Agreement in order to become a party to the Security Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

SECTION 1.    <u>Security Agreement</u>.  By executing and delivering this Assumption Agreement, the Additional Grantor, as provided in <u>Section 7.15</u> of the Security Agreement, hereby becomes a party to the Security Agreement as a Grantor thereunder with the same force and effect as if originally named therein as a Grantor and, without limiting the generality of the foregoing, hereby expressly assumes all obligations and liabilities of a Grantor thereunder.  The information set forth in <u>Annex 1-A</u> hereto is hereby added to the information set forth in the Perfection Certificate and the information set forth on <u>Annex 1-B</u> hereto is hereby added to the information set forth on Schedule I to the Security Agreement. The Additional Grantor hereby represents and warrants that each of the representations and warranties

contained in <u>Section 3</u> of the Security Agreement is true and correct on and as the date hereof (after giving effect to this Assumption Agreement) as if made on and as of such date.

SECTION 2.    GOVERNING LAW, ENTIRE AGREEMENT, ETC.    THIS ASSUMPTION AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

IN WITNESS WHEREOF, the undersigned has caused this Assumption Agreement to be duly executed and delivered as of the date first above written.

[ADDITIONAL GRANTOR]

By: _____

Name:

Title:

FORM OF
DEPOSIT ACCOUNT CONTROL AGREEMENT

DEPOSIT ACCOUNT CONTROL AGREEMENT, dated as of [_____, 20__] (this "<u>Agreement</u>"), between THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as the Collateral Agent under the Security Agreement referred to below (together with its successors and assigns, the "<u>Collateral Agent</u>"), [APPLICABLE GRANTOR] (the "<u>Depositor</u>") and [Name of Bank] (the "<u>Bank</u>").

<u>W I T N E S S E T H</u>:

WHEREAS, Baseline Oil & Gas Corp., a Delaware corporation (the "<u>Company</u>"), and the Collateral Agent (among others) have entered into the Indenture, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "<u>Indenture</u>");

WHEREAS, in connection with the Indenture, the Depositor has entered into the First Priority Security Agreement, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "<u>Security Agreement</u>") in favor of The Bank of New York Mellon Trust Company, N.A., as Collateral Agent for the ratable benefit of the Secured Parties (as defined therein);

WHEREAS, pursuant to the Security Agreement, the Depositor granted to the Collateral Agent for the ratable benefit of the Secured Parties, a security interest in certain collateral, including but not limited to all right, title or interest of the Depositor in deposit account number [_____] maintained by the Bank (the "<u>Account</u>"); and

WHEREAS, the Collateral Agent, the Depositor and the Bank have agreed to execute and deliver this Deposit Account Control Agreement in order to perfect the security interest of the Collateral Agent in the Account.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

SECTION 1.    <u>The Account</u>.  All parties agree that the Account is a "deposit account" within the meaning of Article 9 of the Uniform Commercial Code of the State of New York (the "<u>UCC</u>").  The Bank has not and will not agree with any third party to comply with instructions or other directions concerning the Account or the disposition of funds in the Account originated by such third party without the prior written consent of the Collateral Agent and the Depositor.

SECTION 2.    <u>Subordination of Security Interest</u>. The Bank hereby subordinates all security interests, encumbrances, claims and rights of setoff it may have, now or in the future, against the Account

or any funds in the Account other than in connection with the payment of the Bank's customary fees and charges pursuant to its agreement with the Depositor.

SECTION 3.    Control. The Bank will comply with instructions originated by the Collateral Agent directing disposition of the funds in the Account without further consent by the Depositor. The Bank may comply with instructions directing the disposition of funds in the Account originated by the Depositor or its authorized representatives until such time as the Collateral Agent delivers a notice to the Bank that the Collateral Agent is thereby exercising exclusive control over the Account. Such notice is referred to herein as the "Notice of Exclusive Control." After the Bank receives a Notice of Exclusive Control, it will cease complying with instructions concerning the Account or funds on deposit therein originated by the Depositor or its representatives.

SECTION 4.    Statements, Confirmations and Notices of Adverse Claims. The Bank will send copies of all statements concerning the Account to each of the Depositor and the Collateral Agent at the address set forth in Section 13 below. Upon receipt of written notice of any lien, encumbrance or adverse claim against the Account or any funds credited thereto, the Bank will make reasonable efforts promptly to notify the Collateral Agent and the Depositor thereof.

SECTION 5.    Limited Responsibility of the Bank. Except for acting on the Depositor's instructions in violation of Section 3 above, the Bank shall have no responsibility or liability to the Collateral Agent for complying with instructions concerning the Account from the Depositor or the Depositor's authorized representatives that are received by the Bank before the Bank receives a Notice of Exclusive Control. The Bank shall have no responsibility or liability to the Depositor for complying with a Notice of Exclusive Control or complying with instructions concerning the Account originated by the Collateral Agent, and shall have no responsibility to investigate the appropriateness of any such instruction or Notice of Exclusive Control, even if the Depositor notifies the Bank that the Collateral Agent is not legally entitled to originate any such instruction or Notice of Exclusive Control.

SECTION 6.    Indemnification of the Bank. The Depositor hereby agrees to indemnify and hold harmless the Bank, its directors, officers, agents and employees against any and all claims, causes of action, liabilities, lawsuits, demands and damages, including, without limitation, any and all court costs and reasonable attorney's fees, in any way related to or arising out of or in connection with this Agreement or any action taken or not taken pursuant hereto, except to the extent caused by the Bank's gross negligence or willful misconduct.

SECTION 7.    Other Agreements. In the event of a conflict between this Agreement and any other agreement between the Bank and the Depositor, the terms of this Agreement will prevail; provided, however, that this Agreement shall not alter or affect any mandatory arbitration provision currently in effect between the Bank and the Depositor pursuant to a separate agreement.

SECTION 8.    Termination. This Agreement shall continue in effect until the Collateral Agent has notified the Bank in writing that this Agreement, or its security interest in the Account, is terminated. Upon receipt of such notice, the obligations of the Bank hereunder with respect to the operation and maintenance of the Account after the receipt of such notice shall terminate, the Collateral Agent shall

NYI-4200430v3                                                         2

have no further right to originate instructions concerning the Account and any previous Notice of Exclusive Control delivered by the Collateral Agent to the Bank shall be deemed to be of no further force and effect.

SECTION 9.    Complete Agreement. This Agreement and the instructions and notices required or permitted to be executed and delivered hereunder set forth the entire agreement of the parties with respect to the subject matter hereof, and, subject to Section 7 above, supersede any prior agreement and contemporaneous oral agreements of the parties concerning its subject matter.

SECTION 10.    Amendments. No amendment, modification or (except as otherwise specified in Section 8 above) termination of this Agreement, nor any assignment of any rights hereunder (except to the extent contemplated under Section 12 below), shall be binding on any party hereto unless it is in writing and is signed by each of the parties hereto, and any attempt to so amend, modify, terminate or assign except pursuant to such a writing shall be null and void. No waiver of any rights hereunder shall be binding on any party hereto unless such waiver is in writing and signed by the party against whom enforcement is sought.

SECTION 11.    Severability. If any term or provision set forth in this Agreement shall be invalid or unenforceable, the remainder of this Agreement, other than those provisions held invalid or unenforceable, shall be construed in all respects as if such invalid or unenforceable term or provision were omitted.

SECTION 12.    Successors. The terms of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective corporate successors and permitted assigns. This Agreement may be assigned by the Collateral Agent to any successor of the Collateral Agent under its security agreement with the Depositor, provided that written notice thereof is given by the Collateral Agent to the Bank.

SECTION 13.    Notices. All notices, requests and demands to or upon the Collateral Agent or the Depositor shall be effected in the manner provided for in Section [11.02] of the Indenture; provided, that any such notice, request or demand to or upon the Bank shall be addressed to the Bank at its notice address set forth on Schedule 1 hereto.

SECTION 14.    Counterparts. This Agreement may be executed in any number of counterparts, all of which shall constitute one and the same instrument, and any party hereto may execute this Agreement by signing and delivering one or more counterparts.

SECTION 15.    Choice of Law. This Agreement shall be governed by and construed in accordance with the law of the State of New York. The parties agree that New York is the "bank's jurisdiction" for purposes of the UCC.

(Signature page follows.)

**SIGNATURES:**

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., as Collateral Agent

By: _____
Name:
Title:

By: _____
Name:
Title:

[APPLICABLE GRANTOR]

By: _____
Name:
Title:

[BANK]

By: _____
Name:
Title:

Schedule 1

NOTICE ADDRESS OF THE BANK

Annex III to
Security Agreement

FORM OF
SECURITIES ACCOUNT CONTROL AGREEMENT

SECURITIES ACCOUNT CONTROL AGREEMENT, dated as of [_____, 20__] (this "Agreement"), between THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as the Collateral Agent under the Security Agreement referred to below (together with its successors and assigns, the "Collateral Agent"), [APPLICABLE GRANTOR] (the "Depositor") and [Name of Bank] (the "Securities Intermediary").

W I T N E S S E T H:

WHEREAS, Baseline Oil & Gas Corp., a Delaware corporation (the "Company"), and the Collateral Agent (among others) have entered into the Indenture, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Indenture");

WHEREAS, in connection with the Indenture, the Depositor has entered into the First Priority Security Agreement, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Security Agreement") in favor of The Bank of New York Mellon Trust Company, N.A., as Collateral Agent for the ratable benefit of the Secured Parties (as defined therein);

WHEREAS, pursuant to the Security Agreement, the Depositor granted to the Collateral Agent for the ratable benefit of the Secured Parties, a security interest in certain collateral, including but not limited to all right, title or interest of the Depositor in securities account number [_____] maintained by the Securities Intermediary (the "Account"); and

WHEREAS, the Collateral Agent, the Depositor and the Securities Intermediary have agreed to execute and deliver this Securities Account Control Agreement in order to perfect the security interest of the Collateral Agent in the Account.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

SECTION 1. The Account. The Securities Intermediary hereby represents and warrants to the Collateral Agent and the Depositor that (a) the Account has been established in the name of the Depositor as recited above, and (b) except for the claims and interest of the Collateral Agent and the Depositor in the Account (subject to any claim in favor of the Securities Intermediary permitted under Section 2), the Securities Intermediary does not know of any claim to or interest in the Account. All parties agree that the Account is a "securities account" within the meaning of Article 8 of the Uniform Commercial Code as

in effect from time to time in the State of New York (the "UCC") and that all property held by the Securities Intermediary in the Account will be treated as financial assets under the UCC.

SECTION 2.  Priority of Security Interest.  The Securities Intermediary hereby acknowledges the security interest granted to the Collateral Agent by the Depositor.  The Securities Intermediary hereby confirms that the Account is a cash account and that it will not advance any margin or other credit to the Depositor nor hypothecate any securities carried in the Account except in connection with the settlement of trading activity permitted to be conducted by the Depositor hereunder.  The Securities Intermediary hereby subordinates all liens, encumbrances, claims and rights of setoff it may have, now or in the future, against the Account or any property carried in the Account or any free credit balance in the Account other than in connection with activities in which the Depositor is permitted to engage hereunder, including, without limitation, the payment of the Securities Intermediary's customary fees, commissions and other charges pursuant to its agreement with the Depositor and for payment or delivery of financial assets purchased or sold for or from the Account.

SECTION 3.  Control.  The Securities Intermediary will comply with entitlement orders originated by the Collateral Agent concerning the Account without further consent by the Depositor. Except as otherwise provided in Section 4 below, the Securities Intermediary shall also comply with entitlement orders and other instructions concerning the Account originated by the Depositor, or the Depositor's authorized representatives, until such time as the Collateral Agent delivers a written notice to the Securities Intermediary that the Collateral Agent is thereby exercising exclusive control over the Account.  Such notice is referred to herein as the "Notice of Exclusive Control."  Until the Securities Intermediary receives a Notice of Exclusive Control, the Securities Intermediary may distribute to the Depositor all interest and regular cash dividends on property in the Account.  After the Securities Intermediary receives a Notice of Exclusive Control and has had a reasonable opportunity to comply, it will cease complying with entitlement orders or other instructions concerning the Account originated by the Depositor or its representatives and cease distributing interest and dividends or other property in the Account to the Depositor.  The Securities Intermediary shall be entitled to rely upon any entitlement order or Notice of Exclusive Control that it reasonably believes to be from the Collateral Agent.  Until it receives a Notice of Exclusive Control, the Securities Intermediary shall be entitled to continue to act on such instructions from the Depositor as are delivered in form satisfactory to the Securities Intermediary. The Securities Intermediary has not agreed and will not agree with any third party that the Securities Intermediary will comply with entitlement orders concerning the Account originated by such third party without the prior written consent of the Collateral Agent and the Depositor.

SECTION 4.  No Withdrawals.  The Securities Intermediary shall not, after delivery of a Notice of Exclusive Control, comply with any entitlement order from the Depositor requiring a free delivery of any financial assets from the Account nor deliver any such financial assets to the Depositor nor pay any free credit balance or other amount owing from the Securities Intermediary to the Depositor with respect to the Account, without the prior written consent of the Collateral Agent.

SECTION 5.  Statements, Confirmations and Notices of Adverse Claims.  The Securities Intermediary will send copies of all statements and confirmations concerning the Account to each of the

2

Depositor and the Collateral Agent at the address set forth in Section 14 below. Upon receipt of written notice of any lien, encumbrance or adverse claim against the Account or in any financial asset carried therein, the Securities Intermediary will make reasonable efforts promptly to notify the Collateral Agent and the Depositor thereof.

SECTION 6. Limited Responsibility of the Securities Intermediary. Except for permitting a withdrawal or payment in violation of Sections 3 or 4 above or advancing margin or other credit to the Depositor in violation of Section 2 above, the Securities Intermediary shall have no responsibility or liability to the Collateral Agent for complying with entitlement orders concerning the Account from the Depositor or the Depositor's authorized representatives that are received by the Securities Intermediary before the Securities Intermediary receives a Notice of Exclusive Control and has had reasonable opportunity to act on it. The Securities Intermediary shall have no responsibility or liability to the Depositor for complying with a Notice of Exclusive Control or complying with entitlement orders concerning the Account originated by the Collateral Agent, and shall have no responsibility to investigate the appropriateness of any such entitlement order or Notice of Exclusive Control, even if the Depositor notifies the Securities Intermediary that the Collateral Agent is not legally entitled to originate any such entitlement order or Notice of Exclusive Control. This Agreement does not create any obligation or duty of the Securities Intermediary other than those expressly set forth herein.

SECTION 7. Indemnification of the Securities Intermediary. The Depositor hereby agrees to indemnify and hold harmless the Securities Intermediary, its directors, officers, agents and employees against any and all claims, causes of action, liabilities, lawsuits, demands and damages, including, without limitation, any and all court costs and reasonable attorney's fees, in any way related to or arising out of or in connection with this Agreement or any action taken or not taken pursuant hereto, except to the extent caused by the Securities Intermediary's gross negligence or willful misconduct.

SECTION 8. Other Agreement. In the event of a conflict between this Agreement and any other agreement between the Securities Intermediary and the Depositor, the terms of this Agreement will prevail; provided, however, that this Agreement shall not alter or affect any mandatory arbitration provision currently in effect between the Securities Intermediary and the Depositor pursuant to a separate agreement.

SECTION 9. Termination. This Agreement shall continue in effect until the Collateral Agent has notified the Securities Intermediary in writing that this Agreement, or its security interest in the Account, is terminated. Upon receipt of such notice, the obligations of the Securities Intermediary under Sections 2, 3, 4 and 5 above with respect to the operation and maintenance of the Account after the receipt of such notice shall terminate, the Collateral Agent shall have no further right to originate entitlement orders concerning the Account and any previous Notice of Exclusive Control delivered by the Collateral Agent shall be deemed to be of no further force and effect.

SECTION 10. Complete Agreement. This Agreement and the instructions and notices required or permitted to be executed and delivered hereunder set forth the entire agreement of the parties with

3

respect to the subject matter hereof, and, subject to Section 8 above supersede any prior agreement and contemporaneous oral agreements of the parties concerning its subject matter.

SECTION 11.  Amendments.  No amendment, modification or (except as otherwise specified in Section 9 above) termination of this Agreement, nor any assignment of any rights hereunder (except to the extent contemplated under Section 13 below), shall be binding on any party hereto unless it is in writing and is signed by each of the parties hereto, and any attempt to so amend, modify, terminate or assign except pursuant to such a writing shall be null and void.  No waiver of any rights hereunder shall be binding on any party hereto unless such waiver is in writing and signed by the party against whom enforcement is sought.

SECTION 12.  Severability.  If any term or provision set forth in this Agreement shall be invalid or unenforceable, the remainder of this Agreement, other than those provisions held invalid or unenforceable, shall be construed in all respects as if such invalid or unenforceable term or provision were omitted.

SECTION 13.  Successors.  The terms of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective corporate successors and permitted assigns.  This Agreement may be assigned by the Collateral Agent to any successor of the Collateral Agent under the Security Agreement, provided that written notice thereof is given by the Collateral Agent to the Securities Intermediary.

SECTION 14.  Notices.  All notices, requests and demands to or upon the Collateral Agent or the Depositor shall be effected in the manner provided for in Section [11.02] of the Indenture, provided, that any such notice, request or demand to or upon the Securities Intermediary shall be addressed to the Securities Intermediary at its notice address set forth on Schedule 1.

SECTION 15.  Counterparts.  This Agreement may be executed in any number of counterparts, all of which shall constitute one and the same instrument, and any party hereto may execute this Agreement by signing and delivering one or more counterparts.

SECTION 16.  Choice of Law.  Regardless of any provision in any other agreement relating to the Account, the parties hereto agree that, subject to Section 8 of this Agreement, the establishment and maintenance of the Account, and all interests, duties and obligations with respect to the Account, shall be governed by the law of the State of New York.

(Signature page follows.)

4

**SIGNATURES:**

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., as Collateral Agent

By: _____
Name:
Title:

[APPLICABLE GRANTOR]

By: _____
Name:
Title:

[SECURITIES INTERMEDIARY]

By: _____
Name:
Title:

NYI-4200430v3

<u>Schedule 1</u>

<u>NOTICE ADDRESS OF THE SECURITIES INTERMEDIARY</u>

Annex IV to
Security Agreement

## FORM OF
## COPYRIGHT SECURITY AGREEMENT

COPYRIGHT SECURITY AGREEMENT, dated as of [_____, 20__] (this "<u>Agreement</u>"), between THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as the Collateral Agent under the Security Agreement referred to below (together with its successors and assigns, the "<u>Collateral Agent</u>"), and [APPLICABLE GRANTOR] (the "<u>Grantor</u>").

W I T N E S S E T H:

WHEREAS, Baseline Oil & Gas Corp., a Delaware corporation (the "<u>Company</u>"), and the Collateral Agent (among others) have entered into the Indenture, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "<u>Indenture</u>");

WHEREAS, in connection with the Indenture, the Grantor has entered into the First Priority Security Agreement, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "<u>Security Agreement</u>") in favor of The Bank of New York Mellon Trust Company, N.A., as Collateral Agent for the ratable benefit of the Secured Parties (as defined therein);

WHEREAS, pursuant to the Security Agreement, the Grantor granted to the Collateral Agent for the ratable benefit of the Secured Parties, a security interest in certain collateral, including but not limited to all right, title and interest of the Grantor in its Copyrights; and

WHEREAS, the Collateral Agent and the Grantor have agreed to execute and deliver this Agreement in order to perfect the security interest of the Collateral Agent in the Grantor's Copyrights.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

SECTION 1.    <u>Defined Terms</u>.  All capitalized terms not defined herein shall have the meaning ascribed to them in, or incorporated by reference in, the Security Agreement, and the rules of interpretation set forth in Section 1 of the Security Agreement shall be applicable hereto.

SECTION 2.    <u>Grant of Security Interest</u>.  As security for the prompt payment and performance of the Secured Obligations, the Grantor hereby grants to the Collateral Agent, for the ratable benefit of the Secured Parties, a security interest in, a general lien upon and/or a right of set off against (whether now owned or hereafter acquired by the Grantor and whether acquired in the United States or elsewhere in the world) all right, title and interest of the Grantor in and to the following, whether now existing or hereafter acquired:

      (i)     all Copyrights in any work subject to copyright laws of the Untied States or any other country, whether as author, assignee, transferee or otherwise (including, without limitation, those listed on <u>Schedule A</u> hereto);

      (ii)     all registrations and applications for registration of any Copyright in the United States or any other country owned by or filed on behalf of such Grantor or in which such Grantor has rights, including registrations, recordings, supplemental registrations and pending applications for registration in the United States Copyright Office (including, without limitation, those listed on <u>Schedule A</u> to this Agreement);

      (iii)     all reissues, continuations, continuations in part, extensions and divisions of any of the foregoing;

      (iv)     all licenses, including Copyright Licenses, and other agreements relating in whole or in part to any of the foregoing, including all rights to payments in respect thereof;

      (v)     all rights to sue for past, present or future infringements of any of the foregoing;

      (vi)     all good will related to any of the foregoing;

      (vii)     to the extent not included above, all general intangibles (as such term is defined in the UCC) of the Assignor related to the foregoing; and

      (viii)     all proceeds of any and all of the foregoing.

      SECTION 3.    <u>Reference to Security Agreement</u>.  This Agreement has been entered into by the Grantor and the Collateral Agent primarily for recording purposes as contemplated by the Security Agreement.  In the event of any inconsistency between any of the terms or provisions hereof and the terms and provisions of the Security Agreement, the terms and provisions of the Security Agreement shall govern.

      SECTION 4.    <u>Governing Law</u>.  This Agreement and the rights of the parties hereunder shall be construed and interpreted in accordance with the law of the State of New York.

      SECTION 5.    <u>JURY TRIAL WAIVER</u>.  THE ASSIGNOR HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER FINANCING DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

(Signature page follows.)

2

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered by their duly authorized officers as of the date first set forth above.

[APPLICABLE GRANTOR]

By:_____

      Name:

      Title:

Accepted and acknowledged by:

THE BANK OF NEW YORK MELLON
TRUST COMPANY, N.A.,
as Collateral Agent

By:_____

      Name:

      Title:

Schedule A
to Copyright Security Agreement

| Grantor | Copyright No. | Country | Issue Date |
|---------|---------------|---------|------------|
| . | | | |

NYI-4200430v3

**FORM OF**
**PATENT SECURITY AGREEMENT**

PATENT SECURITY AGREEMENT, dated as of [_____, 20___] (this "Agreement"), between THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as the Collateral Agent under the Security Agreement referred to below (together with its successors and assigns, the "Collateral Agent"), and [APPLICABLE GRANTOR] (the "Grantor").

W I T N E S S E T H:

WHEREAS, Baseline Oil & Gas Corp., a Delaware corporation (the "Company"), and the Collateral Agent (among others) have entered into the Indenture, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Indenture");

WHEREAS, in connection with the Indenture, the Grantor has entered into the First Priority Security Agreement, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Security Agreement") in favor of The Bank of New York Mellon Trust Company, N.A., as Collateral Agent for the ratable benefit of the Secured Parties (as defined therein);

WHEREAS, pursuant to the Security Agreement, the Grantor granted to the Collateral Agent for the ratable benefit of the Secured Parties, a security interest in certain collateral, including but not limited to all right, title and interest of the Grantor in its Patents; and

WHEREAS, the Collateral Agent and the Grantor have agreed to execute and deliver this Agreement in order to perfect the security interest of the Collateral Agent in the Grantor's Patents.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

SECTION 1.    Defined Terms.  All capitalized terms not defined herein shall have the meaning ascribed to them in, or incorporated by reference in, the Security Agreement, and the rules of interpretation set forth in Section 1 of the Security Agreement shall be applicable hereto.

SECTION 2.    Grant of Security Interest.  As security for the prompt payment and performance of the Secured Obligations, the Grantor hereby grants to the Collateral Agent, for the ratable benefit of the Secured Parties, a security interest in, a general lien upon and/or a right of set off against (whether now owned or hereafter acquired by the Grantor and whether acquired in the United States or elsewhere in the world) all right, title and interest of the Grantor in and to the following, whether now existing or hereafter acquired:

(i)     all of the Patents issued by the United States Patent and Trademark Office owned or filed on behalf of the Grantor or in which the Grantor has rights (including, without limitation, those listed on Schedule A hereto);

(ii)     all applications for Patents to be issued by the United States Patent and Trademark Office owned by or filed on behalf of the Grantor (including, without limitation, those listed on Schedule A to this Agreement);

(iii)     all Patents owned or filed on behalf of the Grantor or in which the Grantor has rights issued by any other country or any office, agency or other governmental authority thereof;

(iv)     all applications for Patents owned or filed on behalf of the Grantor or in which the Grantor has rights to be issued by any office, agency or other governmental authority referred to in clause (iii) above;

(v)     all registrations and recordings with respect to any of the foregoing;

(vi)     all reissues, continuations, continuations-in-part, extensions and divisions of any of the foregoing;

(vii)     all licenses, including Patent Licenses, and other agreements relating in whole or in part to any Patents, inventions, processes, production methods, proprietary information or know-how covered by any of the foregoing, including all rights to payments in respect thereof;

(viii)     all rights to sue for past, present or future infringements of any of the foregoing;

(ix)     all good will relating to any of the foregoing;

(x)     to the extent not included above, all general intangibles (as defined in the UCC) of the Assignor related to the foregoing; and

(xi)     all proceeds of any and all of the foregoing.

SECTION 3.     Reference to Security Agreement. This Agreement has been entered into by the Grantor and the Collateral Agent primarily for recording purposes as contemplated by the Security Agreement. In the event of any inconsistency between any of the terms or provisions hereof and the terms and provisions of the Security Agreement, the terms and provisions of the Security Agreement shall govern.

SECTION 4.     Governing Law. This Agreement and the rights of the parties hereunder shall be construed and interpreted in accordance with the law of the State of New York.

SECTION 5.     JURY TRIAL WAIVER. THE ASSIGNOR HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER

2

FINANCING DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

(Signature page follows.)

3

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered by their duly authorized officers as of the date first set forth above.

[APPLICABLE GRANTOR]

By:_____

        Name:

        Title:

Accepted and acknowledged by:

THE BANK OF NEW YORK MELLON
TRUST COMPANY, N.A.,
as Collateral Agent

By:_____

        Name:

        Title:

Schedule A
to Patent Security Agreement

| Grantor | Patent No. | Country | Issue Date |
|---------|-----------|---------|------------|

FORM OF
TRADEMARK SECURITY AGREEMENT

TRADEMARK SECURITY AGREEMENT, dated as of [_____, 20__] (this "Agreement"), between THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as the Collateral Agent under the Security Agreement referred to below (together with its successors and assigns, the "Collateral Agent"), and [APPLICABLE GRANTOR] (the "Grantor").

W I T N E S S E T H:

WHEREAS, Baseline Oil & Gas Corp., a Delaware corporation (the "Company"), and the Collateral Agent (among others) have entered into the Indenture, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Indenture");

WHEREAS, in connection with the Indenture, the Grantor has entered into the First Priority Security Agreement, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Security Agreement") in favor of The Bank of New York Mellon Trust Company, N.A., as Collateral Agent for the ratable benefit of the Secured Parties (as defined therein);

WHEREAS, pursuant to the Security Agreement, the Grantor granted to the Collateral Agent for the ratable benefit of the Secured Parties, a security interest in certain collateral, including but not limited to all right, title and interest of the Grantor in its Trademarks; and

WHEREAS, the Collateral Agent and the Grantor have agreed to execute and deliver this Agreement in order to perfect the security interest of the Collateral Agent in the Grantor's Trademarks.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

SECTION 1.    Defined Terms.  All capitalized terms not defined herein shall have the meaning ascribed to them in, or incorporated by reference in, the Security Agreement, and the rules of interpretation set forth in Section 1 of the Security Agreement shall be applicable hereto.

SECTION 2.    Grant of Security Interest.  As security for the prompt payment and performance of the Secured Obligations, the Grantor hereby grants to the Collateral Agent, for the ratable benefit of the Secured Parties, a security interest in, a general lien upon and/or a right of set off against (whether now owned or hereafter acquired by the Grantor and whether acquired in the United States or elsewhere in the world) all right, title and interest of the Grantor in and to the following, whether now existing or hereafter acquired:

(i)     all trademarks, trade names and service marks registered with the United States Patent and Trademark Office owned by or filed on behalf of the Grantor or in which the Grantor has rights (including, without limitation, those listed on <u>Schedule A</u> to this Agreement);

(ii)     all applications for the registration of trademarks, trade names and service marks filed with the United States Patent and Trademark Office owned by or filed on behalf of the Grantor or in which Grantor has rights (including, without limitation, those listed on <u>Schedule A</u> to this Agreement);

(iii)     all trademarks, trade names and service marks registered with any office, agency or other governmental authority of any State, the District of Columbia or any possession or territory of the United States;

(iv)     all trademarks, trade names and service marks registered with any office, agency or other governmental authority of any other country or any province, department or other governmental subdivision thereof;

(v)     all registrations and recordings with respect to any of the foregoing;

(vi)     all reissues, extensions and renewals of any of the foregoing;

(vii)     all corporate names, business names, trade styles, logos, other source or business identifiers; all information, customer lists, identification of supplier, data, plans, blueprints, specifications, designs, drawings, recorded knowledge, surveys, engineering reports, test reports, manuals, materials standards, processing standards, performance standards, catalogs, computer and automatic machinery software and programs, and the like pertaining to operations by the Grantor in, on or about any of its plants or warehouses; all field repair data, sales data and other information relating to sales or service of products now or hereafter manufactured on or about any of its plants; and all accounting information pertaining to operations in, on or about any of its plants and all media in which or on which all of the information or knowledge or data or records relating to its plants and warehouses may be recorded or stored and all computer programs used for the compilation or printout of such information, knowledge, records or data, and the Collateral Agent shall keep all such information, knowledge, records or data strictly confidential in accordance with the Indenture;

(viii)     all unregistered or common law rights in all corporate names, business names, trade styles, logos, other source or business identifiers owned by the Grantor;

(ix)     all licenses, including Trademark Licenses, and other agreements relating in whole or in part to any of the foregoing, including all rights to payments in respect thereof;

(x)     all rights to sue for past, present or future infringements of any of the foregoing;

(xi)     all good will related to any of the foregoing;

2