Annex V to
<u>Security Agreement</u>

**FORM OF**
**PATENT SECURITY AGREEMENT**

PATENT SECURITY AGREEMENT, dated as of [_____, 20__] (this "<u>Agreement</u>"), between [_____], as the Collateral Agent under the Security Agreement referred to below (together with its successors and assigns, the "<u>Collateral Agent</u>"), and [APPLICABLE GRANTOR] (the "<u>Grantor</u>").

<u>W I T N E S S E T H</u>:

WHEREAS, Baseline Oil & Gas Corp., a Delaware corporation (the "<u>Company</u>"), and the Collateral Agent (among others) have entered into the Indenture, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "<u>Indenture</u>");

WHEREAS, in connection with the Indenture, the Grantor has entered into the Third Priority Security Agreement, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "<u>Security Agreement</u>") in favor of [_____], as Collateral Agent for the ratable benefit of the Secured Parties (as defined therein);

WHEREAS, pursuant to the Security Agreement, the Grantor granted to the Collateral Agent for the ratable benefit of the Secured Parties, a security interest in certain collateral, including but not limited to all right, title and interest of the Grantor in its Patents; and

WHEREAS, the Collateral Agent and the Grantor have agreed to execute and deliver this Agreement in order to perfect the security interest of the Collateral Agent in the Grantor's Patents.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

SECTION 1.    <u>Defined Terms</u>.  All capitalized terms not defined herein shall have the meaning ascribed to them in, or incorporated by reference in, the Security Agreement, and the rules of interpretation set forth in Section 1 of the Security Agreement shall be applicable hereto.

SECTION 2.    <u>Grant of Security Interest</u>.  As security for the prompt payment and performance of the Secured Obligations, the Grantor hereby grants to the Collateral Agent, for the ratable benefit of the Secured Parties, a security interest in, a general lien upon and/or a right of set off against (whether now owned or hereafter acquired by the Grantor and whether acquired in the United States or elsewhere in the world) all right, title and interest of the Grantor in and to the following, whether now existing or hereafter acquired:

(i)      all of the Patents issued by the United States Patent and Trademark Office owned or filed on behalf of the Grantor or in which the Grantor has rights (including, without limitation, those listed on <u>Schedule A</u> hereto);

(ii)      all applications for Patents to be issued by the United States Patent and Trademark Office owned by or filed on behalf of the Grantor (including, without limitation, those listed on <u>Schedule A</u> to this Agreement);

(iii)      all Patents owned or filed on behalf of the Grantor or in which the Grantor has rights issued by any other country or any office, agency or other governmental authority thereof;

(iv)      all applications for Patents owned or filed on behalf of the Grantor or in which the Grantor has rights to be issued by any office, agency or other governmental authority referred to in clause (iii) above;

(v)      all registrations and recordings with respect to any of the foregoing;

(vi)      all reissues, continuations, continuations-in-part, extensions and divisions of any of the foregoing;

(vii)      all licenses, including Patent Licenses, and other agreements relating in whole or in part to any Patents, inventions, processes, production methods, proprietary information or know-how covered by any of the foregoing, including all rights to payments in respect thereof;

(viii)      all rights to sue for past, present or future infringements of any of the foregoing;

(ix)      all good will relating to any of the foregoing;

(x)      to the extent not included above, all general intangibles (as defined in the UCC) of the Assignor related to the foregoing; and

(xi)      all proceeds of any and all of the foregoing.

SECTION 3.      <u>Reference to Security Agreement</u>.  This Agreement has been entered into by the Grantor and the Collateral Agent primarily for recording purposes as contemplated by the Security Agreement.  In the event of any inconsistency between any of the terms or provisions hereof and the terms and provisions of the Security Agreement, the terms and provisions of the Security Agreement shall govern.

SECTION 4.      <u>Governing Law</u>.  This Agreement and the rights of the parties hereunder shall be construed and interpreted in accordance with the law of the State of New York.

SECTION 5.      <u>JURY TRIAL WAIVER</u>.  THE ASSIGNOR HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER

NYI-4200892v1

FINANCING DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

(Signature page follows.)

NYI-4200892v1

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered by their duly authorized officers as of the date first set forth above.

[APPLICABLE GRANTOR]

By:_____
      Name:
      Title:

Accepted and acknowledged by:

[_____],
as Collateral Agent

By:_____
      Name:
      Title:

Schedule A
to Patent Security Agreement

| Grantor | Patent No. | Country | Issue Date |
|---------|------------|---------|------------|

FORM OF
TRADEMARK SECURITY AGREEMENT

TRADEMARK SECURITY AGREEMENT, dated as of [_____, 20__] (this "Agreement"), between [_____], as the Collateral Agent under the Security Agreement referred to below (together with its successors and assigns, the "Collateral Agent"), and [APPLICABLE GRANTOR] (the "Grantor").

W I T N E S S E T H:

WHEREAS, Baseline Oil & Gas Corp., a Delaware corporation (the "Company"), and the Collateral Agent (among others) have entered into the Indenture, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Indenture");

WHEREAS, in connection with the Indenture, the Grantor has entered into the Third Priority Security Agreement, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Security Agreement") in favor of [_____], as Collateral Agent for the ratable benefit of the Secured Parties (as defined therein);

WHEREAS, pursuant to the Security Agreement, the Grantor granted to the Collateral Agent for the ratable benefit of the Secured Parties, a security interest in certain collateral, including but not limited to all right, title and interest of the Grantor in its Trademarks; and

WHEREAS, the Collateral Agent and the Grantor have agreed to execute and deliver this Agreement in order to perfect the security interest of the Collateral Agent in the Grantor's Trademarks.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

SECTION 1.    Defined Terms.  All capitalized terms not defined herein shall have the meaning ascribed to them in, or incorporated by reference in, the Security Agreement, and the rules of interpretation set forth in Section 1 of the Security Agreement shall be applicable hereto.

SECTION 2.    Grant of Security Interest.  As security for the prompt payment and performance of the Secured Obligations, the Grantor hereby grants to the Collateral Agent, for the ratable benefit of the Secured Parties, a security interest in, a general lien upon and/or a right of set off against (whether now owned or hereafter acquired by the Grantor and whether acquired in the United States or elsewhere in the world) all right, title and interest of the Grantor in and to the following, whether now existing or hereafter acquired:

(i)     all trademarks, trade names and service marks registered with the United States Patent and Trademark Office owned by or filed on behalf of the Grantor or in which the Grantor has rights (including, without limitation, those listed on Schedule A to this Agreement);

(ii)     all applications for the registration of trademarks, trade names and service marks filed with the United States Patent and Trademark Office owned by or filed on behalf of the Grantor or in which Grantor has rights (including, without limitation, those listed on Schedule A to this Agreement);

(iii)     all trademarks, trade names and service marks registered with any office, agency or other governmental authority of any State, the District of Columbia or any possession or territory of the United States;

(iv)     all trademarks, trade names and service marks registered with any office, agency or other governmental authority of any other country or any province, department or other governmental subdivision thereof;

(v)     all registrations and recordings with respect to any of the foregoing;

(vi)     all reissues, extensions and renewals of any of the foregoing;

(vii)     all corporate names, business names, trade styles, logos, other source or business identifiers; all information, customer lists, identification of supplier, data, plans, blueprints, specifications, designs, drawings, recorded knowledge, surveys, engineering reports, test reports, manuals, materials standards, processing standards, performance standards, catalogs, computer and automatic machinery software and programs, and the like pertaining to operations by the Grantor in, on or about any of its plants or warehouses; all field repair data, sales data and other information relating to sales or service of products now or hereafter manufactured on or about any of its plants; and all accounting information pertaining to operations in, on or about any of its plants and all media in which or on which all of the information or knowledge or data or records relating to its plants and warehouses may be recorded or stored and all computer programs used for the compilation or printout of such information, knowledge, records or data, and the Collateral Agent shall keep all such information, knowledge, records or data strictly confidential in accordance with the Indenture;

(viii)     all unregistered or common law rights in all corporate names, business names, trade styles, logos, other source or business identifiers owned by the Grantor;

(ix)     all licenses, including Trademark Licenses, and other agreements relating in whole or in part to any of the foregoing, including all rights to payments in respect thereof;

(x)     all rights to sue for past, present or future infringements of any of the foregoing;

(xi)     all good will related to any of the foregoing;

2

(xi)     to the extent not included above, all general intangibles (as defined in the UCC) of the Grantor related to the foregoing; and

(xii)    all proceeds of any and all of the foregoing.

SECTION 3.     Reference to Security Agreement.  This Agreement has been entered into by the Grantor and the Collateral Agent primarily for recording purposes as contemplated by the Security Agreement.  In the event of any inconsistency between any of the terms or provisions hereof and the terms and provisions of the Security Agreement, the terms and provisions of the Security Agreement shall govern.

SECTION 4.     Governing Law.  This Agreement and the rights of the parties hereunder shall be construed and interpreted in accordance with the law of the State of New York.

SECTION 5.     JURY TRIAL WAIVER.  THE ASSIGNOR HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER FINANCING DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

(Signature page follows.)

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered by their duly authorized officers as of the date first set forth above.

[APPLICABLE GRANTOR]

By:_____

      Name:

      Title:

Accepted and acknowledged by:

[_____],

as Collateral Agent

By:_____

      Name:

      Title:

Schedule A
to Trademark Security Agreement

| Grantor | Trademarks | Country | Registration No. | Registration Date |
|---------|------------|---------|------------------|-------------------|

NYI-4200892v1

PERFECTION CERTIFICATE

**BASELINE OIL & GAS CORP.**

Reference is made to that certain Third Priority Security Agreement, dated as of [_____],
2009 (as amended, supplemented, amended and restated or otherwise modified from time to time, the
"Security Agreement"), made by and among Baseline Oil & Gas Corp., a Delaware corporation (the
"Company"), and [_____], as trustee and collateral agent for the Holders (as defined therein) (in
such capacity, the "Collateral Agent"). Capitalized terms used herein that are not otherwise defined
herein shall have the meanings assigned to such terms in the Security Agreement.

The undersigned, being the _____ of the Company, hereby certifies to the Collateral Agent
as follows, assuming that the acquisition of the plant and related property has occurred:

1.      Name. The exact name of the Company and each domestic subsidiary of the Company
(each, a "Grantor") as it appears in their respective organization or formation documents, as well as their
jurisdiction of organization/formation, are as follows:

|  | **Jurisdiction of** |
| **Name** | **Incorporation/Formation** |
| _____ | _____ |

Set forth below is each other name that each Grantor has had since its organization/formation,
together with the date of the relevant change:

| **Name** | **Dates that names changed** |

Except as set forth on Schedule 1, no Grantor has changed its identity or organizational structure
in any way within the past five years. Changes in identity or corporate structure include mergers,
consolidations and acquisitions, as well as any change in form, name, nature or jurisdiction of
organization. If any such change has occurred, Schedule 1 includes the information required by
Sections 1, 2 and 3 of this Certificate as to each acquiree or constituent party to a merger or consolidation.

The following is a list of all other names (including trade names or similar appellations) used by
any Grantor or any of its divisions or other business units in connection with the conduct of its business or
the ownership of its properties at any time during the past five years:

| **Grantor** | **Additional Names** |
|---|---|



2.    Current Locations.  The chief executive office of each Grantor is located at the address set forth opposite its name below:

| **Grantor** | **Chief Executive Office** |
|---|---|



Set forth on Schedule 2 is a list of all other locations where each Grantor maintains or has maintained tangible assets, including but not limited to any inventory or equipment (including any warehouses) over the last five years.;

3.    Prior Locations.  Set forth below is all of the business locations, not otherwise listed herein, which were maintained by any Grantor at any time during the past five years:

| **Business Location** | **Use** |
|---|---|



4.    Bank Deposits/Letters of Credit.

Set forth on Schedule 3 is the name of each bank at which each Grantor maintains deposit accounts, the state of incorporation of such bank and the account numbers for each deposit account.

Set forth on Schedule 4 is a list of all letters of credit under which any Grantor is named as beneficiary, including the name of the issuing bank and the letter of credit number.

5.    Bailees.  Schedule 5 lists all third parties ("Bailees") with possession of any collateral (including inventory and equipment) of each Grantor, including the name and address of such Bailee, a description of the inventory and equipment in such Bailee's possession and the location of such inventory and equipment.

6.    Unusual Transactions.  All accounts have been originated by the Grantors, and all inventory and equipment have been acquired by the Grantors, in the ordinary course of business.

NYI-4200892v1                                               3

7.     <u>Intellectual Property</u>.  Attached hereto as <u>Schedule 6</u> is a list of all the patents, patent rights, patent applications, copyrights and copyright applications, trademarks, trademark rights, patent licenses, copyright licenses and trademark licenses now owned or used by any Grantor.

8.     <u>Lien Search Summary</u>.  Attached hereto as <u>Schedule 7</u> is a summary of each financing statement or other filing filed against the Company and any Grantor in the Uniform Commercial Code filing office or offices in each jurisdiction identified in paragraphs 2 or 3 above with respect to such Grantor.  Each Grantor has no knowledge of any other financing statement or other filing under the Uniform Commercial Code having been made in the name of Company or any Grantor.  True and correct copies of all filings listed on <u>Schedule 7</u> have been delivered to the Collateral Agent.

9.     <u>Stock Ownership</u>.  Attached hereto as <u>Schedule 8</u> is a true and correct list of all duly authorized, issued and outstanding types of stock or membership interests of each Grantor and the record and beneficial ownership of such stock or membership interests.  Also set forth on <u>Schedule 8</u> is a list of each equity investment of each Grantor that represents 50% or less of the equity investment of the entity in which such investment was made.

10.     <u>Notes</u>.  Attached hereto as <u>Schedule 9</u> is a true and correct list of all promissory notes held by each Grantor and all intercompany notes in favor of a Grantor.

11.     <u>Real Property</u>.  Attached hereto as <u>Schedule 10</u> is:

(a)     each parcel of real property owned by any Grantor, the name of the Grantor that owns such property, and the filing office in which a mortgage or deed of trust (as applicable) with respect to such property must be filed or recorded in order for the Collateral Agent to obtain a perfected mortgage lien thereon;

(b)     each street address and county and state or similar jurisdiction where each Grantor leases real property, the name and current mailing address of the lessor of such property, the nature and current use of such property, the scheduled date of expiration of the lease with respect to such property, the current fair market value of such property and whether such property includes fixtures; and

(c)     the name and current mailing address of each lessee or sublessee with respect to all or any portion of any real property described in paragraphs (a) and (b) above, a description of the leased property, the scheduled date of expiration of the lease with respect to such property and the monthly rental payments receivable by any Grantor with respect to such property.

12.     <u>Commercial Tort Claims</u>.  Attached hereto as <u>Schedule 12</u> is a true and correct list of commercial tort claims held by each Grantor, including a brief description thereof.

*[remainder of page intentionally left blank]*

IN WITNESS WHEREOF, each of the undersigned has executed this Certificate through its respective duly authorized officer as of this ___ day of _____, 2009.

BASELINE OIL & GAS CORP.

By: _____
Name:
Title:

## SCHEDULE 1

## CHANGES IN IDENTITY OR CORPORATE STRUCTURE

| Name of Entity | State of Organization | Tax ID# Organizational # | Current Location | Prior Location(s) |
|---|---|---|---|---|

## SCHEDULE 2

## LOCATIONS OF COLLATERAL

| Name of Grantor | Location of Property | Type of Property |
|---|---|---|

## SCHEDULE 3

## DEPOSIT ACCOUNTS

| Grantor | Name of Bank | State of Bank Incorporation | Account Numbers |
|---------|--------------|----------------------------|-----------------|

## SCHEDULE 4

### LETTERS OF CREDIT

| Grantor | Name of Issuing Bank | LC Number |
|---------|----------------------|-----------|

## SCHEDULE 5

### BAILEES

| Grantor | Name of Bailee | Address of Bailee (Where Property Located) | Type of Property |
|---------|----------------|--------------------------------------------|------------------|
|         |                |                                            |                  |

## SCHEDULE 6

### INTELLECTUAL PROPERTY

**Patents**

**Trademarks**

**Copyrights**

**SCHEDULE 7**

**LIEN SEARCH SUMMARY**

**SCHEDULE 8**

**STOCK OWNERSHIP**

| **Issuer** | **Owner** | **Type of Security** | **Registration #** | **% Ownership** |
|---|---|---|---|---|

**Other Equity Investments (Less than 50% of total ownership):**

## SCHEDULE 9

## NOTES

| Maker | Payee | Date | Principal Amount |
|-------|-------|------|------------------|

**SCHEDULE 10**

**(a) OWNED REAL PROPERTY**

| Grantor | Property Location (Address including zip code) | County | Mortgagee-Mortgagor |
|---|---|---|---|

**(b) LEASED REAL PROPERTY**

| Grantor | Property Location (Address including zip code) | County | Mortgagee-Mortgagor | Nature and Use | Fair Market Value | Does Property include fixtures? |
|---|---|---|---|---|---|---|

**(c) LEASED AND SUBLEASED REAL PROPERTY**

| Grantor | Address of Lessee | Address of leased property | County | Term | Monthly Rental |
|---|---|---|---|---|---|

**SCHEDULE 11**

**COMMERCIAL TORT CLAIMS**

*EXHIBIT R*

INTERCREDITOR AGREEMENT

dated as of

[_____], 2009,

among

BASELINE OIL & GAS CORP.,
as the Company,

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,
as First Priority Agent,

and

[_____],[1]
as Second Priority Agent

and

[_____],
as Third Priority Agent

**THIS IS THE INTERCREDITOR AGREEMENT REFERRED TO IN (1) THE INDENTURE, DATED AS OF [_____], 2009, BY AND AMONG BASELINE OIL & GAS CORP. AS ISSUER, THE GUARANTORS DEFINED THEREIN AND [THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.] AS TRUSTEE AND COLLATERAL AGENT WITH RESPECT TO THE SERIES A 20% SENIOR SECURED PIK NOTES DUE 2014 OF BASELINE OIL & GAS CORP., (2) THE INDENTURE, DATED AS OF [_____], 2009, BY AND AMONG BASELINE OIL & GAS CORP. AS ISSUER, THE GUARANTORS DEFINED THEREIN AND [_____] AS TRUSTEE AND COLLATERAL AGENT WITH RESPECT TO THE SERIES B 20% SENIOR SECURED PIK NOTES DUE 2014 OF BASELINE OIL & GAS CORP. AND (3) THE INDENTURE, DATED AS OF [_____], 2009, BY AND AMONG BASELINE OIL & GAS CORP. AS ISSUER, THE GUARANTORS DEFINED THEREIN AND [_____] AS TRUSTEE AND COLLATERAL AGENT WITH RESPECT TO THE 10% SENIOR SUBORDINATED SECURED PIK NOTES DUE 2016 OF BASELINE OIL & GAS CORP.**

---

[1] To confirm identity of Second Priority Agent and Third Priority Agent.

TABLE OF CONTENTS

Page

ARTICLE I        Definitions................................................................................................ 1

    SECTION 1.01.        Certain Defined Terms................................................. 1

    SECTION 1.02.        Other Defined Terms .................................................. 2

    SECTION 1.03.        Terms Generally.......................................................... 9

ARTICLE II        Lien Priorities......................................................................................... 9

    SECTION 2.01.        Relative Priorities....................................................... 9

    SECTION 2.02.        Prohibition on Contesting Liens ............................... 10

    SECTION 2.03.        No New Liens ........................................................... 10

    SECTION 2.04.        Similar Liens and Collateral ..................................... 11

ARTICLE III        Enforcement of Rights; Matters Relating to Collateral .................. 12

    SECTION 3.01.        Exercise of Rights and Remedies ............................. 12

    SECTION 3.02.        No Interference; Enforcement Standstill ................... 18

    SECTION 3.03.        Rights other than in respect of Collateral ................. 22

    SECTION 3.04.        Automatic Release of Second Priority Liens and Third
                        Priority Liens ............................................................ 22

    SECTION 3.05.        Automatic Release of First Priority Liens ................. 24

    SECTION 3.06.        Insurance and Condemnation Awards ....................... 26

    SECTION 3.07.        Notification of Release of Collateral ......................... 26

ARTICLE IV        Payments ............................................................................................. 26

    SECTION 4.01.        Application of Proceeds............................................. 26

    SECTION 4.02.        Payment Over........................................................... 27

    SECTION 4.03.        Certain Agreements with Respect to Unenforceable Liens ......... 28

    SECTION 4.04.        Acknowledgements Regarding Indentures' Payment
                        Priorities................................................................... 29

ARTICLE V        Bailment for Perfection of Certain Security Interests..................... 31

ARTICLE VI        Insolvency or Liquidation Proceedings ........................................... 32

    SECTION 6.01.        Finance and Sale Matters.......................................... 32

    SECTION 6.02.        Relief from the Automatic Stay ................................. 36

    SECTION 6.03.        Reorganization Securities ......................................... 37

    SECTION 6.04.        Post-Petition Interest................................................. 37

SECTION 6.05.    Certain Waivers by the Second Priority Secured Parties and the Third Priority Secured Parties ................................................. 38

SECTION 6.06.    Certain Voting Matters ................................................................ 38

ARTICLE VII    Other Agreements ........................................................................ 38

SECTION 7.01.    Matters Relating to Debt Documents ........................................... 38

SECTION 7.02.    [Reserved] .................................................................................. 41

SECTION 7.03.    No Waiver by First Priority Secured Parties ................................ 41

SECTION 7.04.    Reinstatement ............................................................................. 41

SECTION 7.05.    Authorization of Collateral Agents .............................................. 41

SECTION 7.06.    Further Assurances ...................................................................... 42

ARTICLE VIII    Representations and Warranties .................................................... 42

SECTION 8.01.    Representations and Warranties of Each Party ............................. 42

ARTICLE IX    No Reliance; No Liability; Obligations Absolute ............................ 42

SECTION 9.01.    No Reliance; Information ............................................................. 42

SECTION 9.02.    No Warranties or Liability ........................................................... 43

SECTION 9.03.    Obligations Absolute .................................................................. 44

ARTICLE X    Miscellaneous ................................................................................. 45

SECTION 10.01.    Notices ...................................................................................... 45

SECTION 10.02.    Conflicts .................................................................................... 46

SECTION 10.03.    Effectiveness; Survival; Termination .......................................... 46

SECTION 10.04.    Severability ............................................................................... 46

SECTION 10.05.    Amendments; Waivers ................................................................ 46

SECTION 10.06.    Postponement of Subrogation .................................................... 47

SECTION 10.07.    Applicable Law; Jurisdiction; Consent to Service of Process ....................................................................................... 47

SECTION 10.08.    Waiver of Jury Trial .................................................................. 48

SECTION 10.09.    Parties in Interest ....................................................................... 48

SECTION 10.10.    Specific Performance ................................................................. 48

SECTION 10.11.    Headings .................................................................................... 48

SECTION 10.12.    Counterparts .............................................................................. 48

SECTION 10.13.    Provisions Solely to Define Relative Rights ................................ 48

SECTION 10.14.    Other Rights and Privileges ....................................................... 49

SECTION 10.15.    Force Majeure ............................................................................ 49

INTERCREDITOR AGREEMENT dated as of [_____], 2009 (this "*Agreement*"), among (1) BASELINE OIL & GAS CORP., a Delaware corporation (the "*Company*"), (2) THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as collateral agent for the First Priority Secured Parties (as defined below) (in such capacity, together with its successors, the "*First Priority Agent*"), (3) [_____], as collateral agent for the Second Priority Secured Parties (as defined below) (in such capacity, together with its successors, the "*Second Priority Agent*") and (4) [_____], as collateral agent for the Third Priority Secured Parties (as defined below) (in such capacity, together with its successors, the "*Third Priority Agent*").

RECITALS

A.  The First Priority Creditors (such term and each other capitalized term used but not defined in these recitals having the meaning given it in Article I) have agreed to purchase and/or hold the First Priority Notes issued by the Company from time to time pursuant to the First Priority Indenture on the condition, among others, that the First Priority Claims shall be secured by first priority Liens on, and security interests in, the Collateral.

B.  The Second Priority Creditors have agreed to purchase and/or hold the Second Priority Notes issued by the Company from time to time pursuant to the Second Priority Indenture on the condition, among others, that the Second Priority Claims shall be secured by second priority Liens on, and security interests in, the Collateral.

C.  The Third Priority Creditors have agreed to purchase and/or hold the Third Priority Notes issued by the Company from time to time pursuant to the Third Priority Indenture on the condition, among others, that the Third Priority Claims shall be secured by third priority Liens on, and security interests in, the Collateral.

D.  Each of the First Priority Indenture, the Second Priority Indenture and the Third Priority Indenture requires, among other things, that the First Priority Creditors, the Second Priority Creditors and the Third Priority Creditors set forth in this Agreement, among other things, their respective rights, obligations and remedies with respect to the Collateral.

NOW THEREFORE, in consideration of the foregoing premises and mutual covenants herein, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

ARTICLE I

*Definitions*

SECTION 1.01.  *Certain Defined Terms*.  Capitalized terms used in this Agreement and not otherwise defined herein shall, except to the extent the context otherwise requires, have the meanings set forth in the First Priority Indenture (as in effect on the date hereof).

SECTION 1.02. *Other Defined Terms*. As used in the Agreement, the following terms shall have the meanings specified below:

"*Agents*" shall mean, as the context may require, the First Priority Agent, the Second Priority Agent and the Third Priority Agent.

"*Bankruptcy Code*" shall mean Title 11 of the United States Code entitled "Bankruptcy," as now and hereinafter in effect, or any successor statute.

"*Bankruptcy Law*" shall mean the Bankruptcy Code and any other Federal, state or foreign bankruptcy, insolvency, receivership or similar law.

"*Collateral Agreements*" shall mean, collectively, the First Priority Collateral Agreements, the Second Priority Collateral Agreements and the Third Priority Collateral Agreements.

"*Company*" shall have the meaning assigned to such term in the preamble to this Agreement.

"*Controlling Agent*" shall mean (a) to the extent that the Discharge of First Priority Claims has not occurred, the First Priority Agent, (b) to the extent that the Discharge of First Priority Claims has occurred and the Discharge of Second Priority Claims has not occurred, the Second Priority Agent, and (c) to the extent that the Discharge of First Priority Claims has occurred, the Discharge of Second Priority Claims has occurred and the Discharge of Third Priority Claims has not occurred, the Third Priority Agent.

"*Debt Documents*" shall mean, collectively, the First Priority Debt Documents, the Second Priority Debt Documents and the Third Priority Debt Documents.

"*Discharge of First Priority Claims*" shall mean, subject to Section 7.04(a), (a) payment in full in cash of the principal of and interest (including capitalized interest and interest accruing during the pendency of any Insolvency or Liquidation Proceeding, regardless of whether allowed or allowable in such Insolvency or Liquidation Proceeding) and premium, if any, on all Indebtedness outstanding in respect of the First Priority Notes to the extent constituting First Priority Claims and (b) payment in full in cash of all other First Priority Claims that are due and payable or otherwise accrued and owing at or prior to the time such principal and interest are paid.

"*Discharge of Second Priority Claims*" shall mean, subject to Section 7.04(b), (a) payment in full in cash of the principal of and interest (including capitalized interest and interest accruing during the pendency of any Insolvency or Liquidation Proceeding, regardless of whether allowed or allowable in such Insolvency or Liquidation Proceeding) and premium, if any, on all Indebtedness outstanding in respect of the Second Priority Notes to the extent constituting Second Priority Claims, (b) payment in full in cash of all other Second Priority Claims that are due and payable or otherwise accrued and owing at or prior to the time such principal and interest are paid and (c) payment in full of all First Priority Claims acquired by the Second Priority Secured Parties as contemplated by Section 10.06 hereof.

"***Discharge of Third Priority Claims***" shall mean, subject to Section 7.04(c), (a) payment in full in cash of the principal of and interest (including capitalized interest and interest accruing during the pendency of any Insolvency or Liquidation Proceeding, regardless of whether allowed or allowable in such Insolvency or Liquidation Proceeding) and premium, if any, on all Indebtedness outstanding under the Third Priority Debt Documents to the extent constituting Third Priority Claims, (b) payment in full in cash of all other Third Priority Claims that are due and payable or otherwise accrued and owing at or prior to the time such principal and interest are paid and (c) payment in full of all First Priority Claims and/or Second Priority Claims acquired by the Third Priority Secured Parties as contemplated by Section 10.06 hereof.

"***Disposition***" shall mean, with respect to any asset, any sale, lease, exchange, transfer or other disposition of such asset or any interest therein, including the creation of any Lien on or with respect to such asset. "***Dispose***" shall have a correlative meaning.

"***Enforcement Action***" shall mean (a) the taking of any action to enforce or realize upon a Lien on any Collateral (including reducing a claim to judgment, instituting foreclosure proceedings and the noticing of any public or private sale or other Disposition pursuant to Article 9 of the UCC), (b) the exercise of any right or remedy provided to a secured creditor or the holder of a Lien under any Collateral Agreement (including the enforcement of any right under any deposit account control agreement, securities account control agreement, landlord waiver or bailee's letter or any similar agreement or arrangement), at law, in equity, in an Insolvency or Liquidation Proceeding, pursuant to any Bankruptcy Law or otherwise with respect to any Collateral (including the election to retain Collateral in satisfaction of any Claim which a Lien secures), (c) the taking of any action or the exercise of any right or remedy in respect of the collection on, set off against, marshaling of, or foreclosure on the Collateral or the proceeds of Collateral, (d) the Disposition of all or any portion of the Collateral, by public or private sale, other disposition or any other means permissible under applicable law, (e) the exercise of any other enforcement right relating to the Collateral (including the exercise of any voting rights relating to any stock or other equity interests and including any right of recoupment or set-off), or (f) the commencement of, or the joinder with any creditor in commencing, any suit, action or proceeding (including an Insolvency or Liquidation Proceeding or Liquidation Sale, or any relief from or modification of the automatic stay or any other stay in any Insolvency or Liquidation Proceeding) against any Grantor or any assets of any Grantor.

"***First DIP Financing***" shall have the meaning assigned to such term in Section 6.01(a).

"***First DIP Financing Liens***" shall have the meaning assigned to such term in Section 6.01(a).

"***First Priority Agent***" shall have the meaning assigned to such term in the preamble to this Agreement.

"***First Priority Claims***" shall mean (a) the payment of (i) the principal of and interest (including capitalized interest and interest accruing during the pendency of any Insolvency or Liquidation Proceeding, regardless of whether allowed or allowable in such proceeding) in respect of the First Priority Notes, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise, and (ii) all other monetary obligations of the Company, each

Guarantor and any Grantor to any Person in connection with the First Priority Debt Documents (including fees (including any early termination or prepayment fees), costs, expenses (including fees and expenses of counsel) and indemnities, whether primary, secondary, direct, contingent, fixed or otherwise (including monetary obligations incurred during the pendency of any Insolvency or Liquidation Proceeding, regardless of whether allowed or allowable in such proceeding)), and (b) the performance of all other obligations of the Company, each Guarantor and any Grantor under or pursuant to the First Priority Debt Documents.

"***First Priority Collateral***" shall mean, collectively, (a) all "Collateral", as defined in the First Priority Collateral Agreements, and (b) all other assets of any Grantor now or at any time hereafter subject to a First Priority Lien.

"***First Priority Collateral Agreements***" shall mean (a) the First Priority Security Agreement, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof), among the Company, each Grantor party thereto and the First Priority Agent, (b) the First Priority Deed of Trust, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof), among the Company, [_____] as trustee and the First Priority Agent, (c) any other mortgage, deed of trust, leasehold mortgage, assignment of leases and rents, pledge agreement, security agreement, hypothecation agreement or any other agreement, document or instrument pursuant to which a First Priority Lien is granted or under which rights or remedies with respect to a First Priority Lien are governed and (d) any deposit account control agreement, securities account control agreement, landlord waiver, warehouseman's agreement, bailee's agreement or any other agreement, document or instrument entered into in connection with the attachment, perfection or priority of a First Priority Lien.

"***First Priority Creditors***" shall mean, at any time, all holders of the First Priority Notes at such time.

"***First Priority Debt Documents***" shall mean (a) the First Priority Indenture, (b) the First Priority Notes, (c) the First Priority Collateral Agreements, (d) this Agreement and (e) all other agreements, documents, and instruments entered into in connection with any amendment, waiver, supplement or other modification with respect to any of the foregoing.

"***First Priority Indenture***" shall mean the Indenture, dated as of the date hereof, between the Company, the Guarantors and the First Priority Agent, as amended, amended and restated, supplemented or otherwise modified from time to time.

"***First Priority Liens***" shall mean all Liens now or at any time hereafter securing the First Priority Claims, whether created under the First Priority Collateral Agreements or acquired by possession, statute (including any judgment lien), operation of law, subrogation or otherwise.

"***First Priority Notes***" shall mean the Series A 20% Senior Secured Notes (including, for the avoidance of doubt, all Series A 20% Senior Secured Notes issued in lieu of the payment of interest in cash thereon) issued pursuant to the First Priority Indenture.

"*First Priority Redemption Fee*" shall have the meaning assigned to such term in Section 3.01(d).

"*First Priority Release*" shall have the meaning assigned to such term in Section 3.04(a).

"*First Priority Secured Parties*" shall mean, at any time, (a) the First Priority Creditors, (b) the First Priority Agent, (c) each other Person holding a First Priority Claim and (d) the successors and assigns of each of the foregoing at such time.

"*Grantors*" shall mean, collectively, the Company and each Person that shall have created or purported to create any First Priority Lien, Second Priority Lien or Third Priority Lien on all or any part of its assets.

"*Guarantors*" shall mean, collectively, each Person that has guaranteed, or that may from time to time hereafter guarantee, the First Priority Claims, the Second Priority Claims or the Third Priority Claims.

"*Indebtedness*" shall mean and includes all obligations that constitute "Indebtedness", as defined in the First Priority Indenture.

"*Indentures*" shall mean, collectively, the First Priority Indenture, the Second Priority Indenture and the Third Priority Indenture.

"*Insolvency or Liquidation Proceeding*" shall mean (a) any voluntary or involuntary proceeding under the Bankruptcy Code or any other Bankruptcy Law with respect to any Grantor, (b) any voluntary or involuntary appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for any Grantor or for a substantial part of the property or assets of any Grantor, (c) any voluntary or involuntary winding-up or liquidation of any Grantor, or (d) a general assignment for the benefit of creditors by any Grantor.

"*Lien*" shall mean (a) with respect to any asset, any interest in such asset securing an obligation owed to, or a claim by, any Person other than the owner of the asset, whether arising at law, in equity, by statute or contract, and includes (i) any mortgage, deed of trust, lien, pledge, hypothecation, encumbrance, charge or security interest in, on or of such asset or (ii) the interest of a vendor or a lessor under any conditional sale agreement, capital lease or title retention agreement (or any financing lease having substantially the same economic effect as any of the foregoing) relating to such asset and (b) in the case of securities, any purchase option, call or similar right of a Person with respect to such securities.

"*Liquidation Sale*" shall mean a so-called bulk sale, liquidation sale or "going out of business sale" conducted either by any Secured Party or a Grantor in respect to all or a substantial portion of such Grantor's Collateral following the occurrence and during the continuance of an Event of Default under, and as defined in the Instrument.

"*Other Priority Agents*" shall mean (a) to the extent that the Discharge of First Priority Claims has not occurred, the Second Priority Agent and the Third Priority Agent and (b) to the extent that the Discharge of First Priority Claims has occurred and the Discharge of Second Priority Claims has not occurred, the Third Priority Agent.

R- 8

"***Other Priority Claims***" shall mean (a) to the extent that the Discharge of First Priority Claims has not occurred, the Second Priority Claims and the Third Priority Claims and (b) to the extent that the Discharge of First Priority Claims has occurred and the Discharge of Second Priority Claims has not occurred, the Third Priority Claims.

"***Other Priority Liens***" shall mean (a) to the extent that the Discharge of First Priority Claims has not occurred, the Second Priority Liens and the Third Priority Liens and (b) to the extent that the Discharge of First Priority Claims has occurred and the Discharge of Second Priority Claims has not occurred, the Third Priority Liens.

"***Other Priority Secured Parties***" shall mean (a) to the extent that the Discharge of First Priority Claims has not occurred, the Second Priority Secured Parties and the Third Priority Secured Parties and (b) to the extent that the Discharge of First Priority Claims has occurred and the Discharge of Second Priority Claims has not occurred, the Third Priority Secured Parties.

"***Pledged or Controlled Collateral***" shall have the meaning assigned to such term in Article V.

"***Refinance***" shall mean, in respect of any Indebtedness, to refinance, extend, renew, restructure (including by the amendment and restatement of any instrument or agreement evidencing such Indebtedness) or replace or to issue other Indebtedness in exchange or replacement for, such Indebtedness, in whole or in part. "***Refinanced***" and "***Refinancing***" shall have correlative meanings.

"***Second DIP Financing***" shall have the meaning assigned to such term in Section 6.01(b).

"***Second DIP Financing Liens***" shall have the meaning assigned to such term in Section 6.01(b).

"***Second Lien Standstill Period***" shall have the meaning assigned to such term in Section 3.02(a)(i).

"***Second Priority Agent***" shall have the meaning assigned to such term in the preamble to this Agreement.

"***Second Priority Claims***" shall mean (a) the payment of (i) the principal of and interest (including capitalized interest and interest accruing during the pendency of any Insolvency or Liquidation Proceeding, regardless of whether allowed or allowable in such proceeding) in respect of the Second Priority Notes, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise, and (ii) all other monetary obligations of the Company, each Guarantor and any Grantor to any Person in connection with the Second Priority Debt Documents (including fees (including any early termination or prepayment fees), costs, expenses (including fees and expenses of counsel) and indemnities, whether primary, secondary, direct, contingent, fixed or otherwise (including monetary obligations incurred during the pendency of any Insolvency or Liquidation Proceeding, regardless of whether allowed or allowable in such

proceeding)), and (b) the performance of all other obligations of the Company, each Guarantor and any Grantor under or pursuant to the Second Priority Debt Documents.

"***Second Priority Collateral***" shall mean, collectively, (a) all "Collateral", as defined in the Second Priority Collateral Agreements, and (b) all other assets of any Grantor now or at any time hereafter subject to a Second Priority Lien.

"***Second Priority Collateral Agreements***" shall mean (a) the Second Priority Security Agreement, dated as of [＿＿＿＿＿＿], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof), among the Company, each Grantor party thereto and the Second Priority Agent, (b) the Second Priority Deed of Trust, dated as of [＿＿＿＿＿＿], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof), among the Company, [＿＿＿＿＿＿] as trustee and the Second Priority Agent, (c) any other mortgage, deed of trust, leasehold mortgage, assignment of leases and rents, pledge agreement, security agreement, hypothecation agreement or any other agreement, document or instrument pursuant to which a Second Priority Lien is granted or under which rights or remedies with respect to a Second Priority Lien are governed and (d) any deposit account control agreement, securities account control agreement, landlord waiver, warehouseman's agreement, bailee's agreement and any other agreement, document or instrument entered into in connection with the attachment, perfection or priority of a Second Priority Lien.

"***Second Priority Creditors***" shall mean, at any time, all holders of the Second Priority Notes at such time.

"***Second Priority Debt Documents***" shall mean (a) the Second Priority Indenture, (b) the Second Priority Notes, (c) the Second Priority Collateral Agreements, (d) this Agreement and (e) all other agreements, documents, and instruments entered into in connection with any amendment, waiver, supplement or other modification with respect to any of the foregoing.

"***Second Priority Indenture***" shall mean the Indenture, dated as of the date hereof, between the Company, the Guarantors and the Second Priority Agent, as amended, amended and restated, supplemented or otherwise modified from time to time.

"***Second Priority Liens***" shall mean all Liens now or at any time hereafter securing the Second Priority Claims, whether created under the Second Priority Collateral Agreements or acquired by possession, statute (including any judgment lien), operation of law, subrogation or otherwise.

"***Second Priority Notes***" shall mean the Series B 20% Senior Secured Notes (including, for the avoidance of doubt, all Series B 20% Senior Secured Notes issued in lieu of the payment of interest in cash thereon) issued pursuant to the Second Priority Indenture.

"***Second Priority Permitted Actions***" shall have the meaning assigned to such term in Section 3.01(a).

"*Second Priority Redemption Fee*" shall have the meaning assigned to such term in Section 3.01(d).

"*Second Priority Release*" shall have the meaning assigned to such term in Section 3.04(b).

"*Second Priority Secured Parties*" shall mean, at any time, (a) the Second Priority Creditors, (b) the Second Priority Agent, (c) each other Person holding a Second Priority Claim and (d) the successors and assigns of each of the foregoing at such time.

"*Secured Parties*" shall mean, collectively, the First Priority Secured Parties, the Second Priority Secured Parties and the Third Priority Secured Parties.

"*Third Lien Standstill Period*" shall have the meaning assigned to such term in Section 3.02(b)(i).

"*Third Priority Agent*" shall have the meaning assigned to such term in the preamble to this Agreement.

"*Third Priority Claims*" shall mean (a) the payment of (i) the principal of and interest (including capitalized interest and interest accruing during the pendency of any Insolvency or Liquidation Proceeding, regardless of whether allowed or allowable in such proceeding) in respect of the Third Priority Notes, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise, and (ii) all other monetary obligations of the Company, each Guarantor and any Grantor to any Person in connection with the Third Priority Debt Documents (including fees (including any early termination or prepayment fees), costs, expenses (including fees and expenses of counsel) and indemnities, whether primary, secondary, direct, contingent, fixed or otherwise (including monetary obligations incurred during the pendency of any Insolvency or Liquidation Proceeding, regardless of whether allowed or allowable in such proceeding)), and (b) the performance of all other obligations of the Company, each Guarantor and any Grantor under or pursuant to the Third Priority Debt Documents.

"*Third Priority Collateral*" shall mean, collectively, (a) all "Collateral", as defined in the Third Priority Collateral Agreements, and (b) all other assets of any Grantor now or at any time hereafter subject to a Third Priority Lien.

"*Third Priority Collateral Agreements*" shall mean (a) the Third Priority Security Agreement, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof), among the Company, each Grantor party thereto and the Third Priority Agent, (b) the Third Priority Deed of Trust, dated as of [_____], 2009 (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof), among the Company, [_____] as trustee and the Third Priority Agent, (c) any other mortgage, deed of trust, leasehold mortgage, assignment of leases and rents, pledge agreement, security agreement, hypothecation agreement or any other agreement, document or instrument pursuant to which a Third Priority Lien is granted or under which rights or remedies with respect to a Third Priority Lien are governed and (d) any deposit account control agreement,

securities account control agreement, landlord waiver, warehouseman's agreement, bailee's agreement and any other agreement, document or instrument entered into in connection with the attachment, perfection or priority of a Third Priority Lien.

"***Third Priority Creditors***" shall mean, at any time, all holders of the Third Priority Notes at such time.

"***Third Priority Debt Documents***" shall mean (a) the Third Priority Indenture, (b) the Third Priority Notes, (c) the Third Priority Collateral Agreements, (d) this Agreement and (e) all other agreements, documents, and instruments entered into in connection with any amendment, waiver, supplement or other modification with respect to any of the foregoing.

"***Third Priority Indenture***" shall mean the Indenture, dated as of the date hereof, between the Company, the Guarantors and the Third Priority Agent, as amended, amended and restated, supplemented or otherwise modified from time to time.

"***Third Priority Liens***" shall mean all Liens now or at any time hereafter securing the Third Priority Claims, whether created under the Third Priority Collateral Agreements or acquired by possession, statute (including any judgment lien), operation of law, subrogation or otherwise.

"***Third Priority Notes***" shall mean the 10% Senior Subordinated Secured Notes (including, for the avoidance of doubt, all 10% Senior Subordinated Secured Notes issued in lieu of the payment of interest in cash thereon) issued pursuant to the Third Priority Indenture.

"***Third Priority Permitted Actions***" shall have the meaning assigned to such term in Section 3.01(a).

"***Third Priority Release***" shall have the meaning assigned to such term in Section 3.05(b).

"***Third Priority Secured Parties***" shall mean, at any time, (a) the Third Priority Creditors, (b) the Third Priority Agent, (c) each other Person holding a Third Priority Claim and (d) the successors and assigns of each of the foregoing at such time.

"***UCC***" shall mean the Uniform Commercial Code (or any similar or equivalent legislation) as in effect from time to time in any applicable jurisdiction.

SECTION 1.03. ***Terms Generally***. The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation." The word "will" shall be construed to have the same meaning and effect as the word "shall". Unless the context requires otherwise (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, restated, supplemented or otherwise modified, (b) any reference herein (i) to any Person shall be construed to include such Person's successors

and assigns and (ii) to the Company or any other Grantor shall be construed to include the Company or such Grantor as debtor and debtor-in-possession and any receiver or trustee for the Company or any other Grantor, as the case may be, in any Insolvency or Liquidation Proceeding or Liquidation Sale, (c) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (d) all references herein to Articles or Sections shall be construed to refer to Articles or Sections of this Agreement and (e) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

## ARTICLE II

### *Lien Priorities*

SECTION 2.01. **Relative Priorities**.   Notwithstanding the date, manner or order of grant, attachment or perfection of any Third Priority Lien, any Second Priority Lien or any First Priority Lien, and notwithstanding any provision of the UCC or any other applicable law or the provisions of any Collateral Agreement or any other Debt Document, and whether or not any First Priority Lien, any Second Priority Lien or any Third Priority Lien is void, invalid, unenforceable or unperfected or any other circumstance whatsoever, each Agent, for itself and for the Secured Parties on whose behalf it acts in such capacity therefor, hereby agrees that:

(a)    so long as the Discharge of First Priority Claims has not occurred (i) any First Priority Lien on any Collateral now or hereafter held by or for the benefit of any First Priority Secured Party shall be senior in right, priority, operation, effect and all other respects to any and all Second Priority Liens and Third Priority Liens on such Collateral for all purposes, (ii) any Second Priority Lien and any Third Priority Lien on any Collateral now or hereafter held by or for the benefit of any Second Priority Secured Party and any Third Priority Secured Party shall be junior and subordinate in right, priority, operation, effect and all other respects to any and all First Priority Liens on such Collateral for all purposes and (iii) the First Priority Liens shall be and remain senior in right, priority, operation, effect and all other respects to the Second Priority Liens and the Third Priority Liens for all purposes, regardless of whether or not any First Priority Liens are subordinated in any respect to any other Lien held by any Person (other than the Second Priority Secured Parties and the Third Priority Secured Parties) securing any other obligation of the Company, any other Grantor or any other Person; and

(b)    so long as the Discharge of Second Priority Claims has not occurred (i) any Second Priority Lien on any Collateral now or hereafter held by or for the benefit of any Second Priority Secured Party shall be senior in right, priority, operation, effect and all other respects to any and all Third Priority Liens on such Collateral for all purposes, (ii) any Third Priority Lien on any Collateral now or hereafter held by or for the benefit of any Third Priority Secured Party shall be junior and subordinate in right, priority, operation, effect and all other respects to any and all Second Priority Liens on such Collateral for all purposes and (iii) the Second Priority Liens shall be and remain senior in right, priority, operation effect and all

other respects to the Third Priority Liens for all purposes, regardless of whether or not any Second Priority Liens are subordinated in any respect to any other Lien held by any Person (other than the Third Priority Secured Parties) securing any other obligation of the Company, any other Grantor or any other Person.

SECTION 2.02. *Prohibition on Contesting Liens*. Each Agent, for itself and for the other Secured Parties on whose behalf it acts in such capacity therefor, agrees that it will not, and hereby waives any right to, contest or support any other Person in contesting, whether directly or indirectly, in any proceeding (including any Insolvency or Liquidation Proceeding) the validity, enforceability, priority or perfection of any Third Priority Lien, any Second Priority Lien or any First Priority Lien, as the case may be; *provided* that nothing in this Agreement shall be construed to prevent or impair the rights of any Agent or any other Secured Party to enforce the provisions of this Agreement to the extent provided hereby.

SECTION 2.03. *No New Liens*.

(a)    So long as the Discharge of First Priority Claims has not occurred, none of the Grantors shall, nor shall any Grantor permit any of its Domestic Restricted Subsidiaries to, (i) grant or permit to exist any additional Lien on any asset of a Grantor to secure any Second Priority Claim or any Third Priority Claim unless it has granted, or substantially concurrently therewith grants, a Lien on such asset to secure the First Priority Claims, with each such Lien to be subject to the provisions of this Agreement; or (ii) grant or permit to exist any additional Lien on any asset of a Grantor to secure any First Priority Claim unless it has granted, or substantially concurrently therewith grants, a Lien on such asset to secure the Second Priority Claims and the Third Priority Claims, with each such Lien to be subject to the provisions of this Agreement. To the extent that the provisions of the immediately preceding sentence are not complied with for any reason, without limiting any other right or remedy available to the First Priority Agent or the other First Priority Secured Parties, (A) the Second Priority Agent agrees, for itself and on behalf of the other Second Priority Secured Parties, that any amounts received by or distributed to any Second Priority Secured Party pursuant to or as a result of any Lien granted in contravention of this Section 2.03(a) shall be subject to Section 4.02(a) and (B) the Third Priority Agent agrees, for itself and on behalf of the other Third Priority Secured Parties, that any amounts received by or distributed to any Third Priority Secured Party pursuant to or as a result of any Lien granted in contravention of this Section 2.03(a) shall be subject to Section 4.02(a).

(b)    So long as the Discharge of Second Priority Claims has not occurred, none of the Grantors shall, nor shall any Grantor permit any of its Domestic Restricted Subsidiaries to, (i) grant or permit to exist any additional Lien on any asset of a Grantor to secure any Second Priority Claim unless it has granted, or substantially concurrently therewith grants, a Lien on such asset of such Grantor to secure the Third Priority Claims, with each such Lien to be subject to the provisions of this Agreement and (ii) grant or permit to exist any additional Lien on any asset of a Grantor to secure any Third Priority Claim unless it has granted,

R- 14