or substantially concurrently therewith grants, a Lien on such asset of such Grantor to secure the Second Priority Claims, with each such Lien to be subject to the provisions of this Agreement. To the extent that the provisions of the immediately preceding sentence are not complied with for any reason, without limiting any other right or remedy available to the Second Priority Agent or the other Second Priority Secured Parties, the Third Priority Agent agrees, for itself and on behalf of the other Third Priority Secured Parties, that any amounts received by or distributed to any Third Priority Secured Party pursuant to or as a result of any Lien granted in contravention of this Section 2.03(b) shall be subject to Section 4.02(b).

SECTION 2.04. *Similar Liens and Collateral*. The parties hereto acknowledge and agree that it is their intention that the specific assets which are included in the First Priority Collateral, the Second Priority Collateral and the Third Priority Collateral be identical. In furtherance of the foregoing, the parties hereto agree:

    (a)    to cooperate in good faith in order to determine, upon any reasonable request by the First Priority Agent, the Second Priority Agent or the Third Priority Agent, the specific assets included in the First Priority Collateral, the Second Priority Collateral and the Third Priority Collateral, the steps taken to perfect the First Priority Liens, the Second Priority Liens and the Third Priority Liens thereon and the identity of the respective parties obligated in respect of the First Priority Claims, the Second Priority Claims and the Third Priority Claims, respectively; and

    (b)    that the Second Priority Collateral Agreements and Third Priority Collateral Agreements shall be in all material respects in the same form as the First Priority Collateral Agreements, other than with respect to the first priority, second priority and third priority nature of the Liens created or evidenced thereunder, the identity of the Secured Parties that are parties thereto or secured thereby, and the other matters contemplated by this Agreement.

## ARTICLE III

### *Enforcement of Rights; Matters Relating to Collateral*

SECTION 3.01. *Exercise of Rights and Remedies*.

    (a)    (i)    So long as the Discharge of First Priority Claims has not occurred, whether or not any Insolvency or Liquidation Proceeding or Liquidation Sale has been commenced, the First Priority Agent shall have the exclusive right to take any Enforcement Action for and on behalf of the First Priority Secured Parties, in each case, without any consultation with or the consent of the Second Priority Agent or any other Second Priority Secured Party or the Third Priority Agent or any other Third Priority Secured Party; *provided* that, notwithstanding the foregoing:

(x)   (1)   in any Insolvency or Liquidation Proceeding, the Second Priority Agent may, on behalf of the Second Priority Secured Parties, file a proof of claim or statement of interest with respect to the Second Priority Claims (but if the Second Priority Agent has failed to file any such proof of claim or statement of interest within 30 days prior to the bar date applicable to such filing, the First Priority Agent may, but shall not be obligated to, file any such proof of claim or statement of interest on behalf of the Second Priority Agent);

(2)   the Second Priority Agent may take any action to preserve or protect the validity and enforceability of the Second Priority Liens, so long as the First Priority Agent has not notified the Second Priority Agent that such action is, or could reasonably be expected to be, (A) adverse to the First Priority Liens or the rights of the First Priority Agent or any other First Priority Secured Party to take any Enforcement Action in respect thereof or (B) otherwise inconsistent with the terms of this Agreement;

(3)   the Second Priority Secured Parties may file any responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding or other pleading made by any Person objecting to or otherwise seeking the disallowance of the claims of the Second Priority Secured Parties (including any claims secured by the Collateral), or otherwise make any agreements or file any motions pertaining to the Second Priority Claims, in each case, to the extent not inconsistent with the terms of this Agreement;

(4)   **[the Second Priority Secured Parties may exercise the right to buy-out the First Priority Claims, as provided in <u>Section 3.01(d)(i)</u>;]**

(5)   the Second Priority Secured Parties may exercise rights and remedies as unsecured creditors, as provided in <u>Section 3.03(a)</u>; and

(6)   subject to <u>Section 3.02(a)</u>, the Second Priority Agent may take any Enforcement Action after the termination of the Second Lien Standstill Period (the actions described in clause (x) of this proviso being referred to herein as the "*Second Priority Permitted Actions*"); and

(y)   (1)   in any Insolvency or Liquidation Proceeding, the Third Priority Agent may, on behalf of the Third Priority Secured Parties, file a proof of claim or statement of interest with respect to the Third Priority Claims (but if the Third Priority Agent has failed to file any such proof of claim or statement of interest within 30 days prior to the bar date applicable to such filing, the First Priority Agent may, but shall not be obligated to, file any such proof of claim or statement of interest on behalf of the Third Priority Agent);

(2)   the Third Priority Agent may take any action to preserve or protect the validity and enforceability of the Third Priority Liens, so long as the First Priority Agent has not notified the Third Priority Agent that such action is, or could reasonably be expected to be, (A) adverse to the First Priority Liens or the rights of the First Priority Agent or any other First Priority Secured Party to exercise remedies in respect thereof or (B) otherwise inconsistent with the terms of this Agreement;

(3)   the Third Priority Secured Parties may file any responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding or other pleading made by any Person objecting to or otherwise seeking the disallowance of the claims of the Third Priority Secured Parties (including any claims secured by the Collateral), or otherwise make any agreements or file any motions pertaining to the Third Priority Claims, in each case, to the extent not inconsistent with the terms of this Agreement;

(4)   **[the Third Priority Secured Parties may exercise the right to buy-out the First Priority Claims and/or the Second Priority Claims, as provided in Section 3.01(d)(ii);]**

(5)   the Third Priority Secured Parties may exercise rights and remedies as unsecured creditors, as provided in Section 3.03(a); and

(6)   subject to Section 3.02(a), the Third Priority Agent may take any Enforcement Action after the termination of the Third Lien Standstill Period (the actions described in clause (y) of this proviso being referred to herein as the "***Third Priority Permitted Actions***").

R-17

Except for the Second Priority Permitted Actions and the Third Priority Permitted Actions, unless and until the Discharge of First Priority Claims has occurred, the sole right and remedy of the Second Priority Agent and the other Second Priority Secured Parties and the Third Priority Agent and the other Third Priority Secured Parties with respect to the Collateral shall be to receive the proceeds of the Collateral, if any, remaining after the Discharge of First Priority Claims has occurred and in accordance with the Second Priority Debt Documents or the Third Priority Debt Documents, as applicable, and applicable law.

(ii)     If the Discharge of First Priority Claims has occurred, then so long as the Discharge of Second Priority Claims has not occurred, whether or not any Insolvency or Liquidation Proceeding or Liquidation Sale has been commenced, the Second Priority Agent shall have the exclusive right to take any Enforcement Action for and on behalf of the Second Priority Secured Parties, in each case, without any consultation with or the consent of the Third Priority Agent or any other Third Priority Secured Party; *provided* that, notwithstanding the foregoing, the Third Priority Agent and the other Third Priority Secured Parties may take any Third Priority Permitted Action. Except for the Third Priority Permitted Actions, unless and until the Discharge of Second Priority Claims has occurred, the sole right and remedy of the Third Priority Agent and the other Third Priority Secured Parties with respect to the Collateral shall be to receive the proceeds of the Collateral, if any, remaining after the Discharge of the Second Priority Claims has occurred and in accordance with the Third Priority Debt Documents and applicable law.

(iii)    If the Discharge of First Priority Claims and the Discharge of Second Priority Claims have occurred, then so long as the Discharge of Third Priority Claims has not occurred, whether or not any Insolvency or Liquidation Proceeding or Liquidation Sale has been commenced, the Third Priority Agent shall have the exclusive right to take any Enforcement Action for and on behalf of the Third Priority Secured Parties.

(b)  (i)     In taking any Enforcement Action, the First Priority Agent may enforce the provisions of the First Priority Debt Documents and exercise any and all remedies thereunder, in such order and in such manner as instructed by the First Priority Secured Parties, except in each case to the extent such enforcement or exercise would be otherwise prohibited hereunder. The First Priority Agent agrees to provide at least ten Business Days' prior written notice to the Second Priority Agent and the Third Priority Agent of its intention to take any Enforcement Action with respect to the Collateral; *provided, however,* that the failure to give any such notice shall not in any way limit its ability to take any such Enforcement Action.

(ii)    If the Discharge of First Priority Claims has occurred but the Discharge of Second Priority Claims has not occurred, in taking any Enforcement Action, the Second Priority Agent may enforce the provisions of the Second Priority Debt Documents and exercise any and all remedies thereunder, all in such order and in such manner as instructed by the Second Priority Secured Parties, except in each case to the extent such enforcement or exercise would be otherwise prohibited hereunder. The Second Priority Agent agrees to provide at least ten Business Days' prior written notice to the Third Priority Agent of its intention to take any Enforcement Action with respect to the Collateral; *provided, however*, that the failure to give any such notice shall not in any way limit its ability to take any such Enforcement Action.

(iii)   If the Discharge of First Priority Claims and the Discharge of Second Priority Claims have occurred, but the Discharge of Third Priority Claims has not occurred, in exercising rights and remedies with respect to the Collateral, the Third Priority Agent may enforce the provisions of the Third Priority Debt Documents and exercise any and all remedies thereunder, all in such order and in such manner as instructed by the Third Priority Secured Parties, except in each case to the extent such enforcement or exercise would be otherwise prohibited hereunder.

(c)    (i)    The Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, hereby acknowledges and agrees that no covenant, agreement or restriction contained in any Second Priority Debt Document shall, or be deemed to, restrict in any way the rights and remedies of the First Priority Agent or the other First Priority Secured Parties with respect to the Collateral as set forth in this Agreement and the other First Priority Debt Documents.

(ii)   The Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, hereby acknowledges and agrees that no covenant, agreement or restriction contained in any Third Priority Debt Document shall, or be deemed to, restrict in any way the rights and remedies of (A) the First Priority Agent or the other First Priority Secured Parties with respect to the Collateral as set forth in this Agreement and the other First Priority Debt Documents, or (B) the Second Priority Agent or the other Second Priority Secured Parties with respect to the Collateral as set forth in this Agreement and the other Second Priority Debt Documents.

**[(d)    (i)    Notwithstanding anything in this Agreement to the contrary, following the acceleration of the Indebtedness then outstanding in respect of the First Priority Notes, the Second Priority Creditors may, at their sole expense and effort, upon notice to the Company and the First Priority Agent (which notice shall be irrevocable), require the First Priority Secured Parties to transfer and assign to**

the Second Priority Creditors, [without warranty or representation or recourse (other than a warranty and representation from the First Priority Secured Parties that they have not otherwise sold, assigned, transferred or pledged any right, title or interest in and to such First Priority Claims),] all (but not less than all) of the First Priority Claims; *provided* that:

(x)     such transfer and assignment shall not conflict with any law, rule or regulation or order of any court or other Governmental Authority having jurisdiction; and

(y)     the Second Priority Creditors shall have paid to the First Priority Agent, for the account of the First Priority Secured Parties, in immediately available funds, an amount (such amount, the "*First Priority Claim Buy-Out Amount*") equal to: 100% of the then outstanding principal amount in respect of the First Priority Notes *plus* all accrued and unpaid interest thereon *plus* all accrued and unpaid fees [(other than any call premium or prepayment fee that may become due as a result of the prepayment or acceleration of the Indebtedness outstanding in respect of the First Priority Notes (such premium or fee, the "*First Priority Redemption Fee*"))] *plus* all the other First Priority Claims then outstanding (other than indemnification obligations in respect of which no claim has been made).

In order to effectuate the foregoing, the First Priority Creditors shall calculate, upon the written request of the Second Priority Agent, the First Priority Claim Buy-Out Amount.  If the buy-out right set forth in this Section 3.01(d)(i) is exercised, the parties shall endeavor to consummate the transfer and assignment of all of the First Priority Claims to the Second Priority Creditors promptly thereafter but in any event within ten Business Days of the request set forth in the first sentence of this Section 3.01(d)(i).  If the buy-out right set forth in this Section 3.01(d)(i) is exercised, the transfer and assignment of the First Priority Claims shall be consummated pursuant to documentation mutually acceptable to the First Priority Secured Parties and the Second Priority Secured Parties.  The Discharge of First Priority Claims shall be deemed to occur upon the consummation of the transfer and assignment of the First Priority Claims to the Second Priority Creditors in accordance with the terms of this Agreement, without requirement for any further action or notice from any Person.  [Notwithstanding anything to the contrary herein, if, at any time following the consummation of such transfer and assignment and the occurrence of the Discharge of First Priority Claims and the Discharge of Second Priority Claims, the Second Priority Creditors recover any First Priority Redemption

Fee prior to the first anniversary of the date of such transfer and assignment is consummated, they shall turn over such fees to First Priority Creditors in the form and to the extent received.]

(ii)     If (A) the Second Priority Creditors have the opportunity to exercise their buy-out right under Section 3.01(d)(i) but elect not to exercise such right or (B) if the Discharge of First Priority Claims has occurred and the Indebtedness then outstanding under the Second Priority Notes has been accelerated, then the Third Priority Creditors may, at their sole expense and effort, upon notice to the Company, the First Priority Agent and/or the Second Priority Agent (as applicable) (which notice shall be irrevocable), require the First Priority Secured Parties and/or the Second Priority Secured Parties (as applicable) to transfer and assign to the Third Priority Creditors[, without warranty or representation or recourse (other than a warranty and representation from the First Priority Secured Parties and the Second Priority Secured Parties that they have not otherwise sold, assigned, transferred or pledged any right, title or interest in and to such First Priority Claims and Second Priority Claims respectively),] all (but not less than all) of the First Priority Claims and/or the Second Priority Claims (as applicable); *provided* that:

(x)     such transfer and assignment shall not conflict with any law, rule or regulation or order of any court or other Governmental Authority having jurisdiction; and

(y)     the Third Priority Creditors shall have paid to the First Priority Agent and the Second Priority Agent, for the account of the First Priority Secured Parties and the Second Priority Secured Parties, in immediately available funds, an amount equal to (1) in respect of the First Priority Claims, the First Priority Claim Buy-Out Amount and (2) in respect of the Second Priority Claims (such amount, the "*Second Priority Claim Buy-Out Amount*"), 100% of the outstanding principal amount then due in respect of the Second Priority Notes *plus* all accrued and unpaid interest thereon *plus* all accrued and unpaid fees [(other than any call premium or prepayment fee that may become due as a result of the prepayment or the acceleration of the Indebtedness outstanding in respect of the Second Priority Notes (such premium or fee, the "*Second Priority Redemption Fee*"))] *plus* all other Second Priority Claims then outstanding (other than indemnification obligations in respect of which no claim has been made).

In order to effectuate the foregoing, the First Priority Creditors and/or the Second Priority Creditors (as applicable) shall calculate, upon the written request of the Third Priority Agent, the First Priority Claim Buy-Out Amount and/or the Second Priority Claim Buy-Out Amount. If the buy-out right set forth in this Section 3.01(d)(ii) is exercised, the parties shall endeavor to consummate the transfer and assignment of all of the First Priority Claims and/or Second Priority Claims (as applicable) to the Third Priority Creditors promptly thereafter but in any event within ten Business Days of the request set forth in the first sentence of this Section 3.01(d)(ii). If the Third Priority Creditors exercise the buy-out right set forth in this Section 3.01(d)(ii), the transfer and assignment of the First Priority Claims and/or Second Priority Claims (as applicable) shall be consummated pursuant to documentation mutually acceptable to the First Priority Secured Parties and/or the Second Priority Secured Parties (as applicable), in respect of its sale, and the Third Priority Creditors. The Discharge of First Priority Claims shall be deemed to occur upon the consummation of the transfer and assignment of the First Priority Claims to the Third Priority Creditors, and the Discharge of Second Priority Claims shall be deemed to occur upon the consummation of the transfer and assignment of the Second Priority Claims to the Third Priority Creditors, in each case without requirement for any further action or notice from any Person. [Notwithstanding anything to the contrary herein, if, at any time following the consummation of such transfer and assignment and the occurrence of the Discharge of First Priority Claims, the Discharge of Second Priority Claims and the Discharge of Third Priority Claims, the Third Priority Creditors recover any First Priority Redemption Fee or any Second Priority Redemption Fee prior to the first anniversary of the date of such transfer and assignment is consummated, they shall turn over such fees to the First Priority Creditors or the Second Priority Creditors, as applicable, in the form and to the extent received.]]

SECTION 3.02. *No Interference; Enforcement Standstill.*

(a)     Except for the Second Priority Permitted Actions, the Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, agrees that (whether or not any Insolvency or Liquidation Proceeding or Liquidation Sale has been commenced) the Second Priority Secured Parties:

(i)     will not, so long as the Discharge of First Priority Claims has not occurred, (A) take, or seek to take, any Enforcement Action or (B) commence or join with any Person (other than the First Priority Agent) in commencing, or petition for or vote in favor of any resolution for, any action or proceeding with respect to any Enforcement Action; *provided, however,* that the Second Priority Agent may take any

Enforcement Action, or commence, join with any Person in commencing, or petition for or vote in favor of any resolution for, any Enforcement Action, after a period of 120 days has elapsed (which period shall be tolled during any period in which the First Priority Agent shall not be entitled to take any Enforcement Action as a result of (x) any injunction issued by a court of competent jurisdiction or (y) the automatic stay or any other stay in any Insolvency or Liquidation Proceeding) since the date on which the Second Priority Agent has delivered to the First Priority Agent written notice of the acceleration of the Indebtedness then outstanding under the Second Priority Notes (the "***Second Lien Standstill Period***"); and *provided further, however,* that (1) notwithstanding the expiration of the Second Lien Standstill Period or anything herein to the contrary, in no event shall the Second Priority Agent take any Enforcement Action, or commence, join with any Person at any time in commencing, or petition for or vote in favor of any resolution for, any Enforcement Action, if the First Priority Agent shall have commenced, and shall be diligently pursuing (or shall have sought or requested relief from or modification of the automatic stay or any other stay in any Insolvency or Liquidation Proceeding to enable the commencement and pursuit thereof), the taking of any Enforcement Action (prompt written notice thereof to be given to the Second Priority Agent by the First Priority Agent) and (2) after the expiration of the Second Lien Standstill Period, so long as the First Priority Agent has not taken any Enforcement Action with respect to the Collateral, in the event that and for so long as the Second Priority Agent has taken any Enforcement Action to the extent permitted hereunder and is diligently pursuing such Enforcement Action, the First Priority Secured Parties shall not take any action of a similar nature with respect to the Collateral; *provided* that all other provisions of this Agreement (including the turnover provisions of Article IV) are complied with;

(ii)     will not contest, protest or object to any foreclosure action or proceeding brought by the First Priority Agent, or any other Enforcement Action taken by the First Priority Agent, so long as Second Priority Liens attach to the proceeds thereof subject to the relative priorities set forth in Section 2.01;

(iii)    will not object to the forbearance by the First Priority Agent from commencing or pursuing any foreclosure action or proceeding or taking any other Enforcement Action;

(iv)     will not, so long as the Discharge of First Priority Claims has not occurred, take or receive any Collateral, or any proceeds thereof or payment with respect thereto, in connection with the taking of any Enforcement Action or in connection with any insurance policy award under a policy of insurance relating to any Collateral or any

condemnation award (or deed in lieu of condemnation) relating to any Collateral;

(v)    will not take any action, if the Second Priority Agent has received notice from the First Priority Agent that such action could reasonably be expected to hinder, in any manner, the taking of any Enforcement Action by the First Priority Agent;

(vi)    will not object to the manner in which the First Priority Agent or any other First Priority Secured Party may seek to enforce or collect the First Priority Claims or the First Priority Liens, regardless of whether any action or failure to act by or on behalf of the First Priority Agent or any other First Priority Secured Party is, or could be, adverse to the interests of the Second Priority Secured Parties, and will not assert, and hereby waive, to the fullest extent permitted by law, any right to demand, request, plead or otherwise assert or claim the benefit of any marshalling, appraisal, valuation or other similar right that may be available under applicable law with respect to the Collateral or any similar rights a junior secured creditor may have under applicable law; and

(vii)    will not attempt, directly or indirectly, whether by judicial proceeding or otherwise, to challenge or question the validity, enforceability, priority or allowance of any First Priority Claim or any First Priority Debt Document, including this Agreement, or the validity or enforceability of the priorities, rights or obligations established by this Agreement.

(b)    Except for the Third Priority Permitted Actions, the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, agrees that (whether or not any Insolvency or Liquidation Proceeding or Liquidation Sale has been commenced) the Third Priority Secured Parties:

(i)    will not, so long as the Discharge of First Priority Claims and the Discharge of Second Priority Claims have not occurred (A) take, or seek to take, any Enforcement Action or (B) commence or join with any Person (other than the First Priority Agent or the Second Priority Agent) in commencing, or petition for or vote in favor of any resolution for, any action or proceeding with respect to any Enforcement Action; *provided, however*, that the Third Priority Agent may take any Enforcement Action, or commence, join with any Person in commencing, or petition for or vote in favor of any resolution for, any Enforcement Action, after a period of 120 days has elapsed (which period shall be tolled during any period in which the First Priority Agent and the Second Priority Agent shall not be entitled to take any Enforcement Action as a result of (x) any injunction issued by a court of competent jurisdiction or (y) the automatic stay or any other stay in any Insolvency or Liquidation Proceeding) since the date on which the Third Priority Agent has delivered to the First Priority Agent and the Second Priority Agent

written notice of the acceleration of the Indebtedness then outstanding under the Third Priority Notes (the "***Third Lien Standstill Period***"); and *provided further*, *however*, that (1) notwithstanding the expiration of the Third Lien Standstill Period or anything herein to the contrary, in no event shall the Third Priority Agent take any Enforcement Action, or commence, join with any Person at any time in commencing, or petition for or vote in favor of any resolution for, any such action or proceeding, if the First Priority Agent or the Second Priority Agent shall have commenced, and shall be diligently pursuing (or shall have sought or requested relief from or modification of the automatic stay or any other stay in any Insolvency or Liquidation Proceeding to enable the commencement and pursuit thereof), the taking of any Enforcement Action (prompt written notice thereof to be given to the Third Priority Agent by the First Priority Agent and/or the Second Priority Agent, as applicable) and (2) after the expiration of the Third Lien Standstill Period, so long as the First Priority Agent and the Second Priority Agent have not taken any Enforcement Action with respect to the Collateral, in the event that and for so long as the Third Priority Agent has taken any Enforcement Action to the extent permitted hereunder and is diligently pursuing such Enforcement Action, none of the First Priority Secured Parties or the Second Priority Secured Parties shall take any action of a similar nature with respect to the Collateral; *provided* that all other provisions of this Agreement (including the turnover provisions of Article IV) are complied with;

(ii)     will not contest, protest or object to any foreclosure action or proceeding brought by the First Priority Agent or the Second Priority Agent or any other Enforcement Action taken by the First Priority Agent or the Second Priority Agent, so long as Third Priority Liens attach to the proceeds thereof subject to the relative priorities set forth in Section 2.01;

(iii)    will not object to the forbearance by the First Priority Agent or the Second Priority Agent from commencing or pursuing any foreclosure action or proceeding or taking any other Enforcement Action;

(iv)     will not, so long as the Discharge of First Priority Claims and the Discharge of Second Priority Claims have not occurred, take or receive any Collateral, or any proceeds thereof or payment with respect thereto, in connection with the taking of any Enforcement Action or in connection with any insurance policy award under a policy of insurance relating to any Collateral or any condemnation award (or deed in lieu of condemnation) relating to any Collateral;

(v)      will not take any action if the Third Priority Agent has received notice from either the First Priority Agent or the Second Priority Agent (as applicable) that such action could reasonably be expected to hinder, in

any manner, the taking of any Enforcement Action by the First Priority Agent or the Second Priority Agent;

(vi)    will not object to the manner in which the First Priority Agent or any other First Priority Secured Party or the Second Priority Agent or any other Second Priority Secured Party may seek to enforce or collect the First Priority Claims, the First Priority Liens, the Second Priority Claims or the Second Priority Liens respectively, regardless of whether any action or failure to act by or on behalf of the First Priority Agent or any other First Priority Secured Party or the Second Priority Agent or any other Second Priority Secured Party is, or could be, adverse to the interests of the Third Priority Secured Parties, and will not assert, and hereby waive, to the fullest extent permitted by law, any right to demand, request, plead or otherwise assert or claim the benefit of any marshalling, appraisal, valuation or other similar right that may be available under applicable law with respect to the Collateral or any similar rights a junior secured creditor may have under applicable law; and

(vii)    will not attempt, directly or indirectly, whether by judicial proceeding or otherwise, to challenge or question the validity, enforceability, priority or allowance of any First Priority Claim, any First Priority Debt Document, any Second Priority Claim or any Second Priority Debt Document, including this Agreement, or the validity or enforceability of the priorities, rights or obligations established by this Agreement.

SECTION 3.03. *Rights other than in respect of Collateral.*

The Second Priority Agent and the other Second Priority Secured Parties and the Third Priority Agent and the other Third Priority Secured Parties may, in accordance with the terms of the Second Priority Debt Documents and the Third Priority Debt Documents, respectively, and applicable law, enforce rights and exercise remedies against any Grantor as creditors other than in respect of the Collateral; *provided* that no such action is otherwise inconsistent with the terms of this Agreement and the payment subordination provisions of the Third Priority Indenture. Without limiting the generality of the foregoing sentence:

(a)    the Second Priority Secured Parties shall be entitled to prosecute litigation against any Grantor or any other Person liable in respect of the Second Priority Claims, regardless of whether any Second Lien Standstill Period is then in effect, but shall be prohibited from taking any action to enforce any judgment until the lapse of any applicable Second Lien Standstill Period and then only to the extent permitted by the terms of this Agreement; and

(b)    the Third Priority Secured Parties shall be entitled to prosecute litigation against any Grantor or any other Person liable in respect of the Third Priority Claims, notwithstanding whether any Third Lien Standstill Period is then in effect, but shall be prohibited from taking any action to enforce any judgment until the lapse

of any applicable Third Lien Standstill Period and then only to the extent permitted by the terms of this Agreement.

Nothing in this Agreement shall prohibit the receipt by the Second Priority Agent or any other Second Priority Secured Party or the Third Priority Agent or any other Third Priority Secured Party of the required payments of principal, premium, interest, fees and other amounts due under the Second Priority Debt Documents and the Third Priority Debt Documents respectively, so long as such receipt is not the direct or indirect result of the enforcement or exercise by the Second Priority Agent or any other Second Priority Secured Party or the Third Priority Agent or any other Third Priority Secured Party of rights or remedies in contravention of this Agreement as a secured creditor (including any right of setoff) against Collateral or enforcement in contravention of this Agreement of any Second Priority Lien or any Third Priority Lien against Collateral (including any judgment lien resulting from the exercise of remedies available to an unsecured creditor).

SECTION 3.04. *Automatic Release of Second Priority Liens and Third Priority Liens*.

(a)     If, in connection with (i) any Disposition of any Collateral permitted under the terms of this Agreement or (ii) the taking of any Enforcement Action in accordance with this Agreement, the First Priority Agent, for itself and on behalf of the other First Priority Secured Parties, (A) releases any of the First Priority Liens, or (B) releases any Guarantor from its obligations under its guarantee of the First Priority Claims (in each case, a "*First Priority Release*"), other than any such First Priority Release granted following (and not as a condition to) the occurrence of the Discharge of First Priority Claims, then the Second Priority Liens and the Third Priority Liens on such Collateral, and the obligations of such Guarantor under its guarantee of the Second Priority Claims and the Third Priority Claims, shall be automatically and simultaneously released, and the Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, and the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, shall promptly execute and deliver to the First Priority Agent, the relevant Grantor or such Guarantor such termination statements, releases and other documents as the First Priority Agent or the relevant Grantor or Guarantor may reasonably request and provide to effectively confirm such First Priority Release; *provided* that, in the case of a Disposition of Collateral or a First Priority Release of a Guarantor from its Guarantee, the Second Priority Liens and the Third Priority Liens or the applicable Guarantee(s) shall not be so released if such Disposition or such First Priority Release is not permitted under the terms of the Second Priority Debt Documents or the Third Priority Debt Documents, as applicable; and *provided further, however*, that in the case of a Disposition of Collateral, any such release of the Second Priority Liens and the Third Priority Liens on such Collateral shall not extend to or otherwise affect the rights of the Second Priority Secured Parties and the Third Priority Secured Parties to the proceeds of, or payments with respect to, such Disposition of Collateral (subject to the relative priorities set forth in <u>Section 2.01</u>).

(b)     If, in connection with (i) any Disposition of any Collateral permitted under the terms of this Agreement or (ii) the taking of any Enforcement Action in accordance with this Agreement, the Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, (A) releases any of the Second Priority Liens, or (B) releases any Guarantor from its obligations under its guarantee of the Second Priority Claims (in each case, a "*Second Priority Release*"), other than any such Second Priority Release granted following (and not as a condition to) the occurrence of the Discharge of Second Priority Claims, then the Third Priority Liens on such Collateral, and the obligations of such Guarantor under its guarantee of the Third Priority Claims, shall be automatically and simultaneously released, and the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, shall promptly execute and deliver to the Second Priority Agent, the relevant Grantor or such Guarantor such termination statements, releases and other documents as the Second Priority Agent or the relevant Grantor or Guarantor may reasonably request and provide to effectively confirm such Second Priority Release; *provided* that, in the case of a Disposition of Collateral or a Second Priority Release of a Guarantor from its Guarantee, the Third Priority Liens or the applicable Guarantee(s) shall not be so released if such Disposition or such Second Priority Release is not permitted under the terms of the Third Priority Debt Documents, as applicable; and *provided further, however,* that in the case of a Disposition of Collateral, any such release of the Second Priority Liens and the Third Priority Liens on such Collateral shall not extend to or otherwise affect the rights of the Second Priority Secured Parties and the Third Priority Secured Parties to the proceeds of, or payments with respect to, such Disposition of Collateral (subject to the relative priorities set forth in Section 2.01).

(c)     (i)     Until the Discharge of First Priority Claims occurs, the Second Priority Agent, for itself and on behalf of each other Second Priority Secured Party, and the     Third Priority Agent, for itself and on behalf of each other Third Priority Secured     Party, hereby appoints the First Priority Agent, and any officer or agent of the     First Priority Agent, with full power of substitution, as the attorney-in-fact of     each Second Priority Secured Party and Third Priority Secured Party for the     purpose of carrying out the provisions of this Section 3.04 and taking any action     and executing any instrument that the First Priority Agent may deem necessary or     advisable to accomplish the purposes of this Section 3.04 (including any     endorsements     or     other instruments of transfer or release), which appointment is irrevocable and coupled with an interest.

(ii)     After the occurrence of the Discharge of First Priority Claims and until the Discharge of Second Priority Claims occurs, the Third Priority Agent, for itself and on behalf of each other Third Priority Secured Party, hereby appoints the Second Priority Agent, and any officer or agent of the Second Priority Agent, with full power of substitution, as the attorney-in-fact of each Third Priority Secured Party for the purpose of

carrying out the provisions of this Section 3.04 and taking any action and executing any instrument that the Second Priority Agent may deem necessary or advisable to accomplish the purposes of this Section 3.04 (including any endorsements or other instruments of transfer or release), which appointment is irrevocable and coupled with an interest.

SECTION 3.05. *Automatic Release of First Priority Liens.*

(a)     If, in connection with the taking of any Enforcement Action after the expiration of the Second Lien Standstill Period that is permitted in accordance with clause (2) of the second proviso to Section 3.02(a)(i), the Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, (i) releases any of the Second Priority Liens, or (ii) releases any Guarantor from its obligations under its guarantee of the Second Priority Claims, then the First Priority Liens and the Third Priority Liens on such Collateral, and the obligations of such Guarantor under its guarantee of the First Priority Claims and the Third Priority Claims, shall be automatically and simultaneously released, and the First Priority Agent, for itself and on behalf of the other First Priority Secured Parties and the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, shall promptly execute and deliver to the Second Priority Agent, the relevant Grantor or such Guarantor such termination statements, releases and other documents as the Second Priority Agent or the relevant Grantor or Guarantor may reasonably request to effectively confirm such release; *provided* that so long as the Discharge of First Priority Claims has not occurred, the proceeds of, or payments with respect to, any sale or other Disposition of Collateral in connection with such release that are received by the Second Priority Agent or any other Second Priority Secured Party, shall be segregated and held in trust and forthwith transferred or paid over to the First Priority Agent for the benefit of the First Priority Secured Parties in accordance with Section 4.02(a); and *provided further, however,* that in the case of a Disposition of Collateral, any such release of the Second Priority Liens and the Third Priority Liens on such Collateral shall not extend to or otherwise affect the rights of the Second Priority Secured Parties and the Third Priority Secured Parties to the proceeds of, or payments with respect to, such Disposition of Collateral (subject to this Agreement and the payment subordination provisions of the Third Priority Indenture). **[Notwithstanding anything to the contrary in the foregoing, the First Priority Agent shall not be obligated to release the First Priority Liens on any Collateral in connection with any sale or other Disposition of Collateral to a Second Priority Secured Party or an affiliate thereof or any other transaction other than a sale of such Collateral to a third Person with respect to which at least [75%] of the consideration therefor consists of cash and cash equivalents].**

(b)     If, in connection with the taking of any Enforcement Action after the expiration of the Third Lien Standstill Period that is permitted in accordance with clause (2) of the second proviso to Section 3.02(b)(i), the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, (i) releases any of the

Third Priority Liens, or (ii) releases any Guarantor from its obligations under its guarantee of the Third Priority Claims (in each case, a "**_Third Priority Release_**"), then the First Priority Liens and the Second Priority Liens on such Collateral, and the obligations of such Guarantor under its guarantee of the First Priority Claims and the Second Priority Claims, shall be automatically and simultaneously released, and the First Priority Agent, for itself and on behalf of the other First Priority Secured Parties and the Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, shall promptly execute and deliver to the Third Priority Agent, the relevant Grantor or such Guarantor such termination statements, releases and other documents as the Third Priority Agent or the relevant Grantor or Guarantor may reasonably request to effectively confirm such release; _provided_ that so long as the Discharge of First Priority Claims and the Discharge of Second Priority Claims have not both occurred, the proceeds of, or payments with respect to, any sale or other Disposition of Collateral in connection with such Third Priority Release that are received by the Third Priority Agent or any other Third Priority Secured Party, shall be segregated and held in trust and forthwith transferred or paid over to the First Priority Agent for the benefit of the First Priority Secured Parties or to the Second Priority Agent for the benefit of the Second Priority Secured Parties, each in accordance with Section 4.02(a); and _provided further, however_, that in the case of a Disposition of Collateral, any such release of the Second Priority Liens and the Third Priority Liens on such Collateral shall not extend to or otherwise affect the rights of the Second Priority Secured Parties and the Third Priority Secured Parties to the proceeds of, or payments with respect to, such Disposition of Collateral (subject to this Agreement and the payment subordination provisions of the Third Priority Indenture). **[Notwithstanding anything to the contrary in the foregoing, neither the First Priority Agent nor the Second Priority Agent shall be obligated to release the First Priority Liens or the Second Priority Liens, respectively, on any Collateral in connection with any sale or other Disposition of Collateral to a Third Priority Secured Party or an affiliate thereof or any other transaction other than a sale of such Collateral to a third Person with respect to which at least [75%] of the consideration therefor consists of cash and cash equivalents].**

SECTION 3.06. *__Insurance and Condemnation Awards__*. So long as the Discharge of First Priority Claims has not occurred, the First Priority Agent and the other First Priority Secured Parties shall have the exclusive right, subject to the rights (if any) of the Grantors under the First Priority Debt Documents, to settle and adjust claims in respect of Collateral under policies of insurance covering Collateral and to approve any award granted in any condemnation or similar proceeding, or any deed in lieu of condemnation, in respect of the Collateral. All proceeds of any such policy and any such award, or any payments with respect to a deed in lieu of condemnation, shall (a) **first**, prior to the Discharge of First Priority Claims and subject to the rights (if any) of the Grantors under the First Priority Debt Documents, be paid to the First Priority Agent for the benefit of First Priority Secured Parties and to satisfy the First Priority Claims pursuant to the terms of the First Priority Debt Documents, (b) **second**, after the occurrence of the Discharge of First Priority Claims and subject to the rights (if any) of the Grantors under the Second Priority

Debt Documents, be paid to the Second Priority Agent for the benefit of the Second Priority Secured Parties and to satisfy the Second Priority Claims pursuant to the terms of the Second Priority Debt Documents, (c) **third**, after the occurrence of the Discharge of Second Priority Claims and subject to the rights (if any) of the Grantors under the Third Priority Debt Documents, be paid to the Third Priority Agent for the benefit of the Third Priority Secured Parties and to satisfy the Third Priority Claims pursuant to the terms of the Third Priority Debt Documents, and (d) **fourth**, be paid to the owner of the subject property or as a court of competent jurisdiction may otherwise direct. Until the Discharge of First Priority Claims has occurred, if the Second Priority Agent or any other Second Priority Secured Party or the Third Priority Agent or any other Third Priority Secured Party shall, at any time, receive any proceeds of any such insurance policy or any such award or payment, it shall transfer and pay over such proceeds to the First Priority Agent in accordance with <u>Section 4.02</u>. Following the occurrence of the Discharge of First Priority Claims, but until the Discharge of Second Priority Claims has occurred, if the Third Priority Agent or any other Third Priority Secured Party shall, at any time, receive any proceeds of any such insurance policy or any such award or payment, it shall transfer and pay over such proceeds to the Second Priority Agent in accordance with <u>Section 4.02</u>.

SECTION 3.07. *Notification of Release of Collateral*. Each of the First Priority Agent, the Second Priority Agent and the Third Priority Agent shall give the other prompt written notice of the Disposition by it of, and release by it of any First Priority Lien, Second Priority Lien or Third Priority Lien on, any Collateral. Such notice shall describe in reasonable detail the subject Collateral, the parties involved in such Disposition or release, the place, time, manner and method thereof, and the consideration, if any, received therefor; *provided, however*, that the failure to give any such notice shall not in and of itself in any way impair the effectiveness of any such Disposition or release.

## ARTICLE IV

### *Payments*

SECTION 4.01. *Application of Proceeds*. Any Collateral or proceeds thereof received by any Secured Party in connection with any Disposition of, or collection on, such Collateral pursuant to the taking of any Enforcement Action shall be applied as follows:

**first**, to satisfy costs and expenses of the applicable Secured Party in connection with such enforcement or exercise,

**second**, after all such costs and expenses have been satisfied in full, to satisfy the First Priority Claims,

**third**, after the Discharge of First Priority Claims has occurred, to satisfy the Second Priority Claims,

**fourth,** after the Discharge of Second Priority Claims has occurred, to satisfy the Third Priority Claims, and

**fifth**, after the Discharge of Third Priority Claims has occurred, any surplus Collateral or proceeds then remaining shall be paid to whosoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct.

This Agreement is intended to be enforceable as a subordination agreement notwithstanding the commencement of any Insolvency or Liquidation Proceeding, including under Section 510 of the Bankruptcy Code and any comparable provision of applicable law, and it is intended that the foregoing order of application shall apply in the event of any Insolvency Proceeding or Liquidation affecting the Company or any Grantor.

SECTION 4.02. *Payment Over.*

(a)     So long as the Discharge of First Priority Claims has not occurred, any Collateral or any proceeds thereof (together with assets or proceeds subject to Liens referred to in the final sentence of Section 2.03(a)) received by the Second Priority Agent or any other Second Priority Secured Party or the Third Priority Agent or any other Third Priority Secured Party in connection with any Disposition of, or collection on, such Collateral upon the taking of any Enforcement Action, or in connection with any insurance policy claim or any condemnation award (or deed in lieu of condemnation), shall be segregated and held in trust and forthwith transferred or paid over to the First Priority Agent for the benefit of the First Priority Secured Parties in the same form as received, together with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. Until the Discharge of First Priority Claims occurs, each of the Second Priority Agent (for itself and on behalf of each other Second Priority Secured Party) and the Third Priority Agent (for itself and on behalf of each other Third Priority Secured Party) hereby appoints the First Priority Agent, and any officer or agent of the First Priority Agent as may be designated by the First Priority Agent from time to time, with full power of substitution, the attorney-in-fact of each Second Priority Secured Party and each Third Priority Secured Party for the purpose of carrying out the provisions of this Section 4.02(a) and taking any action and executing any instrument that the First Priority Agent may deem necessary or advisable to accomplish the purposes of this Section 4.02(a), which appointment is irrevocable and coupled with an interest.

(b)     So long as the Discharge of First Priority Claims has occurred and the Discharge of Second Priority Claims has not occurred, any Collateral or any proceeds thereof (together with assets or proceeds subject to Liens referred to in the final sentence of Section 2.03(b)) received by the Third Priority Agent or any other Third Priority Secured Party in connection with any Disposition of, or collection on, such Collateral upon the taking of any Enforcement Action, or in connection with any insurance policy claim or any condemnation award (or deed in lieu of condemnation), shall be segregated and held in trust and forthwith transferred or paid over to the Second Priority Agent for the benefit of the Second Priority Secured Parties in the same form as received, together with any necessary

R-32

endorsements, or as a court of competent jurisdiction may otherwise direct. Until the Discharge of Second Priority Claims occurs, the Third Priority Agent, for itself and on behalf of each other Third Priority Secured Party hereby appoints the Second Priority Agent, and any officer or agent of the Second Priority Agent as may be designated by the Second Priority Agent from time to time, with full power of substitution, the attorney-in-fact of each Third Priority Secured Party for the purpose of carrying out the provisions of this Section 4.02(b) and taking any action and executing any instrument that the Second Priority Agent may deem necessary or advisable to accomplish the purposes of this Section 4.02(b), which appointment is irrevocable and coupled with an interest.

SECTION 4.03. *Certain Agreements with Respect to Unenforceable Liens.*

Notwithstanding anything to the contrary contained herein:

(a)     until the Discharge of First Priority Claims occurs, if in any Insolvency or Liquidation Proceeding a determination is made that any First Priority Lien encumbering any Collateral is not enforceable for any reason, then the Second Priority Agent, the Second Priority Secured Parties, the Third Priority Agent and the Third Priority Secured Parties agree that any distribution or recovery they may receive with respect to, or allocable to, the value of the assets constituting Collateral subject to an enforceable Lien in favor of the Second Priority Secured Parties or the Third Priority Secured Parties or any proceeds thereof shall (for so long as the Discharge of First Priority Claims has not occurred) be segregated and held in trust and forthwith paid over to the First Priority Agent for the benefit of the First Priority Secured Parties in the same form as received without recourse, representation or warranty (other than a representation from each of the Second Priority Agent and the Third Priority Agent that it has not otherwise sold, assigned, transferred or pledged any right, title or interest in and to such distribution or recovery) but with any necessary endorsements or as a court of competent jurisdiction may otherwise direct; and

(b)     after the Discharge of First Priority Claims has occurred and until the Discharge of Second Priority Claims occurs, if in any Insolvency or Liquidation Proceeding a determination is made that any Second Priority Lien encumbering any Collateral is not enforceable for any reason, then the Third Priority Agent and the Third Priority Secured Parties agree that any distribution or recovery they may receive with respect to, or allocable to, the value of the assets constituting Collateral subject to an enforceable Lien in favor of the Third Priority Secured Parties or any proceeds thereof shall (for so long as the Discharge of Second Priority Claims has not occurred) be segregated and held in trust and forthwith paid over to the Second Priority Agent for the benefit of the Second Priority Secured Parties in the same form as received without recourse, representation or warranty (other than a representation from the Third Priority Agent that it has not otherwise sold, assigned, transferred or pledged any right, title or interest in and to such distribution or recovery) but with any necessary endorsements or as a court of competent jurisdiction may otherwise direct.

(c)     Until the Discharge of First Priority Claims occurs, the Second Priority Agent, for itself and on behalf of each other Second Priority Secured Party, and the Third Priority Agent, for itself and on behalf of each other Third Priority Secured Party, hereby appoints the First Priority Agent, and any officer or agent of the First Priority Agent, with full power of substitution, the attorney-in-fact of each Second Priority Secured Party and each Third Priority Secured Party for the limited purpose of carrying out the provisions of <u>Section 4.03(a)</u> and taking any action and executing any instrument that the First Priority Agent may deem necessary or advisable to accomplish the purposes of <u>Section 4.03(a)</u>, which appointment is irrevocable and coupled with an interest.  After the Discharge of First Priority Claims has occurred and until the Discharge of Second Priority Claims occurs, the Third Priority Agent, for itself and on behalf of each other Third Priority Secured Party, hereby appoints the Second Priority Agent, and any officer or agent of the Second Priority Agent, with full power of substitution, the attorney-in-fact of each Third Priority Secured Party for the limited purpose of carrying out the provisions of <u>Section 4.03(b)</u> and taking any action and executing any instrument that the Second Priority Agent may deem necessary or advisable to accomplish the purposes of <u>Section 4.03(b)</u>, which appointment is irrevocable and coupled with an interest.

SECTION 4.04.  *Acknowledgements Regarding Indentures' Payment Priorities.*

The First Priority Agent, for itself and on behalf of each other First Priority Secured Party, the Second Priority Agent, for itself and on behalf of each other Second Priority Secured Party, and the Third Priority Agent, for itself and on behalf of each other Third Priority Secured Party, hereby acknowledge the following provisions and priorities contained in the First Priority Indenture, Second Priority Indenture and Third Priority Indenture, with the understanding that any capitalized term used in this <u>Section 4.04</u> that is not defined herein has the meaning given to it in each such Indenture:

(a)     Pursuant to Section 2.16 of each Indenture, (i) the Company may not pay, and the Third Priority Creditors shall not be entitled to receive, interest in cash on any Third Priority Notes while any First Priority Notes or Second Priority Notes remain outstanding and (ii) the Company may not pay, and the Second Priority Creditors shall not be entitled to receive, interest in cash on any Second Priority Notes unless, concurrently therewith, the Company pays interest in cash on the First Priority Notes in the same percentage.

(b)     Pursuant to Section 4.15 of each Indenture, (i) so long as the Discharge of First Priority Claims has not occurred, any payments in connection with a Change of Control Offer shall first be made to the First Priority Agent for the benefit of, and to satisfy in full, the First Priority Claims before any such payments may be made to the Second Priority Creditors or the Third Priority Creditors and (ii) if the Discharge of First Priority Claims has occurred but the Discharge of Second Priority Claims has not occurred, any payments with respect to a Change of Control Offer shall first be made to the Second Priority Agent for the benefit of,

and to satisfy in full, the Second Priority Claims before any such payments may be made to the Third Priority Creditors.

(c)     Pursuant to Section 4.16 of each Indenture, (i) the Company shall apply, or cause any Restricted Subsidiary to apply, the Net Cash Proceeds relating to any Asset Sale, pursuant to Section 4.16(3)(a) of such Indentures, within 360 days of receipt thereof to redeem, purchase or repurchase in response to replies to an offer to do any of these things in the following order of priority: first, the First Priority Claims, second, the Second Priority Claims and third, the Third Priority Claims; provided, however, that each of the First Priority Creditors, Second Priority Creditors and Third Priority Creditors shall be treated on a pro rata basis with respect to any such redemption, purchase or repurchase; and (ii) (x) so long as the Discharge of First Priority Claims has not occurred, any payments with respect to a Net Proceeds Offer shall first be made to the First Priority Agent for the benefit of, and to satisfy in full, the First Priority Claims before any such payments may be made in respect of the Second Priority Claims or the Third Priority Claims and (y) if the Discharge of First Priority Claims has occurred but the Discharge of Second Priority Claims has not occurred, any payments with respect to a Net Proceeds Offer shall first be made to the Second Priority Agent for the benefit of, and to satisfy in full, the Second Priority Claims before any such payments may be made in respect of the Third Priority Claims.

(d)     Pursuant to Section 6.10 of each Indenture, if a Trustee collects any money or property pursuant to Article 6 of such Indenture, it shall make such payments or distributions in the order of priority set forth in such Section 6.10; provided always that (i) any Collateral or proceeds thereof received in connection with any Disposition of, or collection on, such Collateral shall be applied in accordance with Section 4.01 hereof, (ii) with respect to any other money or property received by a Trustee and subject to Section 4.04(f) below (x) if the Discharge of First Priority Claims has not occurred, any payments or distributions shall first be made to the First Priority Agent for the benefit of, and to satisfy in full, the First Priority Claims before any such payments or distributions may be made to satisfy the Second Priority Claims or the Third Priority Claims and (y) if the Discharge of First Priority Claims has occurred but the Discharge of Second Priority Claims has not occurred, any payments or distributions shall first be made to the Second Priority Agent for the benefit of, and to satisfy in full, the Second Priority Claims before any such payments or distributions may be made to satisfy the Third Priority Claims.

(e)     Pursuant to Sections 8.01 and 8.02 of each Indenture, the Company may only defease or satisfy and discharge the First Priority Notes, the Second Priority Notes and the Third Priority Notes (i) so long as the Discharge of First Priority Claims has not then occurred, only if the First Priority Notes are defeased or satisfied and discharged before the Second Priority Notes or the Third Priority Notes are defeased or satisfied and discharged, and (ii) if the Discharge of First Priority Claims has occurred but the Discharge of Second Priority Claims has not then occurred, only if the Second Priority Notes are defeased or satisfied and

discharged before the Third Priority Notes are defeased or satisfied and discharged.

(f)     Nothing contained in this Section 4.04 shall prejudice the right of any Agent (in its capacity as Trustee, Collateral Agent, Paying Agent or Registrar under the relevant Indenture) to be indemnified and to receive compensation under Section 7.07 of the relevant Indenture for services performed and reasonable out-of-pocket expenses, disbursements and advances incurred or made by it in accordance with the terms thereof ahead of the Discharge of First Priority Claims, the Discharge of Second Priority Claims and the Discharge of Third Priority Claims to the extent such indemnification or compensation (as applicable) is satisfied wholly out of money or property not constituting Collateral and not otherwise received in connection with the Disposition of, the collection on, or the proceeds of any Collateral.

(g)     Any payment or distribution received by any Third Priority Secured Party in breach of the foregoing provisions of this Section 4.04 and any proceeds thereof shall (for so long as the Discharge of First Priority Claims and Discharge of Second Priority Claims have not occurred) be segregated and held in trust and forthwith paid over or distributed to the First Priority Agent for the benefit of the First Priority Secured Parties (or, as the case may be, to the Second Priority Agent for the benefit of the Second Priority Secured Parties) as their interests may appear.   Any payment or distribution received by any Second Priority Secured Party in breach of the foregoing provisions of this Section 4.04 and any proceeds thereof shall (for so long as the Discharge of First Priority Claims has not occurred) be segregated and held in trust and forthwith paid over or distributed to the First Priority Agent for the benefit of the First Priority Secured Parties as their interests may appear.


## ARTICLE V

### *Bailment for Perfection of Certain Security Interests*

(a)     The Controlling Agent agrees that if it shall at any time hold a Lien on any Collateral that can be perfected or the priority of which can be enhanced by the possession or control of such Collateral or of any account in which such Collateral is held, and if such Collateral or any such account is in fact in the possession or under the control of the Controlling Agent, or of agents or bailees of the Controlling Agent (such Collateral being referred to herein as the "*Pledged or Controlled Collateral*"), the Controlling Agent shall, solely for the purpose of perfecting the Other Priority Liens and subject to the terms and conditions of this Article V, also (i) hold and/or maintain control of such Pledged or Controlled Collateral as gratuitous bailee for and representative (as defined in Section 1-201(35) of the UCC) of, or as agent for, the Other Priority Agents, (ii) with respect to any securities accounts included in the Collateral, have "control" (within the meaning of Section 8-106(d)(3) of the UCC) of such securities accounts on behalf of the Other Priority Agents

R- 36

and (iii) with respect to any deposit accounts included in the Collateral, act as agent for the Other Priority Agents and any assignee.

(b)     The Controlling Agent shall be entitled to deal with the Pledged or Controlled Collateral in accordance with the terms of this Agreement and the other applicable Debt Documents as if the Other Priority Liens did not exist. The obligations and responsibilities of the Controlling Agent to the Other Priority Agents and the Other Priority Secured Parties under this Article V shall be limited solely to holding or controlling the Pledged or Controlled Collateral as gratuitous bailee and representative (as defined in Section 1-201(35) of the UCC) in accordance with this Article V. Without limiting the foregoing, the Controlling Agent shall have no obligation or responsibility to ensure that any Pledged or Controlled Collateral is genuine or owned by any of the Grantors. The Controlling Agent acting pursuant to this Article V shall not, by reason of this Agreement, any other Collateral Agreement or any other document, have a fiduciary relationship in respect of any Other Priority Secured Party.

(c)     Upon occurrence of the Discharge of First Priority Claims or the Discharge of Second Priority Claims, as applicable, the Controlling Agent shall transfer the possession and control of the Pledged or Controlled Collateral, together with any necessary endorsements but without recourse or warranty, (i) if the Second Priority Claims are outstanding at such time, to the Second Priority Agent, (ii) if no Second Priority Claims are outstanding at such time and any Third Priority Claims are outstanding at such time, to the Third Priority Agent, and (iii) if no Second Priority Claims and no Third Priority Claims are outstanding at such time, to the applicable Grantor or to whosoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct, in each case so as to allow such Person to obtain possession and control of such Pledged or Controlled Collateral. In connection with any transfer under clause (i) of the immediately preceding sentence, the Controlling Agent agrees, at the expense of the Grantors, to take all actions in its power as shall be reasonably requested by the successor Controlling Agent to permit such successor Controlling Agent to obtain, for the benefit of the Other Priority Secured Parties, a first priority security interest in the Pledged or Controlled Collateral.

## ARTICLE VI

### *Insolvency or Liquidation Proceedings*

SECTION 6.01. *Finance and Sale Matters.*

(a)     Until the Discharge of First Priority Claims has occurred, the Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, and the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, agrees that, in the event of any Insolvency or Liquidation Proceeding, the Second Priority Secured Parties and the Third Priority Secured Parties will not directly or indirectly:

(i)    oppose or object to the use of any Collateral constituting cash collateral under Section 363 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law, unless the First Priority Agent, or a representative authorized by the First Priority Secured Parties, shall oppose or object to such use of cash collateral;

(ii)    (A) oppose or object to any post-petition financing provided to any Grantor, whether provided by the First Priority Secured Parties or any other Person, under Section 364 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law (a "*First DIP Financing*"), or the Liens securing any First DIP Financing ("*First DIP Financing Liens*"), unless the First Priority Secured Parties, or a representative authorized by the First Priority Secured Parties, shall then oppose or object to such First DIP Financing or such First DIP Financing Liens, and, to the extent that such First DIP Financing Liens are senior to, or rank *pari passu* with, the First Priority Liens on the Collateral, or the First Priority Claims are (x) included as obligations under such First DIP Financing or (y) are repaid with proceeds of the First DIP Financing, the Second Priority Agent will, for itself and on behalf of the other Second Priority Secured Parties, subordinate the Second Priority Liens on the Collateral and the Third Priority Agent will, for itself and on behalf of the other Third Priority Secured Parties, subordinate the Third Priority Liens on the Collateral, in each case, to the First Priority Liens on the Collateral, if applicable, and to the First DIP Financing Liens (including if the First Priority Claims are (1) included as obligations under such First DIP Financing or (2) are repaid with proceeds of the First DIP Financing) on the terms of this Agreement; and (B) propose any First DIP Financing to any Grantor.   Notwithstanding anything herein to the contrary, the Second Priority Secured Parties and the Third Priority Secured Parties shall retain their rights under the Bankruptcy Code to make post-petition financing proposals and such proposals shall not be deemed to be an objection to any other First DIP Financing proposals so long as (x) any court order approving such post-petition financing requires that the First Priority Claims be paid in full in cash as a condition to such post-petition financing, and (y) the First Priority Claims are paid in full in cash on the date of such post-petition financing, which date shall be no later than 10 days after the date on which such post-petition financing is approved by the court in which such Insolvency or Liquidation Proceeding is pending;

(iii)    except to the extent permitted by <u>Section 6.01(c)</u>, in connection with the use of cash collateral as described in clause (i) above or a First DIP Financing, request adequate protection with respect to any Collateral or any other relief in connection with such use of cash collateral, First DIP Financing or First DIP Financing Liens;

       (iv)    oppose or object to any Disposition of any Collateral free and clear of the Second Priority Liens, the Third Priority Liens or other claims under Section 363 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law, if the First Priority Secured Parties, or a representative authorized by the First Priority Secured Parties, shall consent to or otherwise approve such Disposition; and

       (v)    oppose or object to any 'carve-out' for debtors' professionals and for United States Trustee fees and expenses that has been submitted on behalf of the First Priority Secured Parties for approval in the Insolvency or Liquidation Proceeding.

(b)    After the Discharge of First Priority Claims has occurred and until the Discharge of Second Priority Claims occurs, the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, agrees that, in the event of any Insolvency or Liquidation Proceeding, the Third Priority Secured Parties will not directly or indirectly:

       (i)    oppose or object to the use of any Collateral constituting cash collateral under Section 363 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law, unless the Second Priority Agent, or a representative authorized by the Second Priority Secured Parties, shall oppose or object to such use of cash collateral;

       (ii)    (A) oppose or object to any post-petition financing provided to any Grantor, whether provided by the Second Priority Secured Parties or any other Person, under Section 364 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law (a "*Second DIP Financing*"), or the Liens securing any Second DIP Financing ("*Second DIP Financing Liens*"), unless the Second Priority Secured Parties, or a representative authorized by the Second Priority Secured Parties, shall then oppose or object to such Second DIP Financing or such Second DIP Financing Liens, and, to the extent that such Second DIP Financing Liens are senior to, or rank *pari passu* with, the Second Priority Liens on the Collateral, or the Second Priority Claims are (x) included as obligations under such Second DIP Financing or (y) are repaid with proceeds of the Second DIP Financing, the Third Priority Agent will, for itself and on behalf of the other Third Priority Secured Parties, subordinate the Third Priority Liens on the Collateral to the Second Priority Liens on the Collateral, if applicable, and to the Second DIP Financing Liens (including if the Second Priority Claims are (1) included as obligations under such Second DIP Financing or (2) are repaid with proceeds of the Second DIP Financing) on the terms of this Agreement; and (B) propose any Second DIP Financing to any Grantor. Notwithstanding anything to the contrary, the Third Priority Secured Parties shall retain their rights under the Bankruptcy Code to make post-petition financing proposals and such proposals shall not be deemed to

be an objection to any other Second DIP Financing proposals so long as (x) any court order approving such post-petition financing requires that the Second Priority Claims be paid in full in cash as a condition to such post-petition financing, and (y) the Second Priority Claims are paid in full in cash on the date of such post-petition financing, which date shall be no later than 10 days after the date on which such post-petition financing is approved by the court in which such Insolvency or Liquidation Proceeding is pending;

(iii)    except to the extent permitted by <u>Section 6.01(c)</u>, in connection with the use of cash collateral as described in clause (i) above or a Second DIP Financing, request adequate protection with respect to any Collateral or any other relief in connection with such use of cash collateral, Second DIP Financing or Second DIP Financing Liens;

(iv)    oppose or object to any Disposition of any Collateral free and clear of the Third Priority Liens, or other claims under Section 363 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law, if the Second Priority Secured Parties, or a representative authorized by the Second Priority Secured Parties, shall consent to or otherwise approve such Disposition; and

(v)    oppose or object to any 'carve-out' for debtors' professionals and for United States Trustee fees and expenses that has been submitted on behalf of the Second Priority Secured Parties for approval in the Insolvency or Liquidation Proceeding.

(c)    (i)    The Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, and the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, agrees that no Second Priority Secured Party or Third Priority Secured Party shall contest, or support any other Person in contesting, (x) any request by the First Priority Agent or any other First Priority Secured Party for adequate protection in respect of any First Priority Claims or (y) any objection, based on a claim of a lack of adequate protection with respect to any First Priority Claims, by the First Priority Agent or any other First Priority Secured Party to any motion, relief, action or proceeding. Notwithstanding the immediately preceding sentence, if, in connection with any First DIP Financing or use of cash collateral, (A) any First Priority Secured Party is granted adequate protection in the form of a Lien on additional collateral or a replacement Lien, the Second Priority Agent may, for itself and on behalf of the other Second Priority Secured Parties and the Third Priority Agent may, for itself and on behalf of the other Third Priority Secured Parties, seek or request adequate protection in the form of a Lien on such additional collateral or a similar replacement Lien, which Lien will be subordinated to the First Priority Liens (and to the Second Priority Liens, in the case of the Third Priority Claims) and First DIP Financing Liens on the same basis as the other Second Priority Liens

and the Third Priority Liens are subordinated to the First Priority Liens (or to the Second Priority Liens, in the case of the Third Priority Claims) under this Agreement, (B) any Second Priority Secured Party is granted adequate protection in the form of a Lien on additional collateral or a replacement Lien, the First Priority Agent shall, for itself and on behalf of the other First Priority Secured Parties, be granted adequate protection in the form of a Lien on such additional collateral or a similar replacement Lien as security for the First Priority Claims that is senior to such Second Priority Lien on the same basis as the other Second Priority Liens are subordinated to the First Priority Liens and senior to the Third Priority Liens under this Agreement, and (C) any Third Priority Secured Party is granted adequate protection in the form of a Lien on additional collateral or a replacement Lien, the First Priority Agent will, for itself and on behalf of the other First Priority Secured Parties and the Second Priority Agent will, for itself and on behalf of the other Second Priority Secured Parties, be granted adequate protection in the form of a Lien on such additional collateral or a similar replacement Lien that is senior to such Third Priority Lien as security for the First Priority Claims and the Second Priority Claims, as the case may be, on the same basis as the other Third Priority Liens are subordinated to the First Priority Liens and the Second Priority Liens under this Agreement.

(ii)     After the Discharge of First Priority Claims has occurred, the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, agree that no Third Priority Secured Party, as the case may be, may contest, or support any other Person in contesting, (x) any request by the Second Priority Agent or any other Second Priority Secured Party for adequate protection in respect of any Second Priority Claims or (y) any objection, based on a claim of a lack of adequate protection with respect of any Second Priority Claims, by the Second Priority Agent or any other Second Priority Secured Party to any motion, relief, action or proceeding. Notwithstanding the immediately preceding sentence, if, in connection with any Second DIP Financing or use of cash collateral, (A) any Second Priority Secured Party is granted adequate protection in the form of a Lien on additional collateral or a replacement Lien, the Third Priority Agent may, for itself and on behalf of the other Third Priority Secured Parties, seek or request adequate protection in the form of a Lien on such additional collateral or a similar replacement Lien, which Lien will be subordinated to the Second Priority Liens and Second DIP Financing Liens on the same basis as the other Third Priority Liens are subordinated to the Second Priority Liens under this Agreement and (B) any Third Priority Secured Party is granted adequate protection in the form of a Lien on additional collateral or a replacement Lien, the Second Priority Agent will, for itself and on behalf of the other Second Priority Secured Parties, be granted adequate protection in the form of a Lien on such additional collateral or a similar replacement Lien as security for the Second Priority Claims that is senior to such Third

R- 41

Priority Lien on the same basis as the other Third Priority Liens are subordinated to the Second Priority Liens.

(d)     Notwithstanding the foregoing, the applicable provisions of <u>Section 6.01(a)</u> and <u>Section 6.01(c)</u> above shall only be binding on the Second Priority Secured Parties and the Third Priority Secured Parties with respect to any First DIP Financing to the extent the principal amount of such First DIP Financing, when taken together with the aggregate principal amount of the First Priority Claims (which, in each case, for the avoidance of doubt shall not include any First Priority Claims of the type described in clause (b) or (c) of the first paragraph of the definition thereof), does not exceed $[_____].

(e)     Notwithstanding the foregoing, the applicable provisions of <u>Section 6.01(b)</u> and <u>Section 6.01(c)</u> above shall only be binding on the Third Priority Secured Parties with respect to any Second DIP Financing to the extent the principal amount of such Second DIP Financing, when taken together with the aggregate principal amount of the Second Priority Claims and any First Priority Claims (which, in each case, for the avoidance of doubt shall not include any First Priority Claims of the type described in clause (b) or (c) of the first paragraph of the definition thereof), does not exceed $[_____].

SECTION 6.02. *Relief from the Automatic Stay.*  Unless and until the Discharge of First Priority Claims has occurred, the Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, and the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, each agrees that, no Second Priority Secured Party or Third Priority Secured Party shall, without the prior written consent of the First Priority Agent, seek or request relief from or modification of the automatic stay or any other stay in any Insolvency or Liquidation Proceeding in respect of any part of the Collateral, any proceeds thereof or any Second Priority Lien or Third Priority Lien on the Collateral except as part of any Second Priority Permitted Action or Third Priority Permitted Action. After the Discharge of First Priority Claims has occurred and until the Discharge of Second Priority Claims occurs, the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, each agree that no Third Priority Secured Party shall, without the prior written consent of the Second Priority Agent, seek or request relief from or modification of the automatic stay or any other stay in any Insolvency or Liquidation Proceeding in respect of any part of the Collateral, any proceeds thereof or any Third Priority Lien on the Collateral except as part of any Third Priority Permitted Action.

SECTION 6.03. *Reorganization Securities.*  If, in any Insolvency or Liquidation Proceeding, debt obligations of the reorganized debtor secured by Liens upon any property of the reorganized debtor are distributed, pursuant to a plan of reorganization or similar dispositive restructuring plan, on account of the First Priority Claims, the Second Priority Claims, and the Third Priority Claims then, to the extent the debt obligations distributed on account of the First Priority Claims, on account of the Second Priority Claims, and on account of the Third Priority Claims are secured by Liens upon the same assets or property, the provisions of this Agreement will survive the distribution of such debt obligations pursuant to such plan and will apply with like effect to the Liens securing such debt obligations.

SECTION 6.04. *Post-Petition Interest*.

(a)     So long as the Discharge of First Priority Claims has not occurred, the Second
        Priority Agent, for itself and on behalf of the other Second Priority Secured
        Parties, and the Third Priority Agent, for itself and on behalf of the other Third
        Priority Secured Parties, each agrees that no Second Priority Secured Party or
        Third Priority Secured Party shall oppose or seek to challenge any claim by the
        First Priority Agent or any other First Priority Secured Party for allowance in any
        Insolvency or Liquidation Proceeding of First Priority Claims consisting of post-
        petition interest, fees or expenses to the extent of the value of the First Priority
        Liens (it being understood and agreed that such value shall be determined
        without regard to the existence of the Second Priority Liens or Third Priority
        Liens on the Collateral). The First Priority Agent, for itself and on behalf of the
        other First Priority Secured Parties, agrees that the Second Priority Agent or any
        other Second Priority Secured Party and the Third Priority Agent or any Third
        Priority Secured Party may make a claim for allowance in any Insolvency or
        Liquidation Proceeding of Second Priority Claims or Third Priority Claims
        consisting of post-petition interest, fees or expenses to the extent of the value of
        the Second Priority Liens or Third Priority Liens; *provided, however*, that (i) if
        any First Priority Secured Party shall have made any such claim, such claim (A)
        shall have also been approved or (B) shall have been approved prior to, or
        will be approved contemporaneously with, the approval of any such claim by any
        Second Priority Secured Party or any Third Priority Secured Party and (ii) each
        First Priority Secured Party may oppose or seek to challenge any such claim.

(b)     After the Discharge of First Priority Claims has occurred and so long as the
        Discharge of Second Priority Claims has not occurred, the Third Priority Agent,
        for itself and on behalf of the other Third Priority Secured Parties, agrees that no
        Third Priority Secured Party, shall oppose or seek to challenge any claim by the
        Second Priority Agent or any other Second Priority Secured Party for allowance
        in any insolvency or liquidation proceeding of Second Priority Claims consisting
        of post-petition interest, fees or expenses to the extent of the value of the Second
        Priority Liens (it being understood and agreed that such value will be determined
        without regard to the existence of the Third Priority Liens on the Collateral). The
        Second Priority Agent, for itself and on behalf of the other Second Priority
        Secured Parties, agrees that the Third Priority Agent or any other Third Priority
        Secured Party may make a claim for allowance in any insolvency or liquidation
        proceeding of Third Priority Claims consisting of post-petition interest, fees or
        expenses to the extent of the value of the Third Priority Claims; *provided,
        however*, that (i) if any Second Priority Secured Party shall have made any such
        claim, such claim (A) shall have also been approved or (B) shall have been
        approved prior to, or will be approved contemporaneously with, the approval of
        any such claim by any Third Priority Secured Party and (ii) each Second Priority
        Secured Party may oppose or seek to challenge any such claim.

SECTION 6.05. *Certain Waivers by the Second Priority Secured Parties and the Third Priority Secured Parties*. To the extent the Discharge of First Priority Claims has not occurred, the Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, and the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, waives any claim any Second Priority Secured Party or any Third Priority Secured Party may now or hereafter have against any First Priority Secured Party arising out of (a) the election by any First Priority Secured Party of the application of Section 1111(b)(2) of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law, or (b) any use of cash collateral or financing arrangement, or any grant of a security interest in the Collateral, in any Insolvency or Liquidation Proceeding. After the Discharge of First Priority Claims has occurred and until the Discharge of Second Priority Claims occurs, the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, waives any claim any Third Priority Secured Party may hereafter have against any Second Priority Secured Party arising out of (x) the election by any Second Priority Secured Party of the application of Section 1111(b)(2) of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law, or (y) any use of cash collateral or financing arrangement, or any grant of a security interest in the Collateral, in any Insolvency or Liquidation Proceeding.

SECTION 6.06. *Certain Voting Matters*. Each of the First Priority Agent, on behalf of the First Priority Secured Parties, the Second Priority Agent on behalf of the Second Priority Secured Parties, and the Third Priority Agent on behalf of the Third Priority Secured Parties, agrees that, without the written consent of the other, it will not seek to vote with the other as a single class in connection with any plan of reorganization in any Insolvency or Liquidation Proceeding. Except as provided in this Section 6.06, nothing in this Agreement is intended, or shall be construed, to limit the ability of (a) the Second Priority Agent and the other Second Priority Secured Parties or the Third Priority Agent and the other Third Priority Secured Parties to vote on any plan of reorganization that maintains the lien subordination provisions of this Agreement or (b) the First Priority Secured Parties, the Second Priority Secured Parties or the Third Priority Secured Parties to contest any plan of reorganization that does not maintain the lien subordination provisions of this Agreement.

## ARTICLE VII

### *Other Agreements*

SECTION 7.01. *Matters Relating to Debt Documents*.

(a)     Each of the Company and Second Priority Agent agrees that the Second Priority Indenture and each Second Priority Collateral Agreement shall contain the applicable provisions set forth on Annex I hereto, or similar provisions approved by the First Priority Agent (acting on the direction of persons holding the requisite percentage in aggregate principal amount of the First Priority Notes as provided under the First Priority Indenture), which approval shall not be unreasonably withheld or delayed. Each of the Company and the Second Priority Agent further agrees that each Second Priority Collateral Agreement covering any Collateral shall contain such other language as the First Priority Agent

R- 44

(acting on the direction of persons holding the requisite percentage in aggregate principal amount of the First Priority Notes as provided under the First Priority Indenture) may reasonably request to reflect the subordination of the Liens created pursuant to such Second Priority Collateral Agreement to the Liens created pursuant to any First Priority Collateral Agreement covering such Collateral pursuant to this Agreement.

(b)     Each of the Company and the Third Priority Agent agrees that the Third Priority Indenture and each Third Priority Collateral Agreement shall contain the applicable provisions set forth on Annex I hereto, or similar provisions approved by the First Priority Agent (acting on the direction of persons holding the requisite percentage in aggregate principal amount of the First Priority Notes as provided under the First Priority Indenture), which approval shall not be unreasonably withheld or delayed. Each of the Company and the Third Priority Agent further agrees that each Third Priority Collateral Agreement covering any Collateral shall contain such other language as the First Priority Agent (acting on the direction of persons holding the requisite percentage in aggregate principal amount of the First Priority Notes as provided under the First Priority Indenture) may reasonably request to reflect the subordination of the Liens created pursuant to such Third Priority Collateral Agreement to the Liens created pursuant to any First Priority Collateral Agreement covering such Collateral pursuant to this Agreement.

(c)     Each Agent, for itself and for the Secured Parties on whose behalf it acts, agrees that except with the prior written consent of the other Agents, no Debt Document will be amended, amended and restated, supplemented or otherwise modified to the extent that such amendment, amendment and restatement, supplement or modification would result in (a) the effective non-default and default rate of interest applicable to the First Priority Notes, the Second Priority Notes or the Third Priority Notes exceeding the effective non-default and default rate of interest applicable thereto on the date hereof, (b) the interest payments (whether in cash or in kind) to be made in respect of the First Priority Notes, the Second Priority Notes or the Third Priority Notes becoming more frequent than required with respect thereto on the date hereof, (c) the amortization, defeasance, prepayment or maturity of any Indebtedness in respect of the First Priority Notes, the Second Priority Notes or the Third Priority Notes commencing earlier than required with respect thereto on the date hereof, (d) the obligations of the Company, any Grantor or any Guarantor being materially increased from those in effect on the date hereof in a manner adverse to the other Secured Parties or (e) the provisions of this Agreement being contravened or otherwise varied in a manner adverse to the other Secured Parties.

(d)     (i)     Until the Discharge of First Priority Claims has occurred, if the First Priority     Agent or the other First Priority Secured Parties and the relevant Grantors enter   into any amendment, waiver or consent in respect of any of the First Priority    Collateral Agreements for the purpose of adding to, or deleting from, or waiving        or consenting to any departures from any provisions of,

R-45

any First Priority       Security Document or changing in any manner the rights of the First Priority       Agent, the other First Priority Secured Parties, the Company or any other Grantor thereunder, then such amendment, waiver or consent, if permitted by Section 7.01(c), shall apply automatically to any comparable provision of the comparable       Second Priority Collateral Agreements and the Third Priority Collateral       Agreements without the consent of the Second Priority Agent or the other Second       Priority Secured Parties and the Third Priority Agent or the other Third Priority   Secured Parties,   and without requirement for any further action or notice by the       Second Priority Secured Parties, the Third Priority Secured Parties, the Company       or any other Grantor, *provided*, that no such amendment, waiver or consent shall       have the effect of (x) removing Collateral subject to the Second Priority Security       Documents and the Third Priority Collateral Agreements, except to the extent       that a release of such Collateral is required by Section 3.04 or is otherwise       permitted hereunder, (y) imposing additional obligations or duties on the Second       Priority Secured Parties without their     prior    written consent, or (z) permitting       other Liens on the Collateral not permitted under the terms of the Second Priority Security    Documents,    the    Third    Priority Collateral Agreements or Article VI       hereof.  The First Priority Agent agrees to provide at least ten Business Days'       prior written notice to the Second Priority Agent and the Third Priority Agent of   any such amendment, waiver or consent, but the failure to give any such notice    shall   in   no   way   affect   the effectiveness of any such amendment, waiver or consent).

(ii)    After the Discharge of First Priority Claims has occurred and until the Discharge of Second Priority Claims has occurred, if the Second Priority Agent or the other Second Priority Secured Parties and the relevant Grantors enter into any amendment, waiver or consent in respect of any of the Second Priority Collateral Agreements for the purpose of adding to, or deleting from, or waiving or consenting to any departures from any provisions of, any Second Priority Collateral Agreement or changing in any manner the rights of the Second Priority Agent, the other Second Priority Secured Parties, the Company or any other Grantor thereunder, then such amendment, waiver or consent, if permitted by Section 7.01(c), shall apply automatically to any comparable provision of the comparable Third Priority Collateral Agreements without the consent of the Third Priority Agent or the other Third Priority Secured Parties, and without requirement for any further action or notice by the Third Priority Secured Parties, the Company or any other Grantor, *provided*, that no such amendment, waiver or consent shall have the effect of (x) removing Collateral subject to the Third Priority Collateral Agreements, except to the extent that a release of such Collateral is required by Section 3.04 or is otherwise permitted hereunder, (y) imposing additional obligations or duties on the Third Priority Secured Parties without their prior written consent, or (z) permitting other Liens on the Collateral not permitted under the terms of the Third Priority Collateral Agreements or Article VI

hereof.   The Second Priority Agent agrees to provide at least ten Business Days' prior written notice to the Third Priority Agent of any such amendment, waiver or consent, but the failure to give any such notice shall in no way affect the effectiveness of any such amendment, waiver or consent).

SECTION 7.02.  **[Reserved]**.

SECTION 7.03.  *No Waiver by First Priority Secured Parties*.  Other than with respect to the Second Priority Permitted Actions and the Third Priority Permitted Actions, nothing contained herein shall prohibit or in any way limit the First Priority Agent or any other First Priority Secured Party from opposing, challenging or objecting to, in any Insolvency or Liquidation Proceeding or otherwise, any action taken, or any claim made, by the Second Priority Agent, any other Second Priority Secured Party, the Third Priority Agent or any other Third Priority Secured Party including any request by the Second Priority Agent, any other Second Priority Secured Party, the Third Priority Agent or any other Third Priority Secured Party for adequate protection or any exercise by the Second Priority Agent, any other Second Priority Secured Party, the Third Priority Agent or any other Third Priority Secured Party of any of its rights and remedies under the Second Priority Debt Documents, the Third Priority Debt Documents or otherwise.

SECTION 7.04.  *Reinstatement*.  If, in any Insolvency or Liquidation Proceeding or otherwise, all or part of any payment with respect to (a) the First Priority Claims previously made shall be rescinded for any reason whatsoever, then the First Priority Claims shall be reinstated to the extent of the amount so rescinded and, if theretofore terminated, this Agreement shall be reinstated in full force and effect and such prior termination shall not diminish, release, discharge, impair or otherwise affect the Lien priorities and the relative rights and obligations of the First Priority Secured Parties, the Second Priority Secured Parties and the Third Priority Secured Parties provided for herein, (b) the Second Priority Claims previously made shall be rescinded for any reason whatsoever and the Discharge of First Priority Claims shall, subject to (for the avoidance of doubt) the immediately preceding clause (a), have occurred, then the Second Priority Claims shall be reinstated to the extent of the amount so rescinded and, if theretofore terminated, this Agreement shall be reinstated in full force and effect and such prior termination shall not diminish, release, discharge, impair or otherwise affect the Lien priorities and the relative rights and obligations of the Second Priority Secured Parties, and the Third Priority Secured Parties and (c) the Third Priority Claims previously made shall be rescinded for any reason whatsoever and the Discharge of First Priority Claims and the Discharge of Second Priority Claims shall, subject to (for the avoidance of doubt) the immediately preceding clauses (a) and (b), have occurred, then the Third Priority Claims shall be reinstated to the extent of the amount so rescinded and, if theretofore terminated, this Agreement shall be reinstated in full force and effect and such prior termination shall not diminish, release, discharge, impair or otherwise affect the Lien priorities and the relative rights and obligations of the Third Priority Secured Parties.

SECTION 7.05.  *Authorization of Collateral Agents*.  By accepting the benefits of this Agreement and the other First Priority Collateral Agreements, each First Priority Secured Party

hereby authorizes the First Priority Agent to enter into this Agreement and to act on its behalf as collateral agent hereunder and in connection herewith.  By accepting the benefits of this Agreement and the other Second Priority Collateral Agreements, each Second Priority Secured Party hereby authorizes the Second Priority Agent to enter into this Agreement and to act on its behalf as collateral agent hereunder and in connection herewith.  By accepting the benefits of this Agreement and the other Third Priority Collateral Agreements, each Third Priority Secured Party hereby authorizes the Third Priority Agent to enter into this Agreement and to act on its behalf as collateral agent hereunder and in connection herewith.

SECTION 7.06.  *Further Assurances*.  Each of the First Priority Agent, for itself and on behalf of the other First Priority Secured Parties, the Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, the Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, and each Grantor party hereto, for itself and on behalf of its subsidiaries, agrees that it will execute, or will cause to be executed, any and all further documents, agreements and instruments, and take all such further actions, as may be required under any applicable law, or which the First Priority Agent, the Second Priority Agent, or the Third Priority Agent may reasonably request, to effectuate the terms of this Agreement, including the relative Lien priorities provided for herein.

## ARTICLE VIII

### *Representations and Warranties*

SECTION 8.01.  *Representations and Warranties of Each Party*.  Each party hereto represents and warrants to the other parties hereto as follows:

(a)   Such party is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has all requisite power and authority to execute and deliver this Agreement and perform its obligations hereunder.

(b)   This Agreement has been duly executed and delivered by such party and constitutes a legal, valid and binding obligation of such party, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

(c)   The execution, delivery and performance by such party of its obligations under this Agreement (i) do not require any consent or approval of, registration or filing with or any other action by any governmental authority (except as contemplated hereby) and (ii) will not violate any provision of law, statute, rule or regulation, or of the certificate or articles of incorporation or other constitutive documents or by-laws of such party or any order of any governmental authority or any provision of any indenture, agreement or other instrument applicable to or binding upon such party.

## ARTICLE IX

### *No Reliance; No Liability; Obligations Absolute*

SECTION 9.01. *No Reliance; Information.* The First Priority Secured Parties, the Second Priority Secured Parties and the Third Priority Secured Parties shall have no duty to disclose to any Third Priority Secured Party, to any Second Priority Secured Party or to any First Priority Secured Party, respectively, any information relating to the Company or any of the Grantors, or any other circumstance bearing upon the risk of nonpayment of any of the First Priority Claims, the Second Priority Claims, or the Third Priority Claims, as the case may be, that is known or becomes known to any of them or any of their Affiliates. In the event any First Priority Secured Party, any Second Priority Secured Party, or any Third Priority Secured Party, in its sole discretion, undertakes at any time or from time to time to provide any such information to, respectively, any Third Priority Secured Party, any Second Priority Secured Party or any First Priority Secured Party, it shall be under no obligation (i) to make, and shall not make or be deemed to have made, any express or implied representation or warranty, including with respect to the accuracy, completeness, truthfulness or validity of the information so provided, (ii) to provide any additional information or to provide any such information on any subsequent occasion or (iii) to undertake any investigation.

SECTION 9.02. *No Warranties or Liability.*

(a)     The First Priority Agent, for itself and on behalf of the other First Priority Secured Parties, acknowledges and agrees that, except for the representations and warranties set forth in Article VIII, none of the Second Priority Agent, any other Second Priority Secured Party, the Third Priority Agent or any other Third Priority Secured Party has made any express or implied representation or warranty, including with respect to the execution, validity, legality, completeness, collectibility or enforceability of any of the Second Priority Debt Documents, the Third Priority Debt Documents, the ownership of any Collateral or the perfection or priority of any Liens thereon. The Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, acknowledges and agrees that, except for the representations and warranties set forth in Article VIII, none of the First Priority Agent, any other First Priority Secured Party, the Third Priority Agent or any other Third Priority Secured Party has made any express or implied representation or warranty, including with respect to the execution, validity, legality, completeness, collectibility or enforceability of any of the First Priority Debt Documents, the Third Priority Debt Documents, the ownership of any Collateral or the perfection or priority of any Liens thereon. The Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, acknowledges and agrees that, except for the representations and warranties set forth in Article VIII, none of the First Priority Agent, any other First Priority Secured Party, the Second Priority Agent or any other Second Priority Secured Party has made any express or implied representation or warranty, including with respect to the execution, validity, legality, completeness, collectibility or enforceability of any of the First Priority Debt Documents, the Second Priority Debt Documents, the ownership of any Collateral or the perfection or priority of any Liens thereon.

(b)     No Agent and no Secured Party shall have any express or implied duty to any other Agent or Secured Party to act or refrain from acting in a manner which allows, or results in, the occurrence or continuance of a default or an event of default under any First Priority Debt Document, any Second Priority Debt Document or any Third Priority Debt Document (other than, in each case, this Agreement), regardless of any knowledge thereof which the first-mentioned Agent or Secured Party may have or be charged with.

(c)     The First Priority Agent, for itself and on behalf of the other First Priority Secured Parties, agrees that no Second Priority Secured Party or Third Priority Secured Party shall have any liability to the First Priority Agent or any other First Priority Secured Party, and hereby waives any claim against any Second Priority Secured Party or Third Priority Secured Party arising out of any and all actions which the Second Priority Agent, the other Second Priority Secured Parties, the Third Priority Agent or the other Third Priority Secured Parties may take or permit or omit to take with respect to (i) the Second Priority Debt Documents or the Third Priority Debt Documents (other than this Agreement), (ii) the collection of the Second Priority Claims or the Third Priority Claims, or (iii) the maintenance of, the preservation of, the foreclosure upon or the Disposition of any Collateral.

(d)     The Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, agrees that no First Priority Secured Party or Third Priority Secured Party shall have any liability to the Second Priority Agent or any other Second Priority Secured Party, and hereby waives any claim against any First Priority Secured Party or Third Priority Secured Party arising out of any and all actions which the First Priority Agent, the other First Priority Secured Parties, the Third Priority Agent or the other Third Priority Secured Parties may take or permit or omit to take with respect to (i) the First Priority Debt Documents or the Third Priority Debt Documents (other than this Agreement), (ii) the collection of the First Priority Claims or the Third Priority Claims, or (iii) the maintenance of, the preservation of, the foreclosure upon or the Disposition of any Collateral.

(e)     The Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, agrees that no First Priority Secured Party or Second Priority Secured Party shall have any liability to the Third Priority Agent or any other Third Priority Secured Party, and hereby waives any claim against any First Priority Secured Party or Second Priority Secured Party arising out of any and all actions which the First Priority Agent, the other First Priority Secured Parties, the Second Priority Agent or the other Second Priority Secured Parties may take or permit or omit to take with respect to (i) the First Priority Debt Documents or the Second Priority Debt Documents (other than this Agreement), (ii) the collection of the First Priority Claims or the Second Priority Claims, or (iii) the maintenance of, the preservation of, the foreclosure upon or the Disposition of any Collateral.

SECTION 9.03. *Obligations Absolute*. The Lien priorities provided for herein and the respective rights, interests, agreements and obligations hereunder of the First Priority Agent and the other First Priority Secured Parties, the Second Priority Agent and the other Second Priority

Secured Parties and the Third Priority Agent and the other Third Priority Secured Parties shall remain in full force and effect irrespective of:

(a)     any lack of validity or enforceability of any Debt Document;

(b)     any change in the time, place or manner of payment of, or in any other term of (including, subject to the limitations set forth in Section 7.01(a), the Refinancing of), all or any portion of the First Priority Claims, the Second Priority Claims or the Third Priority Claims;

(c)     any amendment, waiver or other modification, whether by course of conduct or otherwise, of any Debt Document;

(d)     the securing of any First Priority Claims, Second Priority Claims or Third Priority Claims with any additional collateral or guarantees, or any exchange, release, voiding, avoidance or non-perfection of any security interest in any Collateral or any other collateral or any release of any guarantee securing any First Priority Claims, Second Priority Claims or Third Priority Claims;

(e)     the commencement of any Insolvency or Liquidation Proceeding or Liquidation Sale in respect of the Company or any other Grantor; or

(f)     any other circumstances that otherwise might constitute a defense available to, or a discharge of, the Company or any other Grantor in respect of the First Priority Claims or this Agreement, any of the Second Priority Secured Parties in respect of this Agreement, or any of the Third Priority Secured Parties in respect of this Agreement.

## ARTICLE X

### *Miscellaneous*

SECTION 10.01.  *Notices.*  Notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by fax, as follows:

(a)     if to the Company or any other Grantor, to it, at Baseline Oil & Gas Corp., 411 N. Sam Houston Parkway East, Suite 300, Houston, Texas 77060, Attention: Chief Executive Officer (Fax No. (281) 591-6101);

(b)     if to the First Priority Agent, to The Bank of New York Mellon Trust Company N.A., 601 Travis Street, 16th Floor, Houston, Texas 77002, Attention: Corporate Trust Administration (Fax No. [_____]);

(c)     if to the Second Priority Agent, to [_____], Attention of [_____] (Fax No. [_____]); and

(d)     if to the Third Priority Agent, to [_____], Attention of [_____] (Fax No. [_____]).

All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt if delivered by hand or overnight courier service or sent by fax or on the date five Business Days after dispatch by certified or registered mail if mailed, in each case delivered, sent or mailed (properly addressed) to such party as provided in this Section 10.01 or in accordance with the latest unrevoked direction from such party given in accordance with this Section 10.01. As agreed to between the Company and any Agent from time to time, notices and other communications may also be delivered by e-mail to the e-mail address of a representative of the applicable Person provided from time to time by such Person. The First Priority Agent, the Second Priority Agent and the Third Priority Agent agree to use diligent efforts to promptly provide each other with copies of any notices of default or acceleration or similar notices which they give to the Borrower under the First Priority Debt Documents, the Second Priority Debt Documents and the Third Priority Debt Documents respectively; *provided, however*, that in the event that either of such parties fails to provide the other with such notice, such failure shall not affect their respective obligations hereunder or the effectiveness of any such notice.

SECTION 10.02. *Conflicts*.   **IN THE EVENT OF ANY CONFLICT OR INCONSISTENCY BETWEEN THE PROVISIONS OF THIS AGREEMENT AND THE PROVISIONS OF THE OTHER DEBT DOCUMENTS, THE PROVISIONS OF THIS AGREEMENT SHALL CONTROL.**

SECTION 10.03. *Effectiveness; Survival; Termination*.   This Agreement shall become effective when executed and delivered by the parties hereto. All covenants, agreements, representations and warranties made by any party in this Agreement shall be considered to have been relied upon by the other parties hereto and shall survive the execution and delivery of this Agreement. The terms of this Agreement shall survive, and shall continue in full force and effect, in any Insolvency or Liquidation Proceeding. The Second Priority Agent, for itself and on behalf of the other Second Priority Secured Parties, hereby waives any and all rights the Second Priority Secured Parties may now or hereafter have under applicable law to revoke this Agreement or any of the provisions of this Agreement. The Third Priority Agent, for itself and on behalf of the other Third Priority Secured Parties, hereby waives any and all rights the Third Priority Secured Parties may now or hereafter have under applicable law to revoke this Agreement or any of the provisions of this Agreement. Subject to reinstatement under Section 7.04, this Agreement shall terminate and be of no further force and effect, (i) subject to compliance with their obligations to take certain actions upon Discharge of the Second Priority Claims and the Discharge of Third Priority Claims pursuant to Article V, with respect to the Second Priority Secured Parties and the Second Priority Claims, on the date upon which the Discharge of Second Priority Claims and with respect to the Third Priority Secured Parties and the Third Priority Claims, on the date upon which the Discharge of Third Priority Claims occurs and (ii) subject to compliance with its obligations to take certain actions upon Discharge of the First Priority Claims pursuant to Article V, with respect to the First Priority Secured Parties and the First Priority Claims, the date upon which the Discharge of First Priority Claims occurs.

SECTION 10.04. *Severability*.   In the event any one or more of the provisions contained in this Agreement should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any

way be affected or impaired thereby (it being understood that the invalidity of a particular provision in a particular jurisdiction shall not in and of itself affect the validity of such provision in any other jurisdiction). The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 10.05. *Amendments; Waivers.*

(a)     No failure or delay on the part of any party hereto in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of the parties hereto are cumulative and are not exclusive of any rights or remedies that they would otherwise have. No waiver of any provision of this Agreement or consent to any departure by any party therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) of this Section 10.05, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.

(b)     Neither this Agreement nor any provision hereof may be waived, amended or modified except pursuant to an agreement or agreements in writing entered into by the First Priority Agent, the Second Priority Agent and the Third Priority Agent; *provided* that no such agreement shall amend, modify or otherwise affect the rights or obligations of any Grantor without such Person's prior written consent.

SECTION 10.06. *Postponement of Subrogation.*

(a)     The Second Priority Agent agrees that no payment or distribution to any First Priority Secured Party pursuant to the provisions of this Agreement shall entitle any Second Priority Secured Party to exercise any rights of subrogation in respect thereof until the Discharge of First Priority Claims shall have occurred. Following the Discharge of First Priority Claims, each First Priority Secured Party agrees to execute such documents, agreements, and instruments as any Second Priority Secured Party may reasonably request to evidence the transfer by subrogation to any such Person of an interest in the First Priority Claims resulting from payments or distributions to such First Priority Secured Party by such Person, so long as all costs and expenses (including all reasonable legal fees and disbursements) incurred in connection therewith by such First Priority Secured Party are paid by such Person upon request for payment thereof.

(b)     The Third Priority Agent agrees that no payment or distribution to any First Priority Secured Party or Second Priority Secured Party pursuant to the provisions of this Agreement shall entitle any Third Priority Secured Party to exercise any rights of subrogation in respect thereof until the Discharge of First Priority Claims and the Discharge of Second Priority Claims shall have occurred. Following the Discharge of Second Priority Claims, each Second Priority Secured Party agrees to execute such documents, agreements, and instruments as any Third Priority Secured Party may reasonably request to evidence the transfer by subrogation to any such Person of an

interest in the Second Priority Claims resulting from payments or distributions to such Second Priority Secured Party by such Person, so long as all costs and expenses (including all reasonable legal fees and disbursements) incurred in connection therewith by such Second Priority Secured Party are paid by such Person upon request for payment thereof.

SECTION 10.07.  *Applicable Law; Jurisdiction; Consent to Service of Process.*

(a)      THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

(b)      Each party hereto hereby irrevocably and unconditionally submits, for itself and its property, to the non-exclusive jurisdiction of any Supreme Court for New York County, New York or in The United States District Court for the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined only in such New York court or, to the extent permitted by law, in such Federal court. Each party hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(c)      Each party hereto hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any New York court or in any such Federal court. Each party hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(d)      Each party to this Agreement irrevocably consents to service of process in the manner provided for notices in Section 10.01. Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

SECTION 10.08. *Waiver of Jury Trial.*   EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT. EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 10.08.