

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**ENTERED
09/02/2009**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 09-36291** |
| | § | |
| **BASELINE OIL & GAS CORP.,** | § | |
| | § | |
| **Debtor.** | § | **(Chapter 11)** |
| | § | |
| | § | |

## INTERIM ORDER AUTHORIZING INTERIM AND FINAL USE OF
## CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION
[Relates to Docket No. 6]

Having considered the Debtor's Emergency Motion for Approval of Interim and Final Use of Cash Collateral and Grant of Adequate Protection (the "Motion"),[1] the Declaration of Thomas R. Kaetzer in Support of Voluntary Petition, First-Day Motions and Designation as Complex Bankruptcy Case; and the evidence and arguments presented at the hearing ("the Interim Hearing"), the Court finds that: (a) jurisdiction over the matters in the Motion is proper pursuant to 28 U.S.C. §§ 1334 and 157; (b) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (c) proper and adequate notice of the Motion is provided and no further notice is needed; (d) the relief sought in the Motion is in the best interest of the Debtor's estate, its creditors and all parties-in-interest; and (e) good and sufficient cause exists for granting the relief requested in the Motion.

BASED ON THE RECORD PRESENTED TO THE COURT BY THE DEBTOR, IT APPEARS THAT:

A.      The Debtor acknowledges that as of August 28, 2009 (the "Petition Date"), Baseline Oil & Gas Corp. (the "Debtor") was justly and lawfully indebted and liable, without

---

[1] All capitalized terms not defined herein shall have the meaning described in the motion.

defense, counterclaim, or offset of any kind, under the Indenture, dated as of October 1, 2007, as amended and restated on October 30, 2008 (as amended, supplemented or otherwise modified from time to time, the "Indenture," together with any and all documents executed in connection therewith, the "Financing Documents"), by and between the Debtor and The Bank of New York Mellon Trust Company, N.A., as indenture trustee (the "Indenture Trustee"), for and on behalf of the parties holding the 12½% Senior Secured Notes due 2012 and the 15% Senior Secured PIK Notes due 2009 (including all 15% Senior Secured PIK Notes issued in lieu of the payment of interest in cash thereon) (such notes collectively, the "Notes", and the parties holding the Notes, collectively, the "Noteholders") in the aggregate principal amount of approximately $122,000,000, plus accrued and unpaid interest and costs and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements (including any Indenture Trustee fees, costs or expenses) and other obligations owing under the Financing Documents (collectively, the "Prepetition Obligations").  The Debtor acknowledges that, as of the Petition Date, the Prepetition Obligations constitute the legal, valid and binding secured obligations of the Debtor, enforceable in accordance with their respective terms, and that no portion of the Prepetition Obligations or any amounts paid to the Noteholders or the Indenture Trustee or applied to the obligations owing under the Financing Documents before the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

      B.     The Debtor further acknowledges that the Prepetition Obligations are secured by first priority, valid, binding, perfected and enforceable liens and security interests (the "Prepetition Liens") granted by the Debtor to the Indenture Trustee, for the benefit of the

Indenture Trustee and the Noteholders, under the Indenture and the other Financing Documents, upon and in substantially all of the assets and property of the Debtor whether then owned or thereafter acquired or arising, and all proceeds and products thereof (collectively, the "Prepetition Collateral"). The Debtor further acknowledges that the Prepetition Liens upon and security interests in the Prepetition Collateral are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

C.    The Debtor further acknowledges that all of the cash of the Debtor in existence on the Petition Date, other than cash due to royalty owners, and all of the cash that is acquired by the Debtor thereafter, other than cash due to royalty owners, (whether as proceeds of the Prepetition Collateral or otherwise) constitutes cash collateral (the "Cash Collateral") within the meaning of section 363(a) of the Bankruptcy Code for the benefit of the Indenture Trustee and the Noteholders.

D.    The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2), and the Debtor has an immediate need to obtain use of the Cash Collateral in order to permit, among other things, the preservation of the Debtor's business and assets and the orderly administration of its estate. Without such funds, the Debtor will be unable to pay necessary expenses. The ability of the Debtor to obtain liquidity through the use of the Cash Collateral is vital to the Debtor and the Debtor's efforts to maximize the value of the Debtor's assets and to expedite confirmation of its prepackaged plan of reorganization. Absent entry of this Interim Order, the Debtor's estate will be immediately and irreparably harmed.

E.    The terms of this Order and the emergency use by the Debtor of the Cash Collateral, as set forth herein, have been negotiated in good faith and at arm's length among the Debtor, the Indenture Trustee, and the Noteholders, within the meaning of section 363(m) of the Bankruptcy Code.

Based upon the foregoing findings and conclusions, upon the Motion and other pleadings filed in this Chapter 11 Case, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.    Approval.  The Motion is GRANTED, subject to the terms and conditions set forth in this Order.  Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are denied and overruled.

2.    Authorization.  Subject to the terms of this Order, the Debtor immediately is authorized to use Cash Collateral from the date of entry of this Order through the Termination Date (as defined in paragraph 12 below).  Cash Collateral may be used during the period from the date of entry of this Order through the Termination Date (the "Interim Period") on an emergency basis to pay those costs and expenses contained in the cash budget (the "Cash Collateral Budget") attached as Exhibit A and solely up to the amounts, at the times and for the purposes identified in the Cash Collateral Budget.  The Debtor shall not, without the prior written consent of the Indenture Trustee and Noteholders holding at least a majority in aggregate principal amount of the Notes then outstanding, use Cash Collateral with respect to any single week in the Cash Collateral Budget in an amount in excess of the aggregate amount budgeted for that week, subject to a permitted variance of 5%.  The expenditures authorized in the Cash

Collateral Budget shall be adhered to on a line-by-line basis, but may carry forward to successive weeks (i.e., any unused amounts in a line item in a given week may carry over to that line item to a subsequent week or weeks).

        3.     Adequate Protection. As of the date of this Order, the Indenture Trustee, for the ratable benefit of itself and the Noteholders, shall receive adequate protection for any diminution in value resulting from (i) the use by the Debtor or other decline in value of Cash Collateral and any other Prepetition Collateral and (ii) the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code, as follows:

        (i)     Adequate Protection Liens. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Indenture Trustee, for the ratable benefit of itself and the Noteholders, is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected first priority security interests in and liens (collectively, the "Adequate Protection Liens") on all Prepetition Collateral and, except for causes of action under chapter 5 of the Bankruptcy Code (all such actions, the "Avoidance Actions"), which Adequate Protection Liens, subject to entry of a Final Order, shall have recourse to the proceeds or property recovered in respect of any Avoidance Actions, any and all hereafter acquired assets and real and personal property of the Debtor, together with any proceeds thereof (the "Collateral"). The Adequate Protection Liens shall be senior and prior to all other interests or liens whatsoever in or on the Collateral, and shall be subject and subordinate only to the Carve-Out and valid, perfected and unavoidable liens or security interests on the Petition Date or liens perfected after the Petition Date the priority and perfection of which relates back to a date prior to the Petition Date as permitted by section 546(b) of the Bankruptcy Code;

        (ii)     Superpriority Claim. The Indenture Trustee, for the ratable benefit of itself and the Noteholders, shall be allowed a superpriority administrative expense claim (the "Superpriority Claim"), which shall have priority in this Chapter 11 case under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims whether in existence on or arising after the Petition Date against the Debtor and its estate of any kind or nature whatsoever, and shall be subordinate only to the Carve-Out; and

        (iii)     Reimbursement of Costs. As additional adequate protection and in consideration for the Debtor's use of cash collateral, the Debtor shall reimburse the Indenture Trustee, Jefferies & Company, Inc., Jefferies

High Yield Trading, LLC and Third Point, LLC for their reasonable out-of-pocket expenses incurred both prior to the Petition Date and during this Chapter 11 case.

4.     <u>Adequate Protection to Other Secured Creditors</u>.  As adequate protection to any other secured creditor of the estate that may exist (including any secured creditor asserting mechanics', materialman's, or other statutory liens) for any diminution in value that may result from the Debtor's use of its Cash Collateral (and only to the extent such secured creditor holds a valid and perfected, non-avoidable lien and security interest in Cash Collateral as of the Petition Date), such secured creditor is hereby granted (effective upon the Petition Date and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements, or otherwise), a replacement security interest and lien in the Debtor's postpetition assets that are subject to its existing prepetition liens and security interests with the same scope, validity, and priority as held by such secured creditor as of the Petition Date.  The Debtor reserves all rights to contest the validity, amount and priority of any and all claims, liens, and security interests asserted by such secured creditors.

5.     <u>Carve-Out</u>.  The liens of the Indenture Trustee and Noteholders, the Adequate Protection Liens and the Superpriority Claim are subordinate to the following (the "<u>Carve-Out</u>"): (a) allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6); (b) all allowed and approved fees, costs and expenses of attorneys, consultants and financial advisors employed by the Debtor pursuant to sections 327, 363 and 1103 of the Bankruptcy Code in accordance with the Cash Collateral Budget and actually incurred prior to the Termination Date (as defined in paragraph 12); and (c) the allowed and approved fees, costs and expenses of attorneys, consultants and financial advisors employed by any official committee of unsecured creditors, if appointed (the "<u>Committee</u>"), in this Chapter 11 Case pursuant to sections 327, 363 and 1103 of the Bankruptcy Code, of an amount not to exceed $25,000 (the "<u>Investigation Amount</u>") for the

purpose of reviewing and investigating the validity and priority of the Prepetition Liens. The Investigation Amount shall not be available to the Committee until the earlier of (a) denial of confirmation of the Plan and (b) the withdrawal or abandonment of the Plan by the Debtor.

6.      The Debtor is authorized to use Cash Collateral to pay the fees, costs and expenses that constitute the Carve-Out, as the same may be due and payable, so long as the Termination Date has not occurred, provided that no portion of the Prepetition Collateral or the Cash Collateral may be used by the Debtor, any statutory committee appointed in this Chapter 11 case or any of their professionals or any other person or entity to commence or prosecute any action, contest, challenge or objection with respect to the Indenture Trustee, the Noteholders, the Prepetition Obligations, the Indenture, the Financing Documents, the Prepetition Liens, the Prepetition Collateral, the Adequate Protection Liens or the Collateral.

7.      Subject to entry of the Final Order, except to the extent of the Carve-Out, no expenses of administration of this Chapter 11 case or any future proceedings that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Indenture Trustee, and no such consent shall be implied from any other action, inaction or acquiescence by the Indenture Trustee or the Noteholders.

8.      No Offsets or Recoupment.  No Cash Collateral or Prepetition Obligations shall be subject to any right of offset or recoupment by any account debtor of the Debtor arising prior to the Petition Date.

9.      Collection of Cash Collateral and Rights of Access.  From the date hereof, the Debtor is authorized and directed to maintain the cash management system in use by the Debtor

as of the Petition Date in accordance with the Indenture and the Financing Documents.  All rights of access afforded or required to be provided by the Debtor to the Indenture Trustee, for the benefit of the Noteholders, under the Financing Documents shall apply hereunder and be deemed incorporated in this Order.  Without limiting such rights, the Debtor shall permit representatives, agents and employees of the Indenture Trustee, for the benefit of the Noteholders, to have reasonable access to its premises and its records during normal business hours and shall cooperate, consult with, and provide to such persons all such information as they may reasonably request.  The Debtor agrees to furnish to the Indenture Trustee, for the benefit of the Noteholders, in form and substance reasonably satisfactory to the Indenture Trustee and Noteholders holding at least a majority in aggregate principal amount of the Notes then outstanding weekly reports of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Cash Collateral Budget, on a line-by-line basis showing any variance to the proposed corresponding line item of the Cash Collateral Budget (the "Budget Reconciliation").  Such Budget Reconciliation shall be provided to the Indenture Trustee so as actually to be received within two (2) business days following the end of each prior week.

10.    Reservation of Rights with Respect to Adequate Protection.    Under the circumstances, and given the consent of the Indenture Trustee to the emergency use of the Cash Collateral as provided herein, and that the grant of adequate protection set forth in paragraph 3 is also consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and designed to protect the interests of the Indenture Trustee, for the benefit of the Noteholders.  Notwithstanding any other provision hereof, the grant of adequate protection to the Indenture Trustee, for the benefit of the Noteholders, pursuant to this Order is without

prejudice to the rights of the Indenture Trustee and each of the Noteholders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party in interest to contest any such modification.

11.     Nature of the Adequate Protection Liens.  The Adequate Protection Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens, and the Indenture Trustee shall not be required to file or serve mortgages, Uniform Commercial Code financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute or file any documentation relating to the Adequate Protection Liens shall in no way affect the validity, perfection or priority of such Adequate Protection Liens.  If, however, the Indenture Trustee, in its sole discretion, determines to file any such mortgages, Uniform Commercial Code financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Adequate Protection Liens, the Debtor is directed to cooperate with and assist the Indenture Trustee in doing so, the stay imposed by Bankruptcy Code Section 362(a) is hereby modified to allow the filing and recording in any jurisdiction of a certified copy of this Order or any such mortgages, Uniform Commercial Code financing statements, notices of lien or similar instruments and all such documents shall be deemed to have been filed or recorded as of the Petition Date.  A certified copy of this Order may, in the discretion of the Indenture Trustee, be filed with or recorded in filing or recording offices in addition to, or in lieu of, such mortgages, Uniform Commercial Code financing statements, notices of lien or similar instruments, and all

filing and recording offices are hereby authorized to accept such certified copy of this Order for filing and recording.

   12.   Termination.   Upon the earliest to occur of (a) September 30, 2009, (b) the dismissal of this Chapter 11 case or the conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (c) the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Indenture Trustee or the Noteholders with respect to the Prepetition Collateral or the Collateral without the written consent of the Indenture Trustee, which consent may be withheld in its reasonable business discretion or as may be required by any Financing Documents; (d) the appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers; (e) the occurrence of the effective date or consummation date of a plan of reorganization for the Debtor; (f) the failure by the Debtor to deliver to the Indenture Trustee any of the documents or other information required to be delivered pursuant to this Order when due; (g) the failure by the Debtor to observe or perform any of the material terms or material provisions contained herein, including providing information required by this Order that contains a material misrepresentation, three business days following the receipt of notice thereof; (h) the entry of an order of this Court approving the terms of any debtor-in-possession financing for the Debtor; (i) the entry of an order of this Court reversing, staying, vacating or otherwise modifying in any material respect the terms of this Order; and (j) the date of the Final Hearing on the use of Cash Collateral (the "Termination Date"), the Debtor's right to use Cash Collateral as approved herein shall automatically terminate without notice or further order of this Court.   The Termination Date may be extended from time to time by a written agreement between the Indenture Trustee, Noteholders holding at least a majority in aggregate principal amount of the

Notes then outstanding and the Debtor without the need for further approval of this Court, subject only to the delivery of written notice thereof to counsel to any statutory committee appointed in this Chapter 11 case and the filing of such notice with this Court.

13.     Waiver of Rights by Debtor.  Without the prior written consent of the Indenture Trustee, the Debtor shall not seek (a) prior to any termination of the Debtor's right to use Cash Collateral, any order dismissing this Chapter 11 case or converting this Chapter 11 case to one under Chapter 7 of the Bankruptcy Code or (b) any order which authorizes under any section of the Bankruptcy Code, including, without limitation, sections 105 or 364 of the Bankruptcy Code, (i) the granting of any lien or security interest in any property of the Debtor in favor of any party other than the Indenture Trustee, for the benefit of the Noteholders, that is equal or superior to the Prepetition Liens or the Adequate Protection Liens or (ii) the obtaining of credit or the incurring the indebtedness that is entitled to superpriority administrative expense status equal or superior to that granted to the Indenture Trustee, for the benefit of the Noteholders, pursuant to this Order.

14.     Debtor's Ongoing Cooperation.  The Debtor is authorized and directed to perform all acts, and to execute, deliver and comply with the terms of the Indenture and the Financing Documents and such other documents, instruments and agreements as the Indenture Trustee or the Noteholders may reasonably require, or which otherwise may be deemed reasonably necessary by the Indenture Trustee or the Noteholders to effectuate the terms and conditions of this Order.

15.     Section 363(m) Protection.  Since the Indenture Trustee and the Noteholders are permitting the emergency use of Cash Collateral in good faith, the Indenture Trustee, and the Noteholders, shall be entitled to the full protections of section 363(m) of the Bankruptcy Code

with respect to the Adequate Protection Liens and all other adequate protection created or authorized by this Order in the event that this Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal.  Any stay, modification, reversal, or vacation of this Order shall not affect the validity of any obligation of the Debtor to the Indenture Trustee or any Noteholder, incurred pursuant to this Order.  Notwithstanding any such stay, modification, reversal or vacation, the emergency use of Cash Collateral by the Debtor pursuant hereto prior to the effective date of such stay, modification, reversal or vacation shall be governed in all respects by the original provisions hereof, and the Indenture Trustee and the Noteholders, shall be entitled to all the rights, privileges, and benefits, including, without limitation, the Adequate Protection Liens, the Collateral, and the Superpriority Claim granted herein.

16.    <u>Indenture Trustee and the Noteholders Not in Control of Debtor</u>.  In consenting to the emergency use of the Cash Collateral, the Indenture Trustee and the Noteholders shall not be deemed to be or have been in control of the operations of the Debtor and by negotiating, executing and lending under this Order, shall not be deemed to be a "responsible person" or "owner or operator" with respect to the operation and management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§9601 <u>et seq.</u>, as amended, or any similar federal or state statute).

17.    <u>Survival of Provisions of Order</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, the entry of any order having the effect of (a) confirming any plan of reorganization in the Chapter 11 Case; (b) converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; (c) appointing or electing any Chapter 11 trustee or any examiner; or

(d) dismissing this Chapter 11 Case, and the terms and provisions of this Order as well as the Superpriority Claim and the Adequate Protection Liens granted pursuant to this Order shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claim and the Adequate Protection Liens shall maintain their priority as provided by this Order until all of the obligations of the Debtor to the Indenture Trustee and the Noteholders under this Order and all of the Prepetition Obligations are indefeasibly paid in full and discharged. Notwithstanding the occurrence of the Termination Date or anything in this Order to the contrary, all of the rights, remedies, benefits and protections provided to the Indenture Trustee and the Noteholders, and all obligations of the Debtor to provide financial and other information to, and to cooperate with, the Indenture Trustee and the Noteholders, under this Order and the Financing Documents shall survive the Termination Date.

18.    <u>Master Proof of Claim</u>.   The Indenture Trustee is authorized to file a single, master proof of claim on behalf of the Noteholders on account of any and all of their respective claims arising under the Financing Documents and hereunder (the "<u>Master Proof of Claim</u>") against the Debtor.   Upon the filing of the Master Proof of Claim against the Debtor, the Indenture Trustee and each Noteholder, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim against the Debtor of any type or nature whatsoever with respect to the Financing Documents, and the claim of each Noteholder, (and each of their respective successors and assigns), shall be treated as if such entity had filed a separate proof of claim in this case.   The Indenture Trustee shall not be required to (i) reflect any allocation among Noteholders on the Master Proof of Claim, (ii) amend the Master Proof of Claim to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims, or

(iii) assert any claims or amounts in the Master Proof of Claim that are specific or unique to any particular Noteholders. The provisions of this paragraph 18 and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Noteholder (or their successors in interest) to vote separately on any plan of reorganization. The Indenture Trustee shall not be required to file with the Master Proof of Claim any instruments, agreements or other documents evidencing the obligations owing by the Debtor to the Noteholders, which instruments, agreements or other documents will be provided upon written request to counsel for the Indenture Trustee.

19.    Effect of Entry of Order.  Entry of this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Indenture Trustee and the Noteholders may have against the Debtor or third parties, and without prejudice to the right of the Indenture Trustee or any of the Noteholders to seek relief from the automatic stay in effect pursuant to Bankruptcy Code Section 362, or any other relief in this Chapter 11 case.  The provisions of this Order shall be binding upon the Debtor, and its respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this Chapter 11 case as a legal representative of the Debtor or the Debtor's estate, all creditors of the Debtor and all other parties in interest.

20.    Effect of Stipulation on Third Parties.  The Debtor's admissions, stipulations and releases contained in this Order including, without limitation, paragraphs A, B and C of this Order:  (i) shall be binding upon the Debtor for all purposes; and (ii) shall be binding upon all other parties in interest and the Committee for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than

30 days after the earlier of (a) denial of the confirmation of the Plan and (b) the Debtor's withdrawal or abandonment of the Plan (x) challenging the amount, validity, enforceability, priority or extent of any of the Prepetition Obligations, the Prepetition Liens or the Prepetition Collateral, or (y) otherwise asserting any claims or causes of action against the Noteholders or the Indenture Trustee on behalf of the Debtor's estate, and (2) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly filed within the requisite time period or the Court does not rule in favor of the plaintiff in any such proceeding, then for all purposes in this Chapter 11 case and any subsequent case under Chapter 7 of the Bankruptcy Code: (a) the Debtor's admissions, stipulations and releases contained in this Order shall be binding on all parties in interest; (b) the obligations of the Debtor under the Financing Documents shall constitute allowed claims for all purposes in this Chapter 11 case, and any subsequent Chapter 7 case; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further challenge, attack, offset, counterclaim or defense by the Committee or any other party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly filed within the requisite time period, the Debtor's admissions, stipulations and releases contained in this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such specific admissions and releases were expressly challenged in such adversary proceeding or contested matter. Pursuant to this Order, the Committee shall be deemed to have standing to

commence any such adversary proceeding or contested matter, provided, however, that nothing contained in this Order shall be deemed to grant standing to any other party to commence any such adversary proceeding or contested matter.

21.  Final Hearing.  The Final Hearing on the Motion will be held on September [_], 2009, at **September 16, 2009 at 11:00 a.m.** (prevailing Central Time) in the United States Bankruptcy Court Southern District of Texas, Houston Division, 515 Rusk St, Houston, TX 77002-2623

22.  Service of Order. Within three business days of the entry of this Order, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Order and the Motion, on: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) counsel to any official committee(s), if any; (e) the creditors holding the 20 largest unsecured claims against the Debtor's estate, as identified in the Debtor's Chapter 11 petition; (f) counsel to the Indenture Trustee; (g) counsel to Jefferies & Company, Inc.; and (h) counsel to Third Point, LLC.

23.  Objections.  Any objection to the relief requested in the Motion on a permanent basis must (a) be filed in writing with the Clerk of the Bankruptcy Court on the date that is **10 days after the entry of this Order** (the "Objection Deadline") and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) the U.S. Trustee, 512 Rusk St. # 3516, Houston, TX 77002, Attn: Stephen Staham; (ii) counsel to Jefferies & Company, Inc., Jones Day, 717 Texas St, Suite 3300, Houston, Texas 77002, Attn: Tom A. Howley, Esq.; (iii) counsel to any official committee then appointed in this chapter 11 case; (iv) counsel to the Indenture Trustee, Andrews Kurth, L.L.P., 600 Travis St, Houston, TX 77002,

Attn:  John Sparacino, Esq.; and (v) counsel to the Debtor, Thompson Knight, LLP, 333 Clay Street, Suite 3300, Houston, TX  77002, Attn: Rhett G. Campbell and Ira L. Herman.

Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

SIGNED this _15t_ day of _____September_____, 2009.

_____
UNITED STATES BANKRUPTCY JUDGE

**Baseline Oil & Gas Corp., - Weekly Cash Budget Detail**

| | Week of Aug. 28, 2009 - Sept. 3, 2009 | Description | Week of Sept. 4, 2009 - Sept. 10, 2009 | Description |
|---|---|---|---|---|
| **Operating Account Balance (#343)** | | | | |
| Cash at Start of Week, $ | $109,163 | July gas | $382,062 | |
| Receipt of Production Revenue, $ | $272,899 | July gas | | |
| LOE & CAPEX Paid, $ | | | -$184,798 | 25% of August LOE, Insurance and CAPEX |
| Current Month Payroll, $ | | | | |
| Prior Month Non-Payroll G&A, $ | | | -$16,978 | 50% of Aug. office expense and contract Land |
| Payment of Restructuring Costs, $ | | | | |
| Draw on Exit Financing Facility, $ | | | | |
| Cash Interest Paid, $ | | | | |
| Other Misc. Receipts (Payments), $ | | | | |
| Cash at End of Week, $ | $382,062 | | $180,287 | |
| | | | | |
| **Royalty Account Balance (#351)** | | | | |
| Cash at Start of Week, $ | $329,109 | July gas | $433,946 | |
| Royalty Funds Received from Revenue Acct., $ | $104,837 | July gas | | |
| Royalties Paid, $ | | | | |
| Suspense Royalties Paid, $ | | | | |
| Cash at End of Week, $ | $433,946 | | $433,946 | |

BASELINE OIL GAS CORP. - 14 Day Cash Budget Starting August 28, 2009                    August 28, 2009

EXHIBIT

A

**Bass Pro Oil & Gas Corp. - 13 Week Cash Budget Starting August 28, 2009**

| | Week of Aug. 28, 2009 - Sept. 5, 2009 | Week of Sept. 6, 2009 - Sept. 12, 2009 | Week of Sept. 13, 2009 - Sept. 19, 2009 | Week of Sept. 20, 2009 - Sept. 26, 2009 | Week of Sept. 27, 2009 - Oct. 3, 2009 | Week of Oct. 2, 2009 - Oct. 9, 2009 | Week of Oct. 11, 2009 - Oct. 17, 2009 | Week of Oct. 18, 2009 - Oct. 24, 2009 | Week of Oct. 25, 2009 - Oct. 31, 2009 | Week of Nov. 1, 2009 - Nov. 7, 2009 | Week of Nov. 8, 2009 - Nov. 14, 2009 | Week of Nov. 15, 2009 - Nov. 21, 2009 | Week of Nov. 22, 2009 - Nov. 28, 2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Account Balance (#561)** | | | | | | | | | | | | | |
| Cash at Start of Week, $ | | | | | | | | | | | | | |
| Net Oil Production Revenue, $ | | | | | | | | | | | | | |
| LOE & CAPEX Paid, $ | | | | | | | | | | | | | |
| Current Month Payroll, $ | | | | | | | | | | | | | |
| Prior Month Non-Payroll G&A, $ | | | | | | | | | | | | | |
| Payment of Restructuring Costs, $ | | | | | | | | | | | | | |
| Draw on Exit Financing Facility, $ | | | | | | | | | | | | | |
| Cash Interest Paid, $ | | | | | | | | | | | | | |
| Other Misc. Receipts (Payments), $ | | | | | | | | | | | | | |
| Cash at End of Week, $ | | | | | | | | | | | | | |
| **Royalty Account Balance (#551)** | | | | | | | | | | | | | |
| Cash at Start of Week, $ | | | | | | | | | | | | | |
| Royalty Funds Received from Operating Acct., $ | | | | | | | | | | | | | |
| Royalties Paid, $ | | | | | | | | | | | | | |
| Suspense Royalties Paid, $ | | | | | | | | | | | | | |
| Cash at End of Week, $ | | | | | | | | | | | | | |

Case 09-36291   Document 37-1   Filed in TXSB on 09/02/09   Page 3 of 5

**BASELINE - 2009 FORECAST**

SALES VOLUMES

REVENUE

EXPENSES

GENERAL & ADMINISTRATIVE

August 24, 2009

**BASELINE:    MONTHLY CASH BALANCES FORECAST FOR OPERATING AND ROYALTY ACCOUNTS MAINTAINED AT COMPASS BANK**

| | F:09/01/09 T:09/30/09 | F:010/01/09 T:10/31/09 | F:11/01/09 T:11/30/08 | F:12/01/09 T:12/31/09 |
|---|---|---|---|---|
| **Operating Account Balance (#343)** | | | | |
| **Cash at Start of Month (General Ledger)** | **$109,163** | **$651,553** | **$564,352** | **$578,292** |
| Receipt of Prior Month Production Revenue, $ | 1,524,990 | 1,118,523 | 1,367,170 | 1,303,295 |
| Timing Differences on Revenue Receipt, $ | -1,918 | 66,692 | -8,608 | 13,714 |
| Catch-Up Royalty Due - Move to Rev. Acct., $ | 0 | -2,872,477 | 0 | 0 |
| LOE & CAPEX Paid, $ | -739,191 | -721,449 | -720,881 | -728,133 |
| Current Month Payroll, $ | -147,535 | -147,535 | -147,535 | -147,535 |
| Prior Month Non-Payroll G&A, $ | -33,956 | -33,956 | -157,206 | -44,706 |
| Payment of Restructuring Costs, $ | -60,000 | -315,000 | -279,000 | -125,000 |
| Draw on Exit Financing Facility, $ | 0 | 4,000,000 | 0 | 0 |
| Cash Interest Paid, $ | 0 | | -40,000 | -40,000 |
| Other Misc. Receipts (Payments), $ | 0 | -1,182,000 | 0 | 0 |
| **Cash at End of Month (General Ledger), $** | **$651,553** | **$564,352** | **$578,292** | **$809,921** |

| | | | | |
|---|---|---|---|---|
| **Royalty Account Balance (#351)** | | | | |
| **Cash at Start of Month (General Ledger)** | **$329,109** | **$362,910** | **$3,392,040** | **$353,720** |
| Royalty Funds Received from Revenue Acct., $ | 488,695 | 3,516,554 | 433,106 | 435,567 |
| Royalties Paid, $ | -454,894 | -487,424 | -426,027 | -435,567 |
| Suspense Royalties Paid, $ | 0 | 0 | -3,045,400 | 0 |
| **Cash at End of Month (General Ledger)** | **$362,910** | **$3,392,040** | **$353,720** | **$353,720** |
| **End of Month Balance from Bank Statement** | 712,910 | 3,742,040 | 703,720 | 703,720 |

**NOTES/ASSUMPTIONS**

A draw of $4.0 million on the Exit Financing (12%, interest only assumed, paid in arrears the end of each month) is made on October 29 to bring Royalty Account Balance up to balance.

Suspense Royalty balance of $3,045,400 is assumed retired in a single payment November 15 2009, after transfer of $2.872 million to Royalty on October 29

Blessing Severance Tax balance of $1,182,000 retired October 29.

The Ch 11 filing is assumed to be made at the end of August 2009 and plan is assumed to be confirmed at the end of September.

D&O policy goes into "run-off" mode upon emergence from Chapter 11 (assumed on September 30), requiring premium payment of $125 thousand invoiced October 2009 and paid in November 2009.

Auditors continue support for taxes, audit and preparation of year-end financials.  A year-end 3rd party reserve report is also included.

At year-end, ~$0.8 million of cash is forecast to be in the Operating account.

| | F:09/01/09<br>T:09/30/09 | F:010/01/09<br>T:10/31/09 | F:11/01/09<br>T:11/30/08 | F:12/01/09<br>T:12/31/09 | Total<br>F:09/01/09<br>T:12/31/09 |
|---|---|---|---|---|---|
| **GENERAL & ADMINISTRATIVE** | | | | | |
| Office Rent | 12,016 | 12,016 | 12,016 | 12,016 | 48,064 |
| Supplies, subscript, postage, maps | 3,150 | 3,150 | 3,150 | 3,150 | 12,600 |
| Phones, computers & copiers, printers | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 |
| Bank fees and charges | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 |
| Travel, entertainment, auto | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| Insurance expense, D&O | 0 | 125,000 | 0 | 0 | 125,000 |
| Stock transfer, SEC reporting, printing | 2,450 | 700 | 700 | 700 | 4,550 |
| Franchise tax | 1,840 | 1,840 | 1,840 | 1,840 | 7,360 |
| sub-total - Office expenses | $28,956 | $152,206 | $27,206 | $27,206 | $235,574 |
| | | | | | |
| Officers salaries | 36,250 | 36,250 | 36,250 | 36,250 | 145,000 |
| Director's fees | 0 | 0 | 0 | 0 | |
| Administrative Salaries | 51,000 | 51,000 | 51,000 | 51,000 | 204,000 |
| Payroll taxes, Medical & 401k | 15,285 | 15,285 | 15,285 | 15,285 | 61,139 |
| sub-total: Salaries & Labor | $102,535 | $102,535 | $102,535 | $102,535 | $410,139 |
| | | | | | |
| Legal fees - corp/SEC | 0 | 0 | 0 | 0 | 0 |
| Auditors, accounting fees | 0 | 0 | 12,500 | 0 | 12,500 |
| Engineering - reserves | 0 | 0 | 0 | 30,000 | 30,000 |
| Contract labor - office tasks | 0 | 0 | 0 | 0 | 0 |
| Consultants - geological & general | 0 | 0 | 0 | 5,000 | 5,000 |
| Consultants - land | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 |
| Consultants - engineering | 0 | 0 | 0 | 3,500 | 3,500 |
| sub-total: Professionals | $5,000 | $5,000 | $17,500 | $43,500 | $71,000 |
| | | | | | |
| T&K | 150,000 | 150,000 | 75,000 | -55,025 | 319,975 |
| Jones Day | 125,000 | 125,000 | 50,000 | -2,169 | 297,831 |
| Other Restructuring Professionals | 100,000 | 4,000 | 0 | 0 | 104,000 |
| sub-total: restructuring professionals | $375,000 | $279,000 | $125,000 | -$57,194 | $721,806 |
| | | | | | |
| TOTAL - GENERAL & ADMINISTRATIVE | $511,491 | $538,741 | $272,241 | $116,047 | $1,438,519 |

BASELINE OIL and GAS CORP. - 2009 BUDGET GG&A-DETAIL FORECAST   August 28, 2009